# EXHIBIT C

# INVESTMENT MANAGEMENT AGREEMENT

This Investment Management Agreement (the "Agreement"), dated as of January 1, 2018, is by and among Indigo Opportunities Fund II, L.P., a Delaware limited partnership (the "Fund"), and Indigo Global Advisors, LLC, a Delaware limited liability company (the "Investment Manager"). Terms used but not otherwise defined in this Agreement will have the same meaning as set forth in the Fund's Amended and Restated Agreement of Limited Partnership (as it may be amended and/or restated from time to time, the "Partnership Agreement").

1. **Investment Management Services.** In accordance with the provisions of the Partnership Agreement and under the ultimate supervision of IGI Partners II, LLC, a Delaware limited liability company and the Fund's general partner (the "General Partner"), the Fund engages the Investment Manager to serve as its exclusive investment manager. The Investment Manager agrees to serve in such capacity in accordance with this Agreement.

2. **Authority of the Investment Manager.** The Fund grants to the Investment Manager full discretion and authority, without obtaining the prior approval of the General Partner or any other representative of the Fund, to manage the investment and reinvestment of the assets of the Fund in whatever manner the Investment Manager considers appropriate; provided, that the Investment Manager will invest the Fund's assets in a manner consistent with the investment objectives, policies and guidelines set forth in the Confidential Offering Memorandum of the Fund (the "Offering Memorandum"). In furtherance of the foregoing, the Fund hereby designates and appoints the Investment Manager as its agent and attorney-in-fact, with full power and authority and without the need for further approval of the Fund (except as may be required by law) to:

    (i) furnish advice to the Fund regarding investments of the type contemplated by the Offering Memorandum, and locate, secure information with respect to, and evaluate prospective investment opportunities of such type and make recommendations regarding the purchase of such prospective investments;

    (ii) structure and negotiate investments on behalf of the Fund, review and assist in the preparation of all documentation, and acquire or attempt to acquire investments that it has determined to pursue on behalf of the Fund;

    (iii) review all documentation with respect to and oversee the dispositions of investments that it has determined to dispose on behalf of the Fund;

    (iv) perform the day-to-day investment operations of the Fund and supervise, monitor and manage the Fund's investments (and exercise the Fund's rights and remedies with respect to such investments);

    (v) borrow for the purpose of acquiring, managing, maintaining or entering into transactions on behalf of the Fund and pledge and hypothecate assets of the Fund to secure those borrowings;

(vi) open, maintain and close brokerage and similar accounts for and on behalf of the Fund;

(vii) enter into agreements with individuals and/or entities providing services in respect of the Fund or its investments and other intermediaries for and counterparties to transactions in or involving its investments (collectively, "Transacting Parties") that the Investment Manager may select in its sole discretion, determine the terms of transactions to be effected through and/or with Transacting Parties and issue all instructions and authorizations to the Transacting Parties for and on behalf of the Fund;

(viii) incur costs and expenses on behalf of the Fund, and to be reimbursed therefor, consistent with Section 6 of this Agreement;

(ix) engage in any transaction with persons affiliated with the Investment Manager provided only that in doing so, those transactions are on terms that the Investment Manager in good faith believes are no less favorable to the Fund than the terms that would be available from unrelated third parties; and

(x) take whatever other actions, make and perform whatever other commitments and agreements, and do whatever other things as may, in the Investment Manager's judgment, be necessary or appropriate in furtherance of the Fund's purposes.

3. Custody and Administration.

(a) The financial assets of the Fund will be maintained at all times in the custody of one or more banks, trust companies, brokerage firms or other financial institutions as are selected by the General Partner. The Investment Manager will have no authority to take or have possession of any of the Fund's assets or to direct delivery of any Fund assets or payment of any funds held in the Fund to the Investment Manager.

(b) The Fund will appoint and continue to retain an administrator (the "Administrator"). The Fund will cause the Administrator to furnish to the Fund and the Investment Manager an account statement (a "Fund Statement") at the end of each month and at whatever other times as the Investment Manager may reasonably request. Fund Statements may be prepared by the Administrator with or without the assistance of outside accountants.

