# EXHIBIT D



# INDIGO

Date  ~~December 27, 2017~~ January 1, 2018

Address  2101 E. Coast Highway, Suite 120
Corona del Mar, CA 92625

Re:  Indigo Opportunities Fund II, L.P.

Dear Brandon:

In connection with your investment in Indigo Opportunities Fund II, L.P., a Delaware limited partnership (the "Partnership"), IGI Partners II, LLC, a Delaware limited liability company and the general partner of the Partnership (the "General Partner"), has agreed to enter into this letter agreement (this "Letter Agreement") with you, which shall supplement the terms and provisions of the Partnership's limited partnership agreement, as amended from time to time (the "Partnership Agreement") and, to the extent applicable, the Partnership's subscription agreement ("Subscription Agreement") that you executed and returned to us. All other terms relating to your investment in the Partnership, which are not expressly provided for in this Letter Agreement, shall be as are provided in the Partnership Agreement and/or the Subscription Agreement. Each capitalized term used and not defined herein shall have the meaning ascribed to such term in the Partnership Agreement.

In recognition of your subscription in the Partnership of $4,000,000.00 on or before December 31, 2017 ("Initial Investment") and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and upon such time as you become a limited partner and for as long as you continue to own a beneficial interest in the Partnership, the General Partner hereby agrees with you as follows:

1. Most Favored Nation. If either prior to or subsequent to your admission to the Partnership, any of IGI Partners II, LLC, the Partnership or the General Partner enters into any side letter or similar written agreement (a "Side Letter") with any proposed or existing investors in the Partnership (an "MFN Investor"), then promptly following the Final Closing, the terms of such Side Letter(s) shall be disclosed to you. Subject to the limitations set forth in this paragraph 1, you shall have the right to enter into an agreement which shall afford you substantially similar benefits to those provided to such MFN Investor in such Side Letter(s); provided, that you must notify the General Partner in writing of an election to receive such benefits within thirty (30) days of receipt of notification of the terms of such Side Letter(s); and provided, further, that you shall not be entitled to receive the benefit of any provision in a Side Letter that: (a) is related to any regulation or requirement imposed on, or tax provision applicable to, an investor (unless you are subject to the same or similar regulations or requirements), (b) grants to an investor the right to appoint a member to the Advisory Board, or (c) provides for administrative, legal, regulatory or like terms which are not reasonably related to you. This paragraph 1 shall not apply with respect to any Side Letter with an employee of, or an individual who has a similar working or

advisory relationship with, the General Partner or its Affiliates or a Person who has a pre-existing family, personal or business relationship with a member of the management team. Notwithstanding the foregoing, duplicative Side Letter provisions shall not be re-circulated to you pursuant to this paragraph 1.

2. <u>Management Fee</u>.  With respect to (i) your Initial Investment (as approved by the General Partner) and (ii) any additional capital commitment to the Partnership by you up to three times the Initial Investment ("<u>Additional Covered Investment</u>"), Section 4.1(b) of the Partnership Agreement shall be replaced in its entirety with the following:

    (b)    The Management Fee with respect to a Limited Partner shall equal one percent (1.0%) per annum of such Limited Partner's share of the Invested Amount.

In the event you make an additional investment in excess of the Additional Covered Investment ("<u>Excess Additional Investment</u>"), the Partnership will establish and maintain a Capital Account for your Excess Additional Investment, which is separate and distinct from the Capital Account for your Initial Investment and Additional Covered Investment.  For the avoidance of doubt, the terms of this paragraph 2 only apply to the Capital Account for your Initial Investment and Additional Covered Investment and do not apply to any Capital Account for any Excess Additional Investment.

3. <u>Carried Interest; Clawback</u>.

With respect to (i) your Initial Investment and (ii) any Additional Covered Investment, Section 3.5(b) of the Partnership Agreement shall be replaced in its entirety with the following:

    (b)    Amounts preliminarily allocated to a Limited Partner shall be distributed as follows:

        (i)    First, to such Limited Partner, a cumulative amount under this <u>Section 3.5(b)(i)</u> equal to such Limited Partner's cumulative Capital Contributions;

        (ii)    Second, to such Limited Partner, a cumulative amount under this <u>Section 3.5(b)(ii)</u> equal to such Limited Partner's Preferred Return;

        (iii)    Third, to the General Partner, an amount equal to ten percent (10%) of the cumulative amount distributed to such Limited Partner pursuant to Section 3.5(b)(ii) (so as to result in the General Partner receiving ten percent (10%) of the cumulative distributions made pursuant to this clause (iii) and clause (ii), above); and

        (iv)    Fourth, (A) ten percent (10%) to the General Partner and (B) ninety percent (90%) to such Limited Partner.

With respect to (i) your Initial Investment and (ii) any Additional Covered Investment, Section 3.8(a) of the Partnership Agreement shall be replaced in its entirety with the following:

(a) With respect to each Limited Partner, upon liquidation of the Partnership, the General Partner shall be obligated to return to the Partnership for distribution to such Limited Partner the greater of: (x) the amount required for such Limited Partner to have received aggregate distributions pursuant to this Agreement equal to its aggregate Capital Contributions and the Preferred Return thereon; and (y) the excess, if any, of: (a) aggregate distributions received by the General Partner pursuant to Section 3.5(b)(iii) and Section 3.5(b)(iv)(A), including such portion of the tax distributions made pursuant to Section 3.6 and the liquidating distributions pursuant to Section 10.3 as the General Partner reasonably determines to be attributable to distributions that the General Partner would otherwise have received pursuant to Section 3.5(b)(iii) and Section 3.5(b)(iv)(A) with respect to such Limited Partner; over (b) ten percent (10%) of aggregate distributions made pursuant to Section 3.5(b) to such Limited Partner and the General Partner with respect to such Limited Partner in excess of the Limited Partner's aggregate Capital Contributions; provided, that the amount required to be so contributed to the Partnership by the General Partner with respect to such Limited Partner shall not exceed the aggregate distributions received by the General Partner pursuant to Section 3.5(b)(iii) and Section 3.5(b)(iv)(A) with respect to such Limited Partner, including such portion of the tax distributions made pursuant to Section 3.6 and the liquidating distributions pursuant to Section 10.3 as the General Partner reasonably determines to be attributable to distributions that the General Partner would otherwise have received pursuant to Section 3.5(b)(iii) and Section 3.5(b)(iv)(A) with respect to such Limited Partner, less any taxes paid by the General Partner (or its direct or indirect partners, members or shareholders) with respect to or otherwise attributable to the receipt of such distributions or any associated allocation of income (calculated using the same assumptions provided for in Section 3.6 hereof); provided, that to the extent the General Partner and its members, during the five (5) year period following the liquidation of the Partnership, is able to reduce the amount of taxes they are otherwise required to bear by the use of any losses directly attributable to the recontribution of amounts provided for under this Section 3.8 (as determined by a nationally recognized independent public accounting firm mutually agreed upon by the General Partner or, in the absence of such agreement, by a Majority in Interest of the Limited Partners, which accounting firm shall be provided copies of the income tax returns of all such individuals for such five (5)-year period and which has been instructed to provide the determination of the amount of such benefit to such Person as a Majority in Interest of the Limited Partners may agree upon, but which firm shall not otherwise be permitted to release such returns, or any information contained therein, to any other Person), then the reduction in the amount of the clawback for the amount of taxes borne shall be reduced (as of the date such losses are actually used by such individual members of the Senior Management Group for such purpose) by an equivalent amount and, accordingly, the amount required to be so contributed shall be increased as of such date.

With respect to (i) your Initial Investment and (ii) any Additional Covered Investment, Section 7.2(d) of the Partnership Agreement shall be replaced in its entirety with the following:

(d) Determination of Each Partner's Share of Clawback. Subject to the restrictions contained in Section 7.2(c) above, each Partner shall be obligated to

contribute an amount equal to the product of: (A) the percentage that such Partner's Capital Commitment represents of the total Capital Commitments of the Partners and (B) the amount of the Partnership's indemnity obligation under Section 6.5 and Section 7.4(h) (the "Other Clawback Amount"). Notwithstanding the preceding sentence, to the extent distributions of Carried Interest in respect of any Limited Partner have been made to the General Partner and have not already been repaid pursuant to this Section 7.2 (or returned pursuant to Section 3.8), such Limited Partner's share of such Other Clawback Amount shall be reduced, and the General Partner's share of such Other Clawback Amount shall be increased, by an amount equal to the lesser of: (x) the amount of such Carried Interest distributions not previously repaid or returned; and (y) ten percent (10%) of such Limited Partner's share of such Other Clawback Amount.

In the event of any Excess Additional Investment, the Partnership will establish and maintain a Capital Account for your Excess Additional Investment, which is separate and distinct from the Capital Account for your Initial Investment and Additional Covered Investment. For the avoidance of doubt, the terms of this paragraph 3 only apply to the Capital Account for your Initial Investment and Additional Covered Investment and do not apply to any Capital Account for any Excess Additional Investment.

4. Severability. Each provision of this Letter Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Letter Agreement which are valid, enforceable and legal.

5. Enforceability. The execution and delivery of this Letter Agreement by the General Partner, on behalf of the Partnership, constitutes a representation and warranty that (a) the General Partner is authorized under the terms of the Partnership Agreement and otherwise to execute and deliver this Letter Agreement and (b) this Letter Agreement constitutes a valid and binding obligation of the General Partner and the Partnership, enforceable against the General Partner and the Partnership in accordance with its terms.

6. Entire Agreement; Amendment. This Letter Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other prior letters and understandings, both written and verbal, among the parties or any of them with respect to the subject matter hereof. This Letter Agreement may be amended only through a written amendment executed by you and the General Partner.

7. Counterparts. This Letter Agreement may be executed in one or more counterparts and all such counterparts so executed shall constitute an original agreement binding on all the parties, but together shall constitute but one agreement.

9. Governing Law. The provisions of Delaware law shall and do govern the relationship of the parties. Should any dispute arise between the parties requiring judicial resolution, such actions shall be brought before a court of competent jurisdiction in the county and state in which the General Partner maintains its principal office.

*[signature page follows]*

     This Letter Agreement is binding on and enforceable against the Partnership and the General Partner notwithstanding any contrary provisions in the Partnership Agreement or your Subscription Agreement.

IGI PARTNERS II, LLC

By: _____
Name: Brent E. Carey
Title: Management Committee Member

Acknowledged and Agreed:

INDICAL PARTNERS, LLC
   By: NA Fund 2 LLC
   Its: Managing Member
   By: Calamar Capital Services, LLC
   Its: Managing Member

By: _____
Name: Brandon Rath
Title: Chief Investment Officer