# EXHIBIT E



Subscriber Name:  IndiCal Partners, LLC

**INDIGO**

---

# INDIGO OPPORTUNITIES FUND II, L.P.

---

### Subscription Booklet for

### Limited Partnership Interests

LIMITED PARTNER INTERESTS OF INDIGO OPPORTUNITIES FUND II, L.P. (THE "FUND") ARE BEING OFFERED TO QUALIFIED INVESTORS PURSUANT TO THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM OF THE FUND DATED NOVEMBER 2017, AS SUPPLEMENTED FROM TIME TO TIME (IF APPLICABLE).  THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR ANY OTHER JURISDICTION, NOR IS SUCH REGISTRATION CONTEMPLATED. THE LIMITED PARTNER INTERESTS WILL BE OFFERED AND SOLD UNDER THE EXEMPTION PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT AND OTHER EXEMPTIONS OF SIMILAR IMPORT IN THE LAWS OF THE STATES AND OTHER JURISDICTIONS WHERE THE OFFERING WILL BE MADE.

THE DISTRIBUTION OF THIS SUBSCRIPTION BOOKLET AND THE OFFER AND SALE OF SECURITIES IN CERTAIN JURISDICTIONS MAY BE RESTRICTED BY LAW. THIS SUBSCRIPTION BOOKLET DOES NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITIES IN ANY STATE OR OTHER JURISDICTION WHERE, OR TO OR FROM ANY PERSON TO OR FROM WHOM, SUCH OFFER OR SOLICITATION IS UNLAWFUL OR NOT AUTHORIZED. LIMITED PARTNER INTERESTS OF THE FUND ARE OFFERED SUBJECT TO THE RIGHT OF THE GENERAL PARTNER OF THE FUND, ON BEHALF OF THE FUND, TO REJECT ANY SUBSCRIPTION IN WHOLE OR IN PART.  EACH ACQUIROR OF LIMITED PARTNER INTERESTS MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT FOR AN INDEFINITE PERIOD OF TIME AND IS ENCOURAGED TO SEEK INDEPENDENT LEGAL, ACCOUNTING, INVESTMENT AND TAX ADVICE.

# INDIGO OPPORTUNITIES FUND II, L.P.

## INSTRUCTIONS

This Subscription Booklet relates to the offering of limited partner interests ("Interests") in Indigo Opportunities Fund II, L.P. (the "Partnership," and together with its related entities, the "Fund"). The purpose of this Subscription Booklet is to assist IGI Partners II, LLC, in its capacity as the general partner of the Fund (the "General Partner"), in determining whether a subscriber for Interests (the "Subscriber") is eligible to become a limited partner of the Partnership (a "Limited Partner"). This Subscription Booklet includes the following elements:

1. INSTRUCTIONS;
2. SUBSCRIBER QUESTIONNAIRE;
3. SUBSCRIBER CONTACT INFORMATION FORM;
4. SUBSCRIPTION AGREEMENT;
5. AMENDED & RESTATED LIMITED PARTNERSHIP AGREEMENT (attached as a separate document); AND
6. TAX FORMS (W-9, W-8BEN, W-8IMY, W-8EXP AND W-8ECI) (attached as a separate document).

### *Instructions for Completion*

Subscribers must:

1. Complete and return the Subscriber Questionnaire;

2. complete and return the Subscriber Contact Information Form;

3. execute and return both copies of the Limited Partner Signature Page to the Subscription Agreement; and

4. complete and return the appropriate tax form.

In addition, Subscribers must submit the following documentation as follows:

(a) If the Subscriber is a corporation, a copy of its certificate of incorporation or a certificate of good standing.

(b) If the Subscriber is a limited partnership or limited liability company, a copy of the certificate of limited partnership or certificate of formation.

(c) If the Subscriber is a trust, a copy of the trust agreement or trust deed or relevant portions thereof showing the identity of the trustee(s), the beneficiar(ies) and settlor(s), the purpose of the trust, the applicable law and whether the trust is revocable or irrevocable.

  (d)  If the Subscriber is an individual, a copy (including the signature and photo page(s)) of the Subscriber's driver's license, passport or other valid government identification document.

  In addition, if the Subscriber is an entity, the Subscriber should be prepared to provide immediately upon request by the General Partner evidence of authorization in the form of a certified resolution authorizing the subscription and identifying the person(s) empowered to sign the subscription documents.

  If two or more individuals are purchasing Interests jointly (including spouses), each individual must complete a separate copy of the Subscriber Questionnaire and each individual must execute the Signature Pages. In addition, if the Subscriber is a revocable grantor trust, a copy of the trust agreement or relevant portions thereof showing appointment and authority of trustee(s) should be submitted as evidence of such authorization.

### *Delivery Instructions*

  Once completed and executed, the appropriate subscription documents should be emailed to the General Partner at IR@indigoca.com. Originals of the appropriate subscription documents should be delivered to the General Partner at the following address:

    Indigo Opportunities Fund II, L.P.
    c/o IGI Partners II, LLC
    5838 E. Naples Plaza
    Long Beach, CA 90803

  All subscription documents will be returned to the prospective Subscriber if the subscription is not accepted.

### *Acceptance of Subscriptions*

  In order to become a Limited Partner, a Subscriber must be both an "accredited investor" as defined in Regulation D under the Securities Act of 1933, as amended, and a "qualified client" as defined under the of the Investment Advisers Act of 1940, as amended. The acceptance of subscriptions and the order of acceptance are within the absolute discretion of the General Partner, which may require additional information prior to making a determination. The General Partner will seek to notify the Subscriber of its acceptance or rejection of the subscription prior to the date of the proposed investment. If the subscription is rejected, the Fund will promptly refund (without interest) to the Subscriber any subscription payments received by the Fund.

### *Capital Call Payments; Closing Date*

The initial capital contribution and each subsequent contribution drawn down by the General Partner (in accordance with the terms of the Amended and Restated Limited Partnership Agreement of the Partnership, as amended and/or restated from time to time (the "Partnership Agreement")) must be paid by wire transfer to an account designated by the General Partner. The General Partner will notify Subscribers of the relevant account information prior to the date on which Subscribers are required to make the wire transfer to fund their initial capital contributions.

The General Partner will notify each Subscriber as to the amount and due date of the initial capital contribution and each subsequent contribution.

### *Additional Information*

For additional information concerning subscriptions, prospective Subscribers should contact us at (310) 773-4190 ext. 214 or IR@indigoca.com.

# INDIGO OPPORTUNITIES FUND II, L.P.

## SUBSCRIBER QUESTIONNAIRE

Each Subscriber for partnership interests (the "Interests") in Indigo Opportunities Fund II, L.P. (the "Partnership") or its related entities (collectively and together with the Partnership, the "Fund"), is required to complete this questionnaire so that the Fund may determine the Subscriber's eligibility to invest in the Fund. Capitalized terms used without definition in this Subscriber Questionnaire have the meanings given to them in the Subscription Agreement.

**1.**   **Legal Name of Subscriber**:

IndiCal Partners, LLC

**Legal Address:**   2101 East Coast Highway, Ste. 120

Corona del Mar, CA 92625

**2.**   **Subscription Amount**

Please indicate the total requested amount of Capital Commitment for which you would like to subscribe:

US$   $4,000,000.00

**3.**   **Background**

*Entities*

(a)   Legal form of entity:

☐ Corporation or Company   ☑ Limited Liability Company
☐ General Partnership       ☐ Limited Partnership
☐ Trust (specify type):
☐ Other (specify type):

(b)   Jurisdiction where organized:   DELAWARE, USA

(c)   Year of organization:   2017

(d)   Domicile:   USA

(e)   Total number of shareholders, partners or other holders of equity or beneficial interests or other securities, including any debt securities other than short-term paper of the Subscriber (if the number is more than 100, it is sufficient to respond "more than 100"):   1

(f)   Is the Subscriber a wholly-owned or majority-owned subsidiary of another entity?

☑ Yes          ☐ No

*Individuals (if subscribing with spouse, please indicate answers for both)*

(a)    Citizenship:

(b)    Date of birth:

(c)    U.S. state or non-U.S. country of residence:

(d)    Form of ownership desired:

        ☐ Trust        ☐ Individual        ☐ Joint Tenants
        ☐ Tenants in Common ☐ Community Property (only in certain states)

## 4.   Accredited Investor Status Verification

Each Subscriber must qualify as an "accredited investor" pursuant to at least one of the following tests. Please check all statements that apply, or, if none apply, consult counsel to the General Partner. Unless otherwise indicated, responses should be given by reference to the specific person for whose account the Interests are being acquired. In the case of a trust that is considered a "revocable grantor trust" for income tax purposes, the response should be given with respect to the grantor.

*The undersigned represents and warrants that the undersigned is an "accredited investor" within the meaning of Regulation D under the Securities Act of 1933, as amended (the "Securities Act") and has checked the applicable statements below pursuant to which the undersigned so qualifies.*

(a)  ☐    The Subscriber has total assets in excess of US$5,000,000, was not formed for the purpose of investing in the Fund and is one of the following:

        ☐ a corporation

        ☐ a partnership

        ☐ a limited liability company

        ☐ a Massachusetts or similar business trust

        ☐ a tax-exempt organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code")

(b)  ☐    The Subscriber is a personal (non-business) trust, other than an employee benefit trust, with total assets in excess of US$5,000,000 which was not formed for the purpose of investing in the Fund and whose decision to invest in the Fund has been directed by a person who has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the investment.

(c)  ☐    The Subscriber is licensed, or subject to supervision, by U.S. Federal or state examining authorities as a "bank," "savings and loan association," "insurance company," or "small business investment company" (as such terms are used and defined in 17 CFR §230.501(a)) or is an account for which a bank or savings and loan association is subscribing in a fiduciary capacity.

(d) ☐ The Subscriber is registered with the United States Securities and Exchange Commission as a broker or dealer or an investment company; or has elected to be treated or qualifies as a "business development company" (within the meaning of Section 2(a)(48) of the Investment Company Act of 1940, as amended (the "Investment Company Act"), or Section 202(a)(22) of the Investment Advisers Act of 1940, as amended).

(e) ☐ The Subscriber is an employee benefit plan (including an Individual Retirement Plan) within the meaning of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which satisfies at least one of the following conditions:

    ☐ it has total assets in excess of US$5,000,000; or

    ☐ the investment decision is being made by a plan fiduciary which is a bank, savings and loan association, insurance company or registered investment adviser; or

    ☐ it is a self-directed plan (i.e., a tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) and the decision to invest is made by those participants investing, and each such participant qualifies as an accredited investor.

(f) ☐ The Subscriber is an employee benefit plan established and maintained by a state, its political subdivisions or any agency or instrumentality of a state or its political subdivisions, which has total assets in excess of US$5,000,000.

(g) ☐ The Subscriber (or the grantor, in the case of a revocable grantor trust) is a natural person whose individual net worth, or joint net worth with that person's spouse, at the time of subscription exceeds US$1,000,000 (excluding the net value of the Subscriber's primary residence).

(h) ☐ The Subscriber (or the grantor, in the case of a revocable grantor trust) is a natural person who had an individual income in excess of US$200,000 in each of the two most recent years or joint income with that person's spouse in excess of US$300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year.

(i) ☑ The Subscriber is an entity in which all of the equity owners are accredited investors.

*If only statement (i) has been checked, please contact counsel to the General Partner. Additional information may be required.*

If the Subscriber does not qualify in any accredited investor category indicated above, please contact counsel to the General Partner.

**5.     Qualified Client Status Verification**

Each Subscriber to the Fund must indicate whether the Subscriber qualifies as a "Qualified Client" (as defined in Rule 205-3 of the Investment Advisers Act of 1940, as amended).  Please check all statements that apply.

*The undersigned represents and warrants that the undersigned is a "Qualified Client" within the meaning of the Investment Advisers Act of 1940, as amended, and has checked the applicable statements below pursuant to which the undersigned so qualifies.*

(a)  ☐     The Subscriber is a natural person who or an entity that immediately after becoming a Limited Partner will have at least $1,000,000 under management with the General Partner or one of its affiliates.

(b)  ☐     The Subscriber is a natural person who or an entity that the General Partner (and any person acting on its behalf) reasonably believes, at the time this subscription agreement is entered into, either:

☐     has a net worth (together with assets held jointly with a spouse, if applicable) of more than $2,000,000 (excluding the net value of the Subscriber's primary residence)

☐     is a "qualified purchaser," as that term is or may in the future be defined in Section 2(a)(51)(A) of the Investment Company Act.[1]

**6.     Supplemental Data**

(a)     Is the Subscriber subscribing for Interests with the intent to sell or transfer the Interests to any other person or persons?

☐ Yes        ☑ No

(b)     Does the Subscriber control, or is the Subscriber controlled by or under common control with, any other existing or prospective investor in the Fund?

☐ Yes        ☑ No

(c)     Is the Subscriber subscribing for Interests as agent, nominee, trustee or otherwise on behalf of, for the account of or jointly with any other person or entity?

☐ Yes        ☑ No

---

[1]   Generally, a "qualified purchaser" is any natural person or family-owned company owning at least $5 million in "investments"; trusts managed solely by qualified purchasers; or entities owning and investing on a discretionary basis for their own accounts, or the accounts of other qualified purchasers," at least $25 million in "investments." If the Subscriber believes that it is a qualified purchaser, the Subscriber should contact the General Partner for the definition of the term "investments."

(d)    Is the Subscriber investing on behalf of an individual retirement account (an "IRA"), Keogh, or other plan described in Section 4975(e)(1) of the Code?

☐ Yes    ☑ No

(e)    Will any other person or persons have a beneficial interest in the Interests acquired (other than as a shareholder, partner, member, trust beneficiary or other beneficial owner of equity interests in the Subscriber)?

☐ Yes    ☑ No

(f)    Was the Subscriber organized for the specific purpose of acquiring interests in the Fund?

☐ Yes    ☑ No

(g)    If the Subscriber is an entity engaged primarily in investing or trading securities:

    (i)    have shareholders, partners or other holders of equity or beneficial interests in the Subscriber been provided the opportunity to decide individually whether or not to participate, or the extent of their participation, in the Subscriber's investment in the Fund (i.e., have investors in the Subscriber been permitted to determine whether their capital will form part of the specific capital invested by the Subscriber in the Fund)?

☐ Yes    ☑ No

    (ii)    does the current value of the Subscriber's subscription amount exceed forty (40) percent of the value of the Subscriber's total assets?

☐ Yes    ☑ No

## 7.    ERISA

The Subscriber represents and warrants by indicating below that it is not, and for so long as it is a Limited Partner will not be, a Benefit Plan Investor (and that it is not using, and for so long as it is a Limited Partner will not use, any funds or other consideration which is or may be attributable to one or more Benefit Plan Investors), or that if it is a Benefit Plan Investor, it represents and warrants that it is a Benefit Plan Investor.

For purposes of this Subscriber Questionnaire, a "Benefit Plan Investor" is (A) an employee benefit plan that is subject to the provisions of Title I of ERISA, (B) a plan that is subject to the prohibited transaction provisions of Section 4975 of the Code of 1986, or (C) any other entity that is a benefit plan investor within the meaning of Section 2510.3-101 of the United States Department of Labor regulations, as modified by Section 3(42) of ERISA.

The Subscriber represents and warrants that (*please check all that apply*):

(a)    The Subscriber:

☐  is a "Benefit Plan Investor"

☑  is not a "Benefit Plan Investor"

(b)    If the Subscriber is an entity other than a plan described in clause (A) or (B) above, and other than an entity described in paragraph (c) or (d) below, the Subscriber hereby certifies to either 1, 2 or 3 below:

☑  Less than twenty-five percent (25%) of the value of each class of equity interests in the Subscriber (excluding from this computation interests held by (i) any individual or entity (other than a Benefit Plan Investor) having discretionary authority or control over the assets of the Subscriber, (ii) any individual or entity who provides investment advice for a fee (direct or indirect) with respect to the assets of the Subscriber and (iii) any affiliate of such individuals or entities) is held by Benefit Plan Investors.

☐  Twenty-five percent (25%) or more of the value of any class of equity interests in the Subscriber (excluding from this computation interests held by (i) any individual or entity (other than a Benefit Plan Investor) having discretionary authority or control over the assets of the Subscriber, (ii) any individual or entity who provides investment advice for a fee (direct or indirect) with respect to the assets of the Subscriber and (iii) any affiliate of such individuals or entities) is held by Benefit Plan Investors;

and

_____% (by value) of the equity interest in the Subscriber is held by Benefit Plan Investors.

☐  The Subscriber is an investment company registered under the Investment Company Act, or has only publicly-offered securities as defined in Section 2510.3-101(b) of the United States Department of Labor regulations, or is an operating company, including a "venture capital operating company" or a "real estate operating company," as defined in Section 2510.3-101(c)-(e) of the United States Department of Labor regulations.

(c)     If the Subscriber is an insurance company investing the assets of its general account, the Subscriber hereby certifies to either 1 or 2 below:

☐   The Subscriber is an insurance company investing the assets of its general account (or the assets of a wholly owned subsidiary of its general account) in the Trust but none of the underlying assets of the Subscriber's general account constitutes "plan assets" within the meaning of Section 401(c) of ERISA.

☐   The Subscriber is an insurance company investing the assets of its general account (or the assets of a wholly owned subsidiary of its general account) in the Trust and a portion of the underlying assets of the Subscriber's general account constitutes "plan assets" within the meaning of Section 401(c) of ERISA;

and

_____% of the Subscriber's general account assets constitute "plan assets" within the meaning of Section 401(c) of ERISA.

(d)     If the Subscriber is a group trust, common or collective trust fund of a bank, or other entity described in Section 2510.3-101(h) of the United States Department of Labor regulations, the assets of which are treated as plan assets whenever a Benefit Plan Investor holds an interest in the entity, the Subscriber hereby certifies to either 1 or 2 below:

☐   No Benefit Plan Investor holds an interest in the Subscriber.

☐   One or more Benefit Plan Investor(s) hold(s) an interest in the Subscriber;

and

_____% (by value) of the equity interest in the Subscriber is held by Benefit Plan Investors.

**8.     Association with Broker-Dealers and Other Securities Businesses; Anti-Spinning.**

(a)     Rules of the Financial Industry Regulatory Authority ("FINRA") prevent brokers from selling securities to the Partnership in initial public offerings of equity securities ("New Issues") unless the Partnership makes certain formal representations as to its eligibility to buy in those offerings. To enable the General Partner and the Partnership to make those representations, each Subscriber who wishes to participate in New Issues must provide the information requested below. Check the box next to each of the following categories, if any, that describes the association by the Subscriber, or any person(s) having a beneficial interest in the Subscriber, with any broker, dealer or other securities business.

The Subscriber (or a person(s) having a beneficial interest in the Subscriber) is:

☐ A member of the Financial Industry Regulatory Authority ("FINRA"), or any other securities broker or dealer (collectively, a "broker-dealer").

☐ An officer, director, general partner, owner (or capital contributor), employee or agent of a broker-dealer, or any person associated with any broker-dealer, or a member of the "immediate family" of any such person (immediate family includes parents, mother-in-law or father-in-law, spouses, siblings, brother-in-law or sister-in-law, son-in-law or daughter-in-law, children and any other person who is supported, directly or indirectly, to a material extent by such person).

**Note**: The above box should not be checked with respect to a person that is an owner or capital contributor to a broker-dealer if the following three conditions are satisfied: (1) the person owns less than 10% of any class of equity securities of, or has contributed less than 10% of the capital of, the broker-dealer, (2) the person's ownership or capital interest in the broker-dealer is passive, and (3) the shares of the broker-dealer or the broker-dealer's parent are publicly traded on an exchange or the NASDAQ.

☐ A senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm or any other institutional type account (including but not limited to, a hedge fund, investment partnership, investment corporation or investment club), domestic or foreign, or a person in the securities department of, or an employee or other person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for any such entity, or a person who is supported, directly or indirectly, to a material extent, by any person specified in this paragraph.

☐ A finder in respect of public offerings of securities or a person acting in a fiduciary capacity to managing underwriters of public offerings of securities, including, among others, attorneys, accountants and financial consultants or any other person who is supported directly or indirectly, to a material extent, by any person specified in this paragraph.

☐ A U.S. or non-U.S. bank or trust company acting either as a conduit for an undisclosed principal or on behalf of any of the persons listed above.

☑ None of the above.

(b)      The practice of "spinning" occurs when a broker-dealer allocates a New Issue to an executive officer or director of a company in exchange for the company's investment banking business.  FINRA Rule 5131(b) prohibits spinning by generally precluding a broker-dealer from allocating shares of a New Issue to any account (e.g., the Partnership) in which an executive officer or director of a public company or a covered non-public company, or a person materially supported by such an executive officer or director ("Restricted Investor"), has a beneficial interest ("Spinning Prohibition").  The Spinning Prohibition applies under the following conditions: (a) if the Restricted Investor's company is currently an investment banking services client of the broker-dealer or the broker-dealer has received compensation from the company for investment banking services in the past 12 months; (b) if the person responsible for making the allocation decision knows or has reason to know that the broker-dealer intends to provide, or expects to be retained by the Restricted Investor's company for, investment banking services within the next 3 months; or (c) on the express or implied condition that such executive officer or director, on behalf of the Restricted Investor's company, will retain the broker-dealer for the performance of future investment banking services.  To enable the Partnership to participate in New Issues, it must determine which investors may be Restricted Investors.  Accordingly, the Subscriber must complete the questionnaire below.  Check the box next to each of the following categories, if any, that describes the association by the Subscriber, or any person(s) having a beneficial interest in the Subscriber, with any broker, dealer or other securities business.

(i)      Is the Subscriber an individual who is either (A) an executive officer or director of a "public company,"[2] (B) an executive officer or director of a "covered non-public company,"[3] or (C) a person materially supported[4] by an executive officer or director of a public company or a covered non-public company ("Rule 5131 Covered Person")?

☐ Yes        ☑ No

---

[2]   For purposes of Rule 5131, the term "public company" means any company that is registered under Section 12 of the Exchange Act or files periodic reports pursuant to Section 15(d) thereof.

[3]   For purposes of Rule 5131, the term "covered non-public company" means any non-public company satisfying the following criteria:

   (i)   income of at least $1 million in the last fiscal year or in two of the last three fiscal years and shareholders' equity of at least $15 million;

   (ii)   shareholders' equity of at least $30 million and a two-year operating history; or

   (iii)   total assets and total revenue of at least $75 million in the latest fiscal year or in two of the last three fiscal years.

[4]   For purposes of Rule 5131, the term "material support" means directly or indirectly providing more than 25% of a person's income in the prior calendar year. Persons living in the same household are deemed to be providing each other with material support.

If the Subscriber selected "Yes," please provide the name of each public company and covered non-public company.

_____

_____

_____

(ii)   Is the Subscriber an entity in which a Rule 5131 Covered Person has a beneficial interest?[5]

☐ Yes        ☑ No

**Note**: The above box should be checked "No" with respect to a Subscriber that is an entity if: (1) the beneficial interests of Rule 5131 Covered Persons with respect to the entity do not exceed (in the aggregate) 25% of such entity or (2) the participation by Rule 5131 Covered Persons with respect to the entity is limited to no more than 25% (in the aggregate) of the profits and losses of new issues.

If the Subscriber selected "Yes," does the Subscriber permit such Rule 5131 Covered Persons to participate in the profits and losses that are attributable to New Issues?

☐ Yes        ☐ No

If the Subscriber selected "Yes," please check any applicable exemptions below:

The Subscriber is:

☐   an investment company registered under the Investment Company Act of 1940, as amended.

☐   a common trust fund or similar fund as described in Section 3(a)(12)(A)(iii) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and the fund (a) has investments from 1,000 or more accounts, and (b) does not limit beneficial interests in the fund principally to trust accounts of restricted persons.  (For these purposes, the term "restricted person" shall have the meaning set forth in FINRA Rule 5130.)

☐   an insurance company general, separate or investment account, and (a) the account is funded by premiums from 1,000 or more policyholders, or, if a general account, the insurance company has

---

[5]  For purposes of Rule 5131, the term "beneficial interest" means any economic interest such as the right to share in gains or losses. The receipt of a management or performance based fee for operating a collective investment account, or other fee for acting in a fiduciary capacity, is not considered a beneficial interest in the account.

1,000 or more policyholders; and (b) the insurance company does not limit the policyholders whose premiums are used to fund the account principally to restricted persons, or, if a general account, the insurance company does not limit its policyholders principally to restricted persons.

☐ a publicly traded entity (other than a broker-dealer or an affiliate of a broker-dealer where such broker-dealer is authorized to engage in the public offering of New Issues either as a selling group member or underwriter) that: (a) is listed on a national securities exchange (including The NASDAQ Stock Market LLC), or (b) is a foreign issuer whose securities meet the quantitative designation criteria for listing on a national securities exchange (including The NASDAQ Stock Market LLC).

☐ an investment company organized under the laws of a foreign jurisdiction and is listed on a foreign exchange or authorized for sale to the public by a foreign regulatory authority, and no person owning more than 5% of the shares of the investment company is a restricted person.

☐ an Employee Retirement Income Security Act benefits plan that is qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), and such plan is not sponsored solely by a broker-dealer.

☐ a state or municipal government benefits plan that is subject to state and/or municipal regulation.

☐ a tax-exempt charitable organization under Section 501(c)(3) of the Internal Revenue Code.

☐ a church plan under Section 414(e) of the Internal Revenue Code.

☑ None of the above statements is applicable.

## 9.   Tax Information

(a)   Please indicate the last day of the Subscriber's taxable year:   ___12/31_____

(b)   Is the Subscriber exempt from Federal income tax (e.g., a qualified employee benefit plan, retirement account, charitable remainder trust, charitable foundation or other tax-exempt organization)?

☐ Yes        ☑ No

(c)     If the Subscriber answered yes to (b) above, does the Subscriber elect to be treated as a Tax Exempt Limited Partner for purposes of the Partnership Agreement?

☐ Yes          ☐ No

(d)     The Subscriber (i) is not a "United States Person" as such term is defined pursuant to Section 7701(a)(30) of the Code and (ii) is not treated as a disregarded entity or flow-through vehicle for United States federal income tax purposes one or more of the owners of which are not "United States Persons" as such term is defined pursuant to Section 7701(a)(30) of the Code?

☐ Yes          ☑ No

(e)     If the Subscriber answered yes to (d) above, does the Subscriber elect to be treated as a "Non-United States Limited Partner" for purposes of the Partnership Agreement?

☐ Yes          ☐ No

**10.     "Bad Actor" Disqualification Status**

Has the Subscriber or any Person with the ability to control or significantly influence the management and policies of the Subscriber (collectively, the "Subscriber Group") been convicted of any felony or misdemeanor or is the Subscriber or any member of the Subscriber Group subject to any order, judgment or decree that restrains the Subscriber or such member of the Subscriber Group from engaging in any conduct, in either such case, in connection with the purchase or sale of any security, or making false claims to any federal or state securities commission or otherwise arising out of the business of underwriter, broker, dealer or investment advisor, or is the Subscriber or any member of the Subscriber Group otherwise subject to any other "bad actor" disqualifying event under Rule 506(d) of Regulation D under the Securities Act?

☐ Yes          ☑ No

**11.     Freedom of Information Act**

(a)     Is the Subscriber subject to the United States Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), any state public records access laws, any state or other jurisdiction's laws similar in intent or effect to FOIA, or any other similar statutory or legal right that might result in the disclosure of confidential information relating to the Partnership?

☐ Yes          ☑ No

(b)     Is one or more of the Subscriber's beneficial owners subject to the United States Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), any state public records access laws, any state or other jurisdiction's laws similar in intent or effect to

FOIA, or any other similar statutory or legal right that might result in the disclosure of confidential information relating to the Partnership?

☐ Yes          ☑ No

(c)   If either question above was answered "Yes," please indicate the relevant laws to which the Subscriber or the Subscriber's beneficial owner(s) is/are subject and provide any additional explanatory information below:

_____

_____

_____

_____

\* \* \* \* \* \*

Subscriber Contact Information Form
Page 1

# INDIGO OPPORTUNITIES FUND II, L.P.

## SUBSCRIBER CONTACT INFORMATION FORM

### Identity of Subscriber:

Name:                IndiCal Partners, LLC

Legal Address:              2101 E. Coast Highway, Suite 120

                            Corona del Mar, CA 92625

Requested Subscription Amount: US$    4,000,000.00

U.S. Tax ID/Social Security #: _____   Spouse's SSN: _____
                                                          (if applicable)

### Remitting Bank or Financial Institution:

Name of Financial Institution:        *PLEASE SEE ATTACHED WIRE INSTRUCTIONS

Address:

ABA/SWIFT Number:

Account Name:

Account Number:

Account Representative:

Telephone:

E-Mail Address:

For Further Credit Account Name (if applicable):

For Further Credit Account Number (if applicable):

IBAN (if applicable):

### Primary Contact (will receive original documents where applicable):

Name:                Brandon Rath

Mailing Address:              2101 E. Coast Highway, Suite 120

                            Coronda Del Mar, CA 92625

Telephone:        949.718.4573           Fax:

E-Mail:        brath@calamar.com

Correspondence to receive (check all that apply):

☑ Capital Calls   ☑ Cash Distributions  ☑ Financial Statements   ☑ Other Business Information

☑ Tax Information  ☑ Annual Meeting   ☑ Legal Correspondence  ☑ Co-investment Information

*Please note that per Section 11.4 of the Partnership's Amended & Restated Limited Partnership Agreement, the Fund may provide notifications to Subscribers electronically.*

Subscriber Contact Information Form
Page 2

---

**Additional Contact (if applicable):**

Name: _      *PLEASE SEE ATTACHED LISTED OF INTERESTED PARTIES.

Mailing Address:

Telephone:         Fax:

E-Mail:

Correspondence to receive (check all that apply):

☑ Capital Calls    ☑ Cash Distributions ☑ Financial Statements   ☑ Other Business Information

☑ Tax Information   ☑ Annual Meeting    ☑ Legal Correspondence   ☑ Co-investment Information

---

**Additional Contact (if applicable):**

Name:

Mailing Address:

Telephone:         Fax:

E-Mail:

Correspondence to receive (check all that apply):

☐ Capital Calls    ☐ Cash Distributions ☐ Financial Statements   ☐ Other Business Information

☐ Tax Information   ☐ Annual Meeting    ☐ Legal Correspondence   ☐ Co-investment Information

---

**Additional Contact (if applicable):**

Name:

Mailing Address:

Telephone:         Fax:

E-Mail:

Correspondence to receive (check all that apply):

☐ Capital Calls    ☐ Cash Distributions ☐ Financial Statements   ☐ Other Business Information

☐ Tax Information   ☐ Annual Meeting    ☐ Legal Correspondence   ☐ Co-investment Information

# INDIGO OPPORTUNITIES FUND II, L.P.

## SUBSCRIPTION AGREEMENT

IGI Partners II, LLC
5838 E. Naples Plaza
Long Beach, CA 90803

Ladies and Gentlemen:

The undersigned (the "Subscriber") hereby acknowledges having received and read the Confidential Private Placement Memorandum (as amended or supplemented, the "Placement Memorandum") of Indigo Opportunities Fund II, L.P., a limited partnership organized under the laws of the State of Delaware (the "Partnership"). Capitalized terms used herein and not otherwise defined shall have the respective meanings set forth in the Placement Memorandum or the Limited Partnership Agreement of the Partnership, as amended (the "Partnership Agreement").

**Subscription Commitment**

The Subscriber hereby subscribes for limited partner interests (the "Interests") in the Partnership and agrees to contribute to the capital of the Partnership, in accordance with the accompanying SUBSCRIBER QUESTIONNAIRE completed and signed by the Subscriber (the "Subscriber Questionnaire"), in cash, the amount set forth in the Subscriber Questionnaire as the Subscriber's capital commitment to the Partnership (the "Capital Commitment"), subject to adjustments pursuant to the Partnership Agreement. The Subscriber's capital contribution shall be payable in one or more installments in amounts and on dates specified by IGI Partners II, LLC, as general partner of the Partnership (the "General Partner"), in accordance with the Partnership Agreement. Each subscription payment shall be payable in full in readily available funds by wire transfer to the bank account of the Partnership.

The Subscriber understands that this subscription is not binding on the Partnership until accepted by the General Partner, and may be rejected in whole or in part by the General Partner in its absolute discretion. If so rejected in full, the Partnership shall return to the Subscriber, without interest or deduction, any payment tendered by the Subscriber, and the Partnership and the Subscriber shall have no further obligation to each other hereunder. Unless and until rejected by the General Partner, this subscription shall be irrevocable by the Subscriber.

The Subscriber understands that the timing of the initial closing of the offering of Interests in the Partnership will be determined by the General Partner in its sole discretion. The Subscriber agrees that this subscription may be accepted in part by the General Partner, and if so, the Partnership shall return the appropriate portion of any payment tendered by the Subscriber, without interest or deduction.

**Representations, Warranties and Covenants**

　　　　To induce the Partnership to accept this subscription, the Subscriber hereby makes the following representations, warranties and covenants to the Partnership and to the Partnership's general and limited partners:

(a)　　The information set forth in the accompanying Subscriber Questionnaire and SUBSCRIBER CONTACT INFORMATION FORM (the "Subscriber Contact Information Form") is accurate and complete as of the date hereof, and the Subscriber will promptly notify the Partnership of any change in such information. The Subscriber consents to the disclosure of any such information, and any other information furnished to the Partnership, to any governmental authority, self-regulatory organization or, to the extent required by law, to any other person.

(b)　　Except as disclosed in the accompanying Subscriber Questionnaire, the Subscriber is acquiring the Interests for the Subscriber's own account, does not have any contract, undertaking or arrangement with any person or entity to sell, transfer or grant a participation with respect to the Interests, and is not acquiring the Interests with a view to or for sale in connection with any distribution of the Interests.

(c)　　The Subscriber or an advisor or consultant relied upon by the Subscriber in reaching a decision to subscribe has such knowledge and experience in financial, tax and business matters as to enable the Subscriber or such advisor or consultant to evaluate the merits and risks of an investment in the Interests and to make an informed investment decision with respect thereto.

(d)　　The Subscriber understands that the Interests have not been and may never be registered under the Securities Act of 1933, as amended (the "Securities Act"), or any state law and that the Partnership is not registered under the Investment Company Act of 1940, as amended (the "Investment Company Act"). The Subscriber agrees to notify the Partnership prior to any proposed sale, transfer, distribution or other disposition of any Interests or any beneficial interest therein, and will not sell, transfer, distribute or otherwise dispose of any Interests without the consent of the General Partner, which may be granted or withheld in the General Partner's sole discretion, and unless the Interests are registered or such sale, transfer, distribution or other disposition is exempt from registration. The Subscriber understands that the Partnership has no intention to register itself or the Interests with the Securities and Exchange Commission or any state and is under no obligation to assist the Subscriber in obtaining or complying with any exemption from registration. The Partnership may require that a proposed transferee meets appropriate financial suitability standards, complete and return a subscription booklet, provide the Partnership with information and documentation necessary for the Partnership to comply with applicable anti-money laundering laws, and that the transferor furnish a legal opinion satisfactory to the Partnership

and its counsel that the proposed transfer complies with applicable federal, state and any other applicable laws.  An appropriate legend evidencing such restrictions may be placed on any certificates issued representing the Interests and appropriate stop transfer instructions may be placed with respect to the Interests.

(e)     In formulating a decision to invest in the Partnership, the Subscriber has not relied or acted on the basis of any representations or other information purported to be given on behalf of the Partnership or the General Partner, except as set forth in the Placement Memorandum and the Partnership Agreement (it being understood that no person has been authorized by the Partnership or the General Partner to furnish any such representations or other information).

(f)     The Subscriber recognizes that there is not now any public market for Interests and that such a market is not expected to develop; accordingly, it may not be possible for the Subscriber to liquidate readily the Subscriber's investment in the Partnership.

(g)     If the Subscriber is a corporation, partnership, trust or other entity, it is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized; it is authorized and qualified to become a limited partner in, and authorized to make its capital contributions to, the Partnership and otherwise to comply with its obligations under the Partnership Agreement; the person signing this Subscription Agreement on behalf of such entity has been duly authorized by such entity to do so; and this Subscription Agreement has been duly executed and delivered on behalf of the Subscriber and is the valid and binding agreement of the Subscriber, enforceable against the Subscriber in accordance with its terms.  In addition, such Subscriber will, upon request of the General Partner, deliver any documents, including an opinion of counsel, evidencing the existence of the Subscriber, the legality of an investment in the Partnership and the authority of the person executing this Subscription Agreement on behalf of the Subscriber, which may be requested by the General Partner.

(h)     If the Subscriber is a natural person, the Subscriber is qualified to become a limited partner in the Partnership and has the legal capacity to execute, deliver and perform this Subscription Agreement and the Partnership Agreement.

(i)     The Subscriber understands and acknowledges that the Partnership will not accept the investment of funds by natural persons or entities acting, directly or indirectly, in contravention of any applicable money laundering regulations or conventions of the United States or other international jurisdictions, and represents and warrants that neither the Subscriber, nor any of its beneficial owners, (each an "Underlying Beneficial Owner") (i) appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC"); (ii) are a current or former senior official in the executive, legislative, administrative, military or judicial branches

of a foreign (non-U.S.) government (whether elected or not), a current or former senior officials of a major foreign (non-U.S.) political party, a current or former senior executives of a foreign (non-U.S.) government-owned corporation, or commercial enterprises, corporations, businesses or other entities that have been formed by, or for the benefit of, any such individuals (a "Senior Foreign Political Figure"), an immediate family members of a Senior Foreign Political Figure, or person who is widely and publicly known (or is actually known) to be a close associate of a Senior Foreign Political Figure; (iii) are a person or entity resident in, or organized or chartered under, the laws of a jurisdiction that has been designated by the U.S. Secretary of the Treasury under Section 311 or 312 of the U.S. PATRIOT Act as warranting special measures due to money laundering concerns; or (iv) are a bank organized under foreign law or an agency, branch or office located outside the United States of a bank (a "Foreign Bank") that does not maintain a physical presence (a "Physical Presence") in any country, meaning a place of business located at a fixed address, other than solely a post office box or an electronic address, in a country in which the foreign bank is authorized to conduct banking activities, at which location the Foreign Bank: (w) employs one or more individuals on a full-time basis; (x) maintains operating records related to its banking activities; (y) is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and (z) does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate (a "Foreign Shell Bank"); except such prohibition shall not include a Foreign Bank that has a physical presence in any country and is a "regulated affiliate," i.e., an affiliated depository institution, credit union, or Foreign Bank that maintains a Physical Presence in the United States or a foreign country, as applicable, and is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or Foreign Banks; or (v) are otherwise a party with which the Partnership is prohibited to deal under the laws of the United States.

The Subscriber further represents that the monies used to fund the investment in the Interests are not derived from, invested for the benefit of, or related in any way to, the governments of, or persons within, (i) any country under a U.S. embargo enforced by OFAC, (ii) that has been designated as a "non-cooperative country or territory" by the Financial Action Task Force on Money Laundering or (iii) that has been designated by the U.S. Secretary of the Treasury as a "primary money laundering concern."

The Subscriber further represents and warrants that the Subscriber (i) has conducted thorough due diligence with respect to all of its Underlying Beneficial Owners, (ii) has established the identities of all Underlying Beneficial Owners and the source of each of the Underlying Beneficial Owner's funds and (iii) will retain evidence of any such identities, any such source of funds and any such due diligence.

The Subscriber further represents that the Subscriber does not know or have any reason to suspect that (i) the monies used to fund the Subscriber's investment in the Interests have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities, and (ii) the proceeds from the Subscriber's investment in the Interests will be used to finance any illegal activities.

The Subscriber further agrees and acknowledges that, among other remedial measures, (i) the Partnership may be obligated to "freeze the account" of such Subscriber, either by prohibiting capital contributions by the Subscriber and/or segregating assets of the Subscriber in compliance with governmental regulations and/or if the General Partner determines in its sole discretion that such action is in the best interests of the Partnership and (ii) the Partnership may be required to report such action or confidential information relating to the Subscriber (including, without limitation, disclosing the Subscriber's identity) to the regulatory authorities. The Subscriber further represents and warrants that the Subscriber will promptly notify the Partnership of any change in its status or the status of any Underlying Beneficial Owner(s) with respect to its representations and warranties hereunder.

(j)    The Subscriber consents to the provision by the General Partner and its affiliates of services or products to, and the receipt of compensation for those services and products from, the Partnership or any Partnership Investment as provided under the terms and conditions set forth in the Partnership Agreement.

(k)    The Subscriber has adequate means of providing for the Subscriber's current needs and contingencies and has no need now, and anticipates no need in the foreseeable future, to sell the Interests for which the Subscriber hereby subscribes, and the Subscriber currently has sufficient financial liquidity to afford a complete loss of the Subscriber's investment in the Interests.

(l)    The Subscriber meets and expects to continue to meet the financial suitability criteria and other eligibility criteria indicated in the Subscription Questionnaire.

(m)    The Subscriber has had an opportunity to ask questions of and receive answers from the General Partner or one of its affiliates or authorized representatives concerning the terms and conditions of this offering and other matters pertaining to its investment.  In connection with its subscription for the Interests, the Subscriber has consulted with its own independent legal, regulatory, tax, business, investment, financial and accounting advisers to the extent is has deemed necessary or advisable, and the Subscriber has made its decision to subscribe for Interests based upon its own judgment and upon such advice from such advisers as is has deemed necessary and not upon any view expressed by any of the General Partner or any of its affiliates.

**Representations, Warranties and Covenants (Plan Investors)**

If the Subscriber is acquiring Interests with funds that constitute, directly or indirectly, the assets of an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), the Subscriber (i) acknowledges that (x) it has evaluated for itself the merits of such investment and (y) it has not solicited and has not received from the Partnership, the General Partner or any of their respective affiliates any evaluation or other investment advice on any basis in respect of the advisability of this or any other investment in light of the plan's assets, cash needs, investment policies or strategy, overall portfolio composition or plan for diversification of assets, and it is not relying and has not relied on the Partnership, the General Partner, or any of their respective affiliates for any such advice and (ii) represents that (x) based upon the assumption that the assets of the Partnership do not constitute "plan assets" for purposes of ERISA, neither the execution and delivery of this Subscription Agreement nor the subscription for Interests by the Subscriber constitutes a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (y) to the Subscriber's best knowledge, neither the Partnership, the General Partner nor any of their respective affiliates is a "party in interest", within the meaning of Section 3(14) of ERISA, or a "disqualified person", within the meaning of Section 4975(e)(2) of the Code, with respect to the Subscriber.

**Indemnification**

The Subscriber understands the meaning and legal consequences of the representations, warranties, agreements, covenants and confirmations set out above and agree that the subscription made hereby may be accepted in reliance thereon.  The Subscriber agrees to indemnify, to the fullest extent permitted by law, and hold harmless the Partnership, the Fund and the General Partner (including for this purpose their respective partners, directors, officers, agents, affiliates and employees, and each person who controls either of them within the meaning of Section 20 of the Securities Exchange Act of 1934, as amended) (each an "Indemnified Person") from and against any and all loss, damage, liability or expense, including reasonable costs and attorneys' fees and disbursements and costs to investigate any claims ("Expense"), which the Partnership, the Fund, the General Partner, or such persons may incur by reason of, or in connection with, (i) the Subscriber's breach of any representations or warranties or failure to fulfill any covenants or agreements contained herein, in the Subscriber Questionnaire or in any other document(s) furnished by the Subscriber pursuant to this Subscription Agreement and (ii) any regulatory or governmental agency claim or investigation or inquiry relating to the Subscriber' subscription for Interests pursuant to this Subscription Agreement.

**Reaffirmation of Representations**

The Subscriber hereby agrees that each time it makes a capital contribution, all representations, warranties, acknowledgements and agreements set forth herein shall be deemed to be reaffirmed by the Subscriber at the time it makes such capital contribution.

**Closing Documents**

Within 30 days of the closing date on which Subscriber is admitted as a Limited Partner, the General Partner shall (i) provide Subscriber with countersigned copies of this Subscription Agreement and (ii) shall post on its website and provide access to Subscriber of executed copies of the Partnership Agreement and any legal opinion or guarantee delivered in connection with such closing.

**Confidentiality**

Neither the Partnership nor the General Partner shall disclose the Subscriber's name, financial information about the Subscriber provided to the Partnership or General Partner, or information about the Subscriber's participation in the Partnership in any press release, published notice or other publication without the prior written consent of the Subscriber, except: (a) to authorized representatives and employees of the General Partner or its affiliates; (b) in connection with any internal communication or communication to any of the Limited Partners of the Partnership or the General Partner or any of its affiliates, officers, managers, agents or representatives, relating to the business and affairs of the General Partner or the Partnership, or similar communications; (c) to auditors, attorneys or other agents of the foregoing or other parties whose services are necessary or appropriate to the formation, operation or dissolution of the Partnership; or (d) as is required to be disclosed by order of a court of competent jurisdiction, administrative body or governmental body, or by subpoena, summons or legal process, or by law, rule or regulation. If the General Partner or the Partnership receives any request for information under clause (d) relating to the Subscriber, other than in the ordinary course of the Partnership's investment and investment-related activities, the General Partner shall use commercially reasonable efforts to provide the Subscriber with notice of such request prior to disclosing any information regarding the Subscriber in connection therewith (it being understood that this paragraph shall not (x) obligate the Partnership or the General Partner to violate any applicable law, rule, regulation or order, or (y) require the Partnership or the General Partner to incur a more than de minimis expense).

**Miscellaneous**

(a)     The Subscriber agrees that neither this Subscription Agreement, nor any of the Subscriber's rights, obligations or interest herein or hereunder, is transferable or assignable by the Subscriber, and further agrees that the transfer or assignment of any Interest acquired pursuant hereto shall be made only in accordance with the provisions hereof, the Partnership Agreement and all applicable laws.

(b)     The Subscriber agrees that, except as permitted by applicable law, it may not cancel, terminate or revoke this Subscription Agreement or any agreement of the Subscriber made hereunder, and that this Subscription Agreement shall survive the death or legal disability of the Subscriber, if an individual, and shall be binding upon the Subscriber's heirs, executors, administrators, successors and assigns.

(c)     All of the representations, warranties, covenants, agreements and confirmations
set out above and in the Subscriber Questionnaire shall survive the acceptance of
the subscription made herein and the issuance of any Interests.

(d)     This Subscription Agreement together with the Subscriber Questionnaire, the
Subscriber Contact Information Form and any "side letter" agreement between the
General Partner and the Subscriber constitute the entire agreement between the
parties hereto with respect to the subject matter hereof and may be amended only
by a writing executed by both parties.  This Subscription Agreement may be
executed in two or more counterparts, each of which shall be deemed an original
but all of which together shall constitute one and the same instrument.

(e)     Within ten (10) days after receipt of a written request therefor from the General
Partner or the Partnership, the Subscriber agrees to provide such information and
to execute and deliver such documents as the Partnership or the General Partner
may deem reasonably necessary to comply with any and all laws and ordinances
to which the Partnership is or may be subject.

(f)     The Subscriber agrees to provide the Partnership: (i) a valid and duly executed
Internal Revenue Service Form W-9 or Form W-8BEN (or other Form W-8), as
appropriate, upon the Subscriber's admission as a Limited Partner to the
Partnership (as set forth in Article VII of the Partnership Agreement) and
promptly upon a subsequent reasonable request by the Partnership or the General
Partner; (ii) a valid and duly executed Internal Revenue Service Form W-9 or
Form W-8BEN (or other Form W-8), as appropriate, thirty (30) days prior to the
end of each third taxable year thereafter that the Subscriber owns an Interest in the
Partnership; and (iii) prompt notice upon any change in the information provided
on such form.

(g)     The Subscriber understands and acknowledges that the Partnership is, or may in
the future become subject to, anti-money laundering statutes, regulations and
conventions of the United States or other international jurisdictions, and the
Subscriber agrees to execute instruments, provide information, or perform any
other acts as may reasonably be requested by the General Partner, or other
authorized representative of the General Partner, before the subscription can be
processed, for the purpose of: (i) carrying out due diligence as may be required by
applicable law to establish the identity of (x) the Subscriber, (y) any Underlying
Beneficial Owner(s) of the Subscriber and (z) any investors, partners, members,
directors, officers, agents, affiliates, beneficiaries or grantors of the Subscriber,
and any Underlying Beneficial Owner(s) of such investors, partners, members,
directors, officers, agents, affiliates, beneficiaries or grantors; (ii) maintaining
records of identities, or verifications or certifications as to identities; and (iii)
taking any other actions as may be required to comply with and remain in
compliance with money laundering statutes, regulations or conventions applicable
to the Partnership.

(h)     The Subscriber authorizes and consents to the General Partner, or other authorized representative of the General Partner, contacting each bank or other financial institution with which the Subscriber maintains an account from which funds used to acquire Interests in the Partnership will be drawn, and verifying with each such bank or other financial institution the identity of the Subscriber.

(i)     The Subscriber authorizes and consents to the General Partner, on behalf of the Partnership, releasing confidential information about the Subscriber and, if applicable, any Underlying Beneficial Owner(s), to the appropriate governmental or regulatory authorities if the General Partner, in its sole discretion, determines that it is in the best interests of the Partnership in light of applicable statutes, regulations and conventions.

(j)     The Subscriber acknowledges that upon acceptance of this Subscription Agreement, the General Partner may provide a password and other information necessary to access an Internet website maintained by the General Partner or its Affiliates through which information regarding the Partnership may be provided on a confidential basis.  The Subscriber agrees to refrain from sharing the password or other information necessary to access the website with anyone other than authorized personnel or agents of the Subscriber or investment advisers, consultants or similar professionals retained by the Subscriber and authorized to access the website on the Subscriber's behalf.

**Power of Attorney**

Subject only to the acceptance of this Subscription Agreement by the General Partner, the Subscriber hereby (i) joins in and agrees to be bound by the Partnership Agreement as a limited partner; (ii) designates and appoints the General Partner its true and lawful attorney, in its name, place, and stead to make, execute, sign, and file (x) the Partnership Agreement and any amendment or restatement thereto, the Partnership's Certificate of Limited Partnership and any amendment thereto and such other instruments, documents, or certificates that may from time to time be required of the Partnership by the laws of the United States of America, the laws of the state of the Partnership's formation, or any other state in which the Partnership shall conduct its affairs in order to qualify or otherwise enable the Partnership to conduct its affairs in such jurisdictions, and (y) such instruments and documents necessary to effect the transactions contemplated by the Partnership Agreement.  Such attorney is not hereby granted any authority on behalf of the Subscriber, as a limited partner, to amend the Partnership Agreement except that as attorney in fact for a limited partner, the General Partner will have the authority to execute any duly adopted amendment to the Partnership Agreement.  It is expressly intended by each Subscriber that the power of attorney granted by this paragraph is coupled with an interest, shall be irrevocable, and shall survive and not be affected by the subsequent disability or incapacity of such Subscriber (or if such Subscriber is a corporation, partnership, trust, association, limited liability company or other legal entity, by the cancellation, dissolution or termination thereof and shall extend to such subscriber's successors and assigns); provided, however, that this power of attorney granted by each Subscriber shall expire as to such Subscriber immediately after the

cancellation of the Partnership or the complete withdrawal of such Subscriber as a partner of the Partnership. This power of attorney may be exercised by such attorney-in-fact and agent for all Subscribers (or any of them) by a single signature of the General Partner with or without listing all Subscribers executing an instrument.

**Notices**

Any notice required or permitted to be given to the Subscriber in relation to the Partnership shall be sent to the address, facsimile number or e-mail address specified as the Primary Contact on the Subscriber Contact Information Form accompanying this Subscription Agreement or to such other address, facsimile number or e-mail address as the Subscriber designates by written notice received by the General Partner.

[SIGNATURE PAGES FOLLOW]

Subscription Agreement
Signature Page

## LIMITED PARTNER SIGNATURE PAGE

Execution of this Signature Page evidences the Subscriber's agreement to be bound by this Subscription Agreement and by the Partnership Agreement of Indigo Opportunities Fund II, L.P., and constitutes a counterpart Signature Page to each of the foregoing.

The Subscriber confirms that the information contained in the Subscriber Questionnaire and the Subscriber Contact Information Form is complete and accurate and will notify the General Partner immediately of any material change occurring prior to the acceptance of its subscription.

IndiCal Partners, LLC
Name of Subscriber

US$           4,000,000.00
Requested Capital Commitment

January 1, 2018
December 31, 2017
Date

**ENTITIES**                              **INDIVIDUALS**

Signature of Authorized Signatory          Signature of Subscriber

Brandon Ravin
Name of Authorized Signatory               Name of Spouse (if purchasing jointly)

Company Officer
Title of Authorized Signatory              Signature of Spouse (if purchasing jointly)

## LIMITED PARTNER SIGNATURE PAGE

Execution of this Signature Page evidences the Subscriber's agreement to be bound by this Subscription Agreement and by the Partnership Agreement of Indigo Opportunities Fund II, L.P., and constitutes a counterpart Signature Page to each of the foregoing.

The Subscriber confirms that the information contained in the Subscriber Questionnaire and the Subscriber Contact Information Form is complete and accurate and will notify the General Partner immediately of any material change occurring prior to the acceptance of its subscription.

IndiCal Partners, LLC
_____
Name of Subscriber

US$_____4,000,000.00_____
Requested Capital Commitment

January 1, 2018
~~December 31, 2017~~
_____
Date

| **ENTITIES** | **INDIVIDUALS** |
|---|---|
| _Brendan Rath_ (signature) | |
| Signature of Authorized Signatory | Signature of Subscriber |
| _Brandon Rath_ | |
| Name of Authorized Signatory | Name of Spouse (if purchasing jointly) |
| _Company Officer_ | |
| Capacity of Authorized Signatory | Signature of Spouse (if purchasing jointly) |

Subscription Agreement
Signature Page

**GENERAL PARTNER ACCEPTANCE PAGE**

Execution of this Signature Page by the General Partner constitutes acceptance of the above-named Subscriber's Subscription Agreement, and admission of such Subscriber as a limited partner of Indigo Opportunities Fund II, L.P.

IGI PARTNERS II, LLC
in its capacity as General Partner, for and on behalf of
Indigo Opportunities Fund II, L.P.

By _____

Name: _____

Its: _____

Accepted as of: _____1/1/2018_____

Amount of Capital Commitment accepted
(if less than all is accepted): US$_____4,000,000.00_____

[Limited Partner's Copy of Indigo Opportunities Fund II, L.P. Subscription Agreement]

Subscription Agreement
Signature Page

## GENERAL PARTNER ACCEPTANCE PAGE

Execution of this Signature Page by the General Partner constitutes acceptance of the above-named Subscriber's Subscription Agreement, and admission of such Subscriber as a limited partner of Indigo Opportunities Fund II, L.P.

IGI PARTNERS II, LLC
in its capacity as General Partner, for and on behalf of
Indigo Opportunities Fund II, L.P.

By _____

Name: _____

Its: _____

Accepted as of: _____1/1/2018_____

Amount of Capital Commitment accepted
(if less than all is accepted):  US$_____

[General Partner's Copy of Indigo Opportunities Fund II, L.P. Subscription Agreement]