4. Investments of Others. The Fund understands, acknowledges and agrees that the Investment Manager and/or its affiliates are engaged in an investment advisory business apart from managing the Fund and that this will create conflicts of interest with the Fund relating to both the amount of the Investment Manager's and its personnel's time and effort devoted to managing the Fund and the allocation of investment opportunities among accounts (including the Fund) managed by the Investment Manager and/or its affiliates. The Fund further understands that the Investment Manager and/or its affiliates may invest and enter into transactions for their own accounts, and the Fund agrees that nothing in this Agreement will restrict the ability of the Investment Manager or any of its affiliates to engage in any such activities notwithstanding any Portfolio Investments positions that the Fund may have or may later acquire. The Fund confirms that the Investment Manager and its affiliates may give advice and take action with respect to any of their clients and/or their own accounts that may differ from advice given or the timing or

nature of action taken with respect to the Fund so long as it is the Investment Manager's policy, to the extent practicable, to allocate investment opportunities to the Fund over time on a fair and equitable basis relative to Other Accounts, taking into account the relative size of those accounts, their existing investments, the liquidity differences among those accounts, and such other factors as the Investment Manager considers appropriate. Nothing in this Agreement will be deemed to obligate the Investment Manager or any of its affiliates to effect for the Fund any transaction that the Investment Manager or its affiliates or their officers, partners or employees may effect for its or their own accounts or for the account of any other client, if in the sole discretion of the Investment Manager, it is not practical or desirable to effect a similar transaction for the Fund.

5. <u>Compensation</u>. As compensation for the Investment Manager's services under this Agreement, the Fund will pay to the Investment Manager or the Investment Manager's designee or assignee an asset-based fee (the "<u>Management Fee</u>"). The Management Fee will be calculated and be payable in accordance with Section 4.1 of the Partnership Agreement.

6. <u>Responsibility for Expenses</u>. The Fund will be responsible for all expenses related to the investment of and transactions relating to the Fund's assets and all of the Fund's other expenses, as described in the Offering Memorandum and this Agreement. The Fund will reimburse the Investment Manager for any of the Fund's expenses paid for by the Investment Manager.

7. <u>Scope of Liabilities</u>. No Indemnified Person (as defined in Section 8) will be liable to the Fund, the Limited Partners or the affiliates, employees or agents of the Fund for any cost, claim, liability or loss (including attorneys' and expert witness fees and expenses and all costs of investigation) occasioned by any act or omission of the Investment Manager in connection with the performance of its services hereunder or the Fund's activities, provided in each case that the act or omission has not been finally determined in a proceeding conducted in accordance with Section 15 to have constituted gross negligence (which will, for all purposes of this Agreement, be determined in accordance with Delaware law), willful misconduct or, as to the Investment Manager (and not its members, managers, officers, employees, consultants, independent contractors, agents or affiliates), the reckless disregard of its duties under this Agreement.

8. <u>Indemnification</u>. The Fund agrees as follows:

(a) To the maximum extent permitted by applicable law, the Investment Manager and each of its members, managers, officers, partners, employees, consultants, independent contractors, agents and affiliates (each, an "<u>Indemnified Person</u>") who was or is made a party to, or is threatened to be made a party to, or is involved in any threatened, pending or contemplated action, suit or proceeding, whether civil or criminal, administrative, arbitrative or investigative (a "<u>Proceeding</u>") or any appeal in or from any Proceeding, relating to that Indemnified Person's performance or participation in the performance of duties under this Agreement or the rendering of advice or consultation with respect thereto, or that relate to, the Fund, its business or its affairs (including the offering of Interests), will be indemnified and held harmless by the Fund from and against any and all losses, claims, damages, liabilities (joint and/or several), expenses (including attorneys' and expert witness fees and expenses), judgments, fines, settlements and other amounts ("<u>Losses</u>") that relate to such Proceeding, except to the extent those Losses arise from actions or failures to act that are finally determined in a


proceeding conducted in accordance with Section 15 to have constituted gross negligence, willful misconduct or reckless disregard of its duties by the Indemnified Person. A person or entity will be entitled to the indemnification prescribed in the preceding sentence whether or not that person or entity continues or continued to be an investment manager to the Fund or member, manager, partner, officer, employee, consultant, independent contractor, agent or affiliate of the Investment Manager at the time any Proceeding commences or a Loss is suffered, paid or incurred.

(b) Separate and apart from its obligation to indemnify an Indemnified Person pursuant to Section 8(a), the Fund agrees to pay all expenses each Indemnified Person incurs (or reimburse that Indemnified Person for such expenses) in defending or responding to a Proceeding (including bringing and pursuing counterclaims and cross-claims), as incurred, without any determination as to the Indemnified Person's ultimate entitlement to indemnification, upon the Indemnified Person's request, regardless of whether or not the Proceeding has been disposed of, *provided* the Indemnified Person agrees in writing to repay those expenses to the extent they were incurred defending or responding to claims or allegations for which he or she or it is specifically and finally found not to be entitled to indemnification under Section 8(a). Each party to this Agreement hereby agrees that, if the Fund fails or declines to pay the expenses of an Indemnified Person upon that Indemnified Person's request as required in this Section 8(b), that Indemnified Person may immediately bring a claim in arbitration, in accordance with Section 15, to enforce the Fund's obligations under this Section 8(b). Any such arbitration proceeding will be conducted and determined solely with respect to the enforcement of those obligations and will be separate and apart from, and will be resolved prior to, any arbitration regarding any other issue.

(c) To the extent (and only to the extent) enforcing Section 7 or the foregoing provisions of this Section 8 would constitute or require the waiver or limitation by the Fund of rights that may not, under laws applicable to the Fund and/or the Investment Manager, be waived, Section 7 and/or this Section 8 will be deemed modified so that those rights are preserved to the extent and only to the extent required by applicable law. The Fund understands and agrees that the protections of Section 7 and this Section 8 for Indemnified Persons are to be provided to Indemnified Persons to the fullest extent permissible under applicable law, and no modification pursuant to the preceding sentence may reduce those protections any more than is finally found in a proceeding conducted in accordance with Section 15 to be required by applicable law.

9. **Representations and Warranties.** The Investment Manager represents and warrants that it has read and reviewed the Offering Memorandum and, to its knowledge, the Offering Memorandum does not contain any material misstatement or omission, necessary to make the statements therein not misleading, as it pertains to (a) the Investment Manager and its affiliates, controlling persons, officers, directors, shareholders and employees, (b) the Fund's investment objectives and strategies, (c) the risks associated with the Fund's investment objectives and strategies, and (d) any past performance. The foregoing representations and warranties shall be continuing during the term of this Agreement, and if, at any time any of the foregoing representations and warranties become untrue or inaccurate, the Investment Manager shall promptly notify the Fund in writing.

10. <u>Independent Contractor</u>. For all purposes of this Agreement, the Investment Manager will be an independent contractor and not an employee of the Fund. Nothing herein will be construed as making the Fund a partner or co-venturer with the Investment Manager or any of its affiliates.

11. <u>Term, Termination, Renewal and Survival</u>.

(a) The term of this Agreement will commence on the date hereof and will continue until the Agreement its terminated. This Agreement may be terminated as of the close of any calendar month by any party, with or without cause, upon not less than thirty (30) days' prior written notice to the other parties.

(b) If this Agreement is terminated for any reason, the Fund agrees to cease its use of the name "Indigo," and all variations thereof. This Agreement confirms that the Investment Manager consents to the use of the name "Indigo" and any version thereof approved by the Investment Manager in connection with the Fund's activities while this Agreement is in effect, but otherwise, no right or license is conferred upon any party with respect to such use.

(c) In the event of the termination of this Agreement, the provisions of Sections 7, 8, 14 and 15, as well as the provisions of this Section 11 will survive.

12. <u>Modification; Waiver</u>. Except as otherwise expressly provided herein, this Agreement may not be amended nor will any provision of this Agreement be considered modified or waived unless evidenced in writing and signed by the parties to be charged with such amendment, waiver or modification.

13. <u>Entire Agreement; Binding Effect, Assignment</u>. This Agreement is the entire agreement between the parties and supersedes all prior or contemporaneous written or oral negotiations, correspondence, agreements and understandings regarding the subject matter hereof. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors, and their rights and obligations hereunder will not be assignable, transferable or delegable without the written consent of the other party hereto. Any attempted assignment, transfer or delegation hereof without such consent will be void. Notwithstanding the foregoing, the Investment Manager may, without the consent of the Fund, assign its rights under this Agreement to and cause its obligations under this Agreement to be assumed by, in whole or in part, one or more persons or entities who control, are controlled by, or are under common control with the Investment Manager or the person or persons who control the Investment Manager immediately prior to such assignment so long as that transaction or act does not constitute an "assignment" within the meaning of the Investment Advisers Act of 1940 or other, similar law applicable to the Investment Manager.

14. <u>Governing Law</u>. Except as expressly otherwise provided in this Agreement, THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE.

15. <u>Arbitration; Jurisdiction</u>. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate,

shall be determined by arbitration in the county and state of the principal office of the Investment Manager at the time of that dispute, before a sole arbitrator, in accordance with the State of Delaware for agreements made in and to be performed in that State. The arbitration will be administered by Judicial Arbitration and Mediation Services ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the award may be entered into any court having jurisdiction. Disputes will not be resolved in any other forum or venue. The parties agree that such arbitration will be conducted by a retired judge who is experienced in dispute resolution regarding the securities industry, pre-arbitration discovery will be limited to the greatest extent provided by the rules of JAMS, the arbitration award will not include factual findings or conclusions of law, and no punitive damages will be awarded. Notwithstanding any other rules, no arbitration proceeding brought against the Investment Manager or any Indemnified Person will be consolidated with any other arbitration proceeding without the Investment Manager's consent. Judgment may be entered upon any award granted in any such arbitration in any court of competent jurisdiction in the county and state in which the Investment Manager maintains its principal office at the time the award is rendered, or in any other court having jurisdiction. The arbitrator shall, in the award, allocate all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. **NOTICE: By becoming a party to this Agreement, each party is agreeing to have all disputes, claims or controversies arising out of or relating to this Agreement decided by neutral binding arbitration, and is giving up any rights he or she or it might possess to have those matters litigated in a court or jury trial. By becoming a party to this Agreement, each party is giving up his or her or its judicial rights to discovery and appeal except to the extent that they are specifically provided for under this Agreement. If any party refuses to submit to arbitration after agreeing to this provision, that party may be compelled to arbitrate under federal or state law. By becoming a party to this Agreement, each party confirms that his or her or its agreement to this arbitration provision is voluntary.**

16. Severability. The invalidity or unenforceability of any provision hereof will in no way affect the validity or enforceability of any and all other provisions hereof.

17. Notices. Except as otherwise specifically provided herein, all communications under this Agreement must be in writing and will be deemed duly given and received when delivered personally, when sent by facsimile transmission or three days after being deposited for next-day delivery with an internationally recognized overnight international delivery service, properly addressed to the party to receive such notice at the party's address specified on the signature page of this Agreement, or at any other address that any party may designate by notice to the others.

18. Third-Party Beneficiaries. No party intends for this Agreement to benefit any third party not expressly identified or described in this Agreement, but is intended to benefit those third parties who are so identified or described as fully as if those third parties were parties to this Agreement. Without limiting the generality of the foregoing, the Indemnified Persons described in Sections 7 and 8 will be entitled to the benefits of and to enforce the rights and protections provided by those sections as fully as if those persons were parties to this Agreement.

19. <u>Counterparts</u>. This Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed in either case by the parties hereto will constitute a full and original Agreement for all purposes.

[Signature page immediately follows.]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

INDIGO OPPORTUNITIES FUND II, L.P.

By: IGI Partners II, LLC, as its general partner

By: *[signature]*
Name: Brandon Rath
Title: Company Officer

INDIGO GLOBAL ADVISORS, LLC

By: *[signature]*
Name: Brent E. Cardy
Title: Company Officer