UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CALAMAR CAPITAL SERVICES, LLC,
N.A. REALTY FUND II, LLC, and                                    Index No. 24-cv-00684-JLS
INDICAL PARTNERS, LLC

                                        Plaintiffs,

                        -against-

BCMK INVESTMENT HOLDINGS, LLC,
BRENT E. CAREY, AND
INDIGO GLOBAL ADVISORS, LLC

                                        Defendants.

-----------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**



                                        MORITT HOCK & HAMROFF LLP
                                        *Attorneys for Defendants*
                                        *BCMK Investment Holdings, LLC,*
                                        *Brent E. Carey, and Indigo Global*
                                        *Advisors, LLC*
                                        400 Garden City Plaza
                                        Garden City, New York 11530
                                        (516) 873-2000

3633752v3

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS AND STATEMENT OF THE COMPLAINT ...................................2

    A.    The Named Parties and Relevant Non-Parties .................................................... 3

    B.    The Creation Of Non-Party IGI Partners II, LLC By BCMK and Non-Party
        Glacier Point ........................................................................................................ 3

    C.    The Mandatory Arbitration and Forum Selection
        Provisions of the Governing Agreements ............................................................ 4

    D.    The Allegations in the Complaint ........................................................................ 5

ARGUMENT .......................................................................................................................6

I.  THE COURT SHOULD DISMISS THIS ACTION (OR STAY IT AND COMPEL TO
   ARBITRATION)…………………………………………………………………………6

    A.    Questions Regarding Arbitrability Must Be Resolved By The Arbitration Panel 6

    B.    The FAA Governs Enforcement of the IGI Partners II Operating Agreement and
        Investment Management Agreement Arbitration Provisions ................................ 8

II. THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS............ 10

    A.    The Court Does Not Have General Jurisdiction Over the Defendants ............... 11

    B.    The Court Does Not Have Specific Jurisdiction Over Defendants ..................... 12

    C.    Specific Jurisdiction Over Defendants is Inconsistent with Due Process ........... 14

III. IN ANY EVENT, PLAINTIFFS' CLAIMS ARE LEGALLY DEFICIENT ....................... 15

    A.    The Complaint Impermissibly Lumps Defendants Together .............................. 15

    B.    Plaintiffs' Breach of Contract Claim Is Specious and Must Be Dismissed ........ 16

i

C.      Plaintiffs Breach of Duty Against IGA Fails As A Matter Of Law .................... 17

D.      Plaintiffs' Breach of Fiduciary Duty Claim Lacks Merit .................................... 20

E.      Plaintiffs' Conversion Claim Fails ..................................................................... 21

F.      Plaintiffs' Monies Had and Received Claim Must Be Dismissed ...................... 22

G.      Plaintiffs' Fraudulent Inducement Claim Fails as a Matter of Law .................. 23

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*,
    828 F. Supp 2d 557 (E.D.N.Y. 2011) ......................................................12

*Adler v. Berg Harmon Assoc.*,
    790 F. Supp. 1222 (S.D.N.Y. 1992)........................................................24

*AFH Holding Advisory, LLC v. Emmaus Life Scis., Inc.*,
    No. CIV.A. N12C-09045MMJ, 2013 WL 2149993 (Del. Super. Ct. May 15,
    2013) .......................................................................................................23, 24

*Alitalia Linee Aeree Italiane, S.p.A v. Airline Tariff Publishing Co.*,
    580 F.Supp.2d 285 (S.D.N.Y. 2008)........................................................19

*Aquiline Capital Partners LLC v. Finarch LLC*,
    861 F. Supp. 2d 378 (S.D.N.Y 2012).......................................................12

*Ashcroft v. Iqbal*,
    5556 U.S. 662 (2009)...............................................................................15

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) .................................................................15

*Bako Pathology LP v. Bakotic*,
    288 A.3d 252 (Del. 2022) ........................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................15

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007).....................................................................12

*Boyce v. Cycle Spectrum, Inc.*,
    148 F. Supp. 3d 256 (E.D.N.Y 2015) ......................................................14

*Burger Icing Corp. v. Rudzewicz*,
    4711 U.S. 462 (1985)...............................................................................14

*Burrows Paper Corp. v. R.G. Eng'g, Inc.*,
    363 F. Supp 2d 379 (N.D.N.Y 2005)........................................................12

*BuzzFeed Media Enterprises, Inc. v Anderson*,
    2024 WL 2187054 (Del. Ch. May 15, 2024).............................................7

*Clifford Paper, Inc. v. WPP Investors, LLC,*
    2021 WL 2211694 (Del. Ch. 2021) ...................................................................17

*CLP Toxicology, Inc. v. Casla Bio Holdings LLC,*
    No. CV 2018-0783-PRW, 2021 WL 2588905 (Del. Ch. June 14, 2021) ...............21

*Contec Corp. v. Remote Solution, Co., Ltd.,*
    398 F.3d 205 (2d Cir. 2005)...............................................................................7

*Cornielsen v. Infinium Capital Mgt., LLC,*
    916 F.3d 589 (7th Cir. 2019) ............................................................................20

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014).........................................................................................11

*DDR Const. Services, Inc. v. Siemens Indus., Inc.,*
    770 F. Supp. 2d 627 (S.D.N.Y. 2011) ...............................................................18

*Di Stefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001).................................................................................11

*Dieterich v. Harrer,*
    857 A.2d 1017 (Del Ch. 2004)..........................................................................19

*Dietrich v. Bauer,*
    76 F.Supp.2d 312 (S.D.N.Y. 1999)....................................................................24

*Domansky v. Little,*
    770 N.Y.S.2d 288 (1st Dep't 2003) .....................................................................8

*El Paso Pipeline GP Co., LLC v. Brinckerhoff,*
    152 A.3d 1248 (Del. 2016) ...............................................................................17

*Estate of Eller v. Bartron,*
    31 A.3d 895 (Del. 2011) ...................................................................................18

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.,*
    375 F.3d 168 (2d Cir. 2004)..............................................................................24

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank,*
    552 Fed.Appx. 13 (2d Cir.2014).................................................................19, 20

*Florida Chem Co., LLC v. Flotek Indus., Inc.,*
    2021 WL 3630298 (Del. Ch. Aug. 17, 2021) ....................................................16

*Barenbaum ex rel. FTE Networks, Inc. v. Palleschi,*
    2020 WL 5819810 (S.D.N.Y. Sept. 30, 2020).....................................................20

3633752v3

*Gmurzynska v. Hutton*,
   257 F. Supp 2d 621 (S.D.N.Y. 2003), *aff'd,* 355 F.3d 206 (2d Cir. 2004) ............................10

*Goodrich v. E.F. Hutton Grp., Inc.*,
   542 A.2d 1200 (Del. Ch. 1988).............................................................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).............................................................................................................11

*Grunstein v. Silva*,
   No. CIV.A. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009) .....................................19

*Hao Zhe Wang v. Verizon Commc'ns Inc.*,
   No. 19-CV-9506 (JMF), 2020 WL 5982882 (S.D.N.Y. Oct. 8, 2020)...................................16

*High View Fund, L.P. v. Hall*,
   27 F. Supp. 2d 420 (S.D.N.Y. 1998).....................................................................................21

*Hume v. Farr's Coach Lines, Ltd.*,
   No. 12-CV-6378-FPG-JWF, 2016 WL 1031320 (W.D.N.Y. Mar. 8, 2016)...................10, 11

*In Deloitte (Cayman) Corp. Recovery Servs., Ltd. v. Sandalwood Debt Fund A,*
*LP*,
   31 Misc. 3d 1225(A) (NY County, Sup. Ct. 2011).................................................................23

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d. 76 (Del. 2006) ....................................................................................................7, 8

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
   828 F. App'x 740 (2d Cir. 2020) ..........................................................................................13

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009)...............................................................................................21

*Kurtzman v. Bergstol*,
   835 N.Y.S.2d 644 (2d Dep't 2007)........................................................................................18

*Lebanon Cnty. Employees' Ret. Fund v. Collis*,
   287 A.3d 1160 (Del. Ch. 2022).............................................................................................18

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..................................................................................................24

*Li v. Std. Fiber, LLC*,
   2013 WL 1286202 (Del. Ch. Mar. 28, 2018)...........................................................................8

*Morgan v. A.O. Smith Corp.*,
   265 A.D.2d 536 (2d Dep't 1999*)* ........................................................................................23

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
 980 F.Supp.2d 400 (E.D.N.Y. 2013) ...........................................................17

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
 192 A.D.3d 540 (1st Dep't 2021) .................................................................6

*Orix LF, LP v. Inscap Asset Mgmt, LLC*,
 2010 WL 1463404 (Del. Ch. Apr. 13, 2010) ................................................7

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
 83 A.D.3d 804 (2d Dept 2011) ...................................................................20

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
 817 A.2d 149 (Del. 2002) .............................................................................9

*Pincione v. D'Alfonso*,
 506 F. App'x 22 (2d Cir. 2012) .............................................................13, 14

*Reid v. Goldman, Sachs & Co.*,
 586 N.Y.S.2d 459 (Sup. Ct. N.Y. Co. 1992) ................................................8

*Roby v Corp. of Lloyd's*,
 996 F.2d 1353 (2d Cir 1993)..........................................................................9

*SCE Grp. Inc. v. City of N.Y.*,
 18-CV-8909 9AT , 2020 WL 1033592 (S.D.N.Y. Mar. 3, 2020).................16

*Skyline Steel, LLC v. PilePro LLC*,
 139 A.D.3d 646 (1st Dep't 2016) .................................................................7

*Steinberg v Sherman*,
 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ...............................................20

*Street Search Partners, L.P. v. Ricon Int'l, L.L.C.*,
 No. CIV.A. 04C-09-156PLA, 2005 WL 1953094 (Del. Super. Ct. Aug. 1,
 2005) ......................................................................................................22, 23

*Sudul v. Computer Outsourcing Services*,
 868 F. Supp. 59 (S.D.N.Y. 1994).................................................................23

*Tamam v. Fransabank SAL*,
 677 F. Supp. 2d 720 (S.D.N.Y. 2010)..........................................................13

*Touro Coll. v. Fondazione Touro Univ. Rome Onlus*,
 738 F. App'x 25 (2d Cir. 2018) ...................................................................12

*Troma Entm't, Inc. v. Centennial Pictures, In*c.,
 729 F.3d 215 (2d Cir. 2013)..........................................................................13

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
    101 F.3d 813 (2d Cir. 1996)..................................................................................8

*United Rentals, Inc. v. RAM Holdings, Inc.*,
    937 A.2d 810 (Del. Ch. 2007) 9addressing ............................................16

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960)..........................................................................................9

*Vantone Grp. LLC v. Yangpu NGT Indus. Co.*,
    13-CV-7639-LTS-MHD, 2015 WL 4040882 (S.D.N.Y. July 2, 2015)...................15

*VGS, Inc. v. Castiel*,
    2003 WL 723285 (Del. Ch. 2003) ......................................................18, 19

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................18

*Whitaker v. Am. Telecasting, Inc*,
    261 F.3d 196 (2d Cir. 2001)..........................................................................10

*Wilderness USA, Inc. v. Deangelo Bros. LLC*,
    265 F. Supp 3d 301 (W.D.N.Y 2017)..........................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)........................................................................................14

*Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*,
    No. 00 Civ. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 9, 2001) ...........................10

*Zito v. United Airlines, Inc.*,
    523 F. Supp 3d (W.D.N.Y.2021) ..................................................................11

**Statutes**

10 Del. C. § 8106 ..........................................................................................................22

9 U.S.C. § 4..................................................................................................................8

**Other Authorities**

CPLR 301.....................................................................................................................11

CPLR 302.....................................................................................................................11

CPLR 302(a)(1) ..........................................................................................................12

CPLR 302(a)(2) ......................................................................................................13

CPLR 302(a)(3)(ii) ................................................................................................13

CPLR §214(4) .......................................................................................................22

Fed. R. Civ. P. Rule 8 ...........................................................................................15

Fed. R. Civ. P. Rule 8(a) ..................................................................................2, 16

Fed. R. Civ. P. Rule 8(b) .........................................................................................7

Fed. R. Civ. P. Rule 8's .........................................................................................15

Fed. R. Civ. P. Rule 9(b) ..................................................................................2, 24

Fed. R. Civ. P. Rule 11(b) .......................................................................................7

Fed. R. Civ. P. Rule 12(b)(2) ................................................................................10

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................15

3633752v3

## PRELIMINARY STATEMENT

Defendants BCMK Investment Holdings, LLC ("BCMK"), Brent E. Carey ("Carey") and Indigo Global Advisors, LLC ("IGA") (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiffs Calamar Capital Services, LLC ("Calamar"), N.A. Realty Fund II, LLC ("N.A. Realty"), and IndiCal Partners, LLC ("IndiCal") (collectively, the "Plaintiffs") in its entirety.

In complete disregard of well-established law, the agreements upon which the Complaint is purportedly based, and the truth, Plaintiffs have asserted claims which they do not possess and which are tied to agreements to which they are not parties. In doing so, the Complaint conspicuously attempts to circumvent both the mandatory arbitration provisions of relevant agreements and the mandatory forum provisions of another agreement.

Instead, Plaintiffs have ignored the foregoing and commenced action in New York despite this Court's lack of personal jurisdiction over all Defendants, warranting dismissal of the Complaint. None of the Defendants maintains offices in New York, is registered to do business in New York, or is doing business in New York. Accordingly, Defendants are not amenable to general jurisdiction in New York. Further, the Court also lacks specific jurisdiction over Defendants as Plaintiffs' claims do not, of course, arise from Defendants' non-existent New York contacts, and the exercise of specific jurisdiction over Defendants would fall short of manifesting the minimum contacts, fair play, and substantial justice required by Constitutional due process.

As a result of the mandatory arbitration provisions in the agreements and this Court's lack of personal jurisdiction over Defendants, it need not address the legal sufficiency of the Complaint. Nevertheless, as an alternative and independent basis for dismissal (if necessary), each cause of action in the Complaint is legally deficient.

3633752v3

Initially, Plaintiff's improper group pleading permeates all of their claims,. The Complaint relies entirely on deficient collective references, lumping all Defendants together in a group pleading, and does not contain any factual allegations against any single one of the Defendants. Such Complaint does not comply with Rule 8(a) or the heightened pleading requirements of Rule 9(b).

In addition to the Complaint's group pleading deficiency, each of Plaintiffs' six claims - - for breach of contract, breach of duty, breach of fiduciary duty, conversion, money had and received, and fraudulent inducement - - are insufficient to state a claim upon which relief may be granted. Plaintiffs, as a group, have asserted contract claims concerning agreements to which they are not parties and which none of them have standing to assert - - much less all of them! Further, all alleged claims belong, if at all, to non-party entities, but not to Plaintiffs. Next, their collective breach of duty claims are legally deficient and, in any event, duplicative of Plaintiff's specious contract claims. Finally, their claims for conversion, money had and received and fraud in the inducement fare no better, and all fail under long-standing precedent as detailed herein.

## STATEMENT OF FACTS AND STATEMENT OF THE COMPLAINT

Submitted with this Memorandum and in further support of the motion are two Declarations. The Declaration of Brent E. Carey, dated July 29, 2024 (the "Carey Decl."), is submitted, *inter alia*, to authenticate documents implicitly or explicitly referred to in the Complaint. The Declaration of Robert M. Tils, dated July 29, 2024 (the "Tils Decl.") is submitted to provide the Complaint this action and the applicable arbitration rules referenced and incorporated in the mandatory arbitration provisions contained in the relevant agreements.

For purposes of this motion only, the allegations of the Complaint are assumed to be true, but only to the extent that, *inter alia*, they are not contradicted by document any evidence, are not

inherently incredible, and/or do not contain conclusory allegations or erroneous statements of law.

### A.  The Named Parties and Relevant Non-Parties

As alleged in the Complaint, Defendant Carey is a "manager, controlling member, or officer of Defendant BCMK and other related entities, including Defendant IGA." Compl., ¶6.  As further alleged, BCMK and IGA are "founders" of non-party Indigo Opportunities Fund II, LP ("Fund II").  Compl., ¶15.  Plaintiffs assert that Fund II is involved in the acquisition or creation of secured and/or collateralized loan and leases.  Compl., ¶¶16, 35.

Plaintiff Calamar is the managing member of Plaintiff N.A.  Realty, Defendant IndiCal, and non-party Glacier Point Partners, LLC ("Glacier Point.") Compl., ¶29.  Defendant N.A.  Realty is the sole member of Defendant IndiCal.  Compl., ¶31.  The Complaint alleges, in vague and non-specific terms, that after initial discussions between "Defendants" and Calamar (Compl., ¶¶ 15-16), IndiCal made a $4 million investment in Fund II.  Compl., ¶¶37-38.

### B.  The Creation Of Non-Party IGI Partners II, LLC By BCMK and Non-Party Glacier Point

Plaintiffs further allege that in connection with IndiCal's investment in Fund II, Defendant BCMK and non-party Glacier Point formed IGI Partners II, LLC ("IGI Partners II") to serve as the General Partner of Fund II.  Compl., ¶ 36. As alleged and shown in the Amended and Restated Limited Liability Company Operating Agreement for IGI Partners II, LLC attached to Plaintiffs' Complaint ("IGI Partners II Operating Agreement"), Glacier Point is both a Class A member (with a 30% membership interest) and a Class B member (with an 84.714% interest) in IGI Partners II. Compl., ¶¶39-41., Ex. A at A-1.  According to Plaintiff's allegations, Class A members (Glacier Point, BCMK, and non-party Indigo Senior Executive Holdings LLC) are allocated a proportionate share of the net profit and/or net loss from operations, while Class B members of (consisting of

non-parties Glacier Point and Kite Capital Holdings, LLC) are allocated a proportionate share of the net profit and/or net loss from fund investments.  *Id.*

However, none of the Plaintiffs - - Calamar, N.A.  Realty or IndiCal - - is either a Class A or a Class B member of IGI Partners II.  Compl., Ex. A at A-1.  Moreover, none of the Plaintiffs is on IGI Partners II's management committee.   The IGI Partners II Operating Agreement expressly states that non-party Glacier Point is one of two members (with BCMK) on IGI Partners II's management committee and that Glacier Point appointed Damon Wojciechowski as its representative on the management committee.  Compl., ¶ 48; Ex. A at B-1.  Both the Complaint and the IGI Partners II Operating Agreement provide that Mr. Wojciechowski has control of the management committee in the event of any disagreement.  Compl., ¶48; Ex. A at §6.2.  As alleged and evidenced by the Amended and Restated Limited Partnership Agreement of Indigo Opportunities Fund II, L.P.  ("Fund II Agreement"), IGI Partners II served as the General Partner of Fund II.  Compl., ¶36, Carey Decl., Ex. B.

Plaintiff IndiCal is the only party that actually invested funds with Fund II to become a limited partner of Fund II.  Compl., ¶¶ 37-38.  The agreements documenting IndiCal's investment were executed in the State of California.  *See* Carey Decl. ¶¶ 12-15, and Exs.  "D" and "E".  Pursuant to an Investment Management Agreement between IGA and non-party Fund II, by and through IGI Partners II, ("Investment Management Agreement"), IGA was engaged to serve as the exclusive investment manager of Fund II.  *See* Carey Decl., ¶5 and Ex. C thereto.

**C.     The Mandatory Arbitration and Forum Selection Provisions of the Governing Agreements**

The written agreements forming the basis for Plaintiff's claims - - whether mentioned in the Complaint or not - - provide for mandatory arbitration.   The IGI Partners II Operating Agreement sets forth a mandatory arbitration provision stating, in part, that "any controversy with

4

respect to this Agreement or the Company [IGI Partners II] …between or among any Member will be resolved by arbitration….  conducted in accordance with the rules, then applying of JAMS…. Any arbitration proceeding will be held in Los Angeles, California…."  Compl., Ex. A at §10.9. *Id*.  Section 10.2 of the IGI Partners II Operating Agreement states that the agreement and its application and interpretation will be governed exclusively by the laws of the State of Delaware. Compl., Ex. A at §10.2.

Additionally, the Investment Management Agreement between IGA and Fund II also require mandatory arbitration before JAMS, under JAMS Comprehensive Arbitration Rules and Procedures with the issues of scope and applicability of arbitration to be decided by the arbitrator(s).  Carey Decl., Ex. C at §15.[1]  Like the IGI Partners II Operating Agreement, the Investment Management Agreement is also governed by the Delaware law.  Carey Decl.  Ex. C at §14.

The Fund II Agreement also addresses disputes thereunder, providing for, *inter alia*, the application of Delaware law and exclusive jurisdiction in the State of Delaware with respect to any actions against IGI Partners II or its Affiliates.  Carey Decl., Ex. B at §11.9.

**D.  <u>The Allegations in the Complaint</u>**

The Complaint alleges purported breaches of agreements and duties by "Defendants" in a group pleading that makes it impossible to decipher which Defendant is alleged to have harmed

---

[1]  The Investment Management Agreement provides that:"[A]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in the county and state of the principal office of the Investment Manager at a time of that dispute….  The arbitration will be administered by Judicial Arbitration and Mediation Services ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures…."  *See* Carey Decl., Ex. C at §15.

which Plaintiff. *See, e.g.* Compl., ¶¶ 32, 33, 50, 51, 68, 69, 71, 83, 84, 88-91, 101-102, 104, 105, 110, 112-117, 121, 123. Rather than make specific allegations against each of the Defendants, Plaintiffs continuing "lumping parties together." *See, e.g.* Compl., ¶¶ 17-28, 60, 88-90, 105, 116.

Conspicuously absent from the Complaint are any allegations concerning which parties entered into which agreements and the provisions of those agreements concerning the resolution of any disputes. However, this Complaint does allege that the only named Plaintiff party to any agreement (Compl., ¶38) and that the harm alleged to stem from the alleged conduct of the "Defendants" is direct harm to non-party entities, IGI Partners II and Fund II, rather than any individual Plaintiff. *See* e.g., Compl., ¶¶ 133, 138.

## ARGUMENT

## I. THE COURT SHOULD DISMISS THIS ACTION (OR STAY IT AND COMPEL TO ARBITRATION)

This Court lacks subject matter jurisdiction over this dispute because, as detailed above, the IGI Partners II Operating Agreement and the Investment Management Agreement require arbitration for any and all disputes, claims or controversies arising out of or relating to the agreements. Carey Decl., Ex. A at §10.9 and Ex. C at §15. Thus, Plaintiffs, to the extent they have standing to assert such claims at all, or are required to assert them in arbitration, and this Court lacks jurisdiction to hear them.

### A. Questions Regarding Arbitrability Must Be Resolved By The Arbitration Panel

As a threshold matter, the Court must first determine whether the Court or the arbitrator(s) should decide questions of arbitrability. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract [and]…possesses no power to decide the arbitrability issue." *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 192 A.D.3d 540, 541 (1st Dep't 2021) (quoting *Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529

6

(2019)); *see also BuzzFeed Media Enterprises, Inc. v Anderson*, 2024 WL 2187054, at *5 (Del. Ch. May 15, 2024) (same).

The IGI Partners II Operating Agreement and the Investment Management Agreement contain the clear and unmistakable agreement to delegate the issue of arbitrability to the arbitration panel through incorporation of JAMS and its Comprehensive Arbitration Rules and Procedures Specifically, the Investment Management Agreement explicitly references JAMS "Comprehensive Arbitration Rules and Procedures" (Carey Decl., Ex. C §15.) while the IGI Partners II Operating Agreement refers to the "rules then applying of JAMS." Compl., Ex. A at §10.9.  In any event, both Rule 11(b) of the Comprehensive Arbitration Rules and Procedures (Tils Decl., Ex. B) and Rule 8(b) of the Streamlined Arbitration Rules and Procedures (Tils Decl., Ex. C) provide that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

New York and Delaware Courts have repeatedly held that incorporation of the JAMS Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate the issues of arbitrability.[2]  Thus, to the extent that Plaintiffs dispute that arbitration is required, this case must

---

[2] *See, e.g. Contec Corp. v. Remote Solution, Co., Ltd.,* 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Skyline Steel, LLC v. PilePro LLC*, 139 A.D.3d 646, 646 (1st Dep't 2016) ("the arbitration clause and the JAMS rule incorporated therein confer on the arbitrators the power to resolve arbitrability"); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d. 76, 80 (Del. 2006) (arbitrability question is delegated when "arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability"); *Orix LF, LP v. Inscap Asset Mgmt, LLC*, 2010 WL 1463404,

still be dismissed and arbitration compelled because the threshold issues of arbitrability must be arbitrated.

## B. The FAA Governs Enforcement of the IGI Partners II Operating Agreement and Investment Management Agreement Arbitration Provisions

The FAA applies to all contracts involving interstate commerce. *Reid v. Goldman, Sachs & Co.*, 586 N.Y.S.2d 459, 460 (Sup. Ct. N.Y. Co. 1992) (holding that the FAA applies to any written agreement to arbitrate where interstate commerce is involved). *James & Jackson*, 906 A.2d at 80 (same). Under the FAA, a case cannot proceed in court where, as here, (1) there is a valid agreement to arbitrate, and (2) the underlying dispute is encompassed by the agreement. *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996). Accordingly, courts must compel arbitration if an enforceable agreement to arbitrate the dispute exists. *See* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). Here, Plaintiffs do not dispute the enforceability of the IGI Partners II Operating Agreement or the Investment Management Agreement. Indeed, they have sought to enforce the agreements by bringing this action claiming a purported breach is thereunder.

As detailed above, the IGI Partners II Operating Agreement and the Investment Management Agreement arbitration provisions are also broad, and Plaintiffs' claims fall squarely within their scope. *See Domansky v. Little*, 770 N.Y.S.2d 288, 290 (1st Dep't 2003) (holding that

---

at *7 (Del. Ch. Apr. 13, 2010) ("so long as the Defendants have a colorable argument that their claims are arbitrable, the arbitrator-not this court-must determine the ultimate issue of substantive arbitrability"); *Li v. Std. Fiber, LLC*, 2013 WL 1286202, at *6 (Del. Ch. Mar. 28, 2018) (determining arbitrability was delegated because arbitration clause in contract incorporated "the JAMS rules, and because the JAMS rules empower arbitrators to decide issues of substantive arbitrability").

8

a broad arbitration clause creates "presumption of arbitrability"); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002) (same). "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the Court must find that the causes of action fall within the scope of the clause. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

Here, Plaintiffs' claims all arise out of or relate to the IGI Partners II Operating Agreement and/or the Investment Management Agreement.

- Count One expressly alleges breaches of the IGI Partners II Operating Agreement due to Defendants' purported failure to comply with their "contractual obligations" (Compl., ¶¶ 130-133).

- Count Two alleges a breach of duty against IGA (and all other Defendants) based on its role as the "investment manager for IGI Partners II" pursuant to the Investment Management Agreement. (Compl., ¶¶ 134-138).

- Count Three alleges breaches by "Defendants" of their "fiduciary duty to Plaintiffs in connection with the investments and other transactions." (Compl., ¶¶139-145). As such, any such duties are subsumed by these relevant agreements.

- Count Four alleges a conversion claim against Defendants while Count Five alleges monies had and received based on funds invested in Fund II. (Compl., ¶¶ 146-153).

- Count Six alleges fraudulent inducement and seeks, *inter alia*, rescission of the IGI Partners II Operating Agreement in light of alleged breaches of "contractual and fiduciary obligations." (Compl., ¶¶ 161-165)

Because each of these claims plainly arises or relates to the executed agreements, Plaintiffs are required to arbitrate them. In addition to BCMK and IGA, all claims against Carey must also be arbitrated because "disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir 1993). Here, the Complaint expressly states that Carey is the "manager, controlling member or officer of BCMK and…[IGA]." (Compl., ¶ 6). For these reasons, all of Plaintiffs' claims must be dismissed.

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

Notwithstanding that the claims asserted must either be arbitrated before JAMS (pursuant to the IGI Partners II Operating Agreement and the Investment Management Agreement), or brought in the State of Delaware (pursuant to the Fund II Agreement), this action must be dismissed pursuant to Rule 12(b)(2) for lack of both general and specific personal jurisdiction over the Defendants.

In the absence of an evidentiary hearing, Plaintiffs must make a *prima facie* showing of personal jurisdiction over Defendants.  *Whitaker v.  Am.  Telecasting, Inc*, 261 F.3d 196, 208 (2d Cir. 2001).   However, Plaintiffs, "conclusory allegations are not enough to establish personal jurisdiction." *Gmurzynska v. Hutton,* 257 F. Supp 2d 621, 625 (S.D.N.Y. 2003) (internal quotation marks omitted), *aff'd,* 355 F.3d 206 (2d Cir.  2004); *accord Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.,* No. 00 Civ.  5663, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 9, 2001) ("plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be factually supported.") (internal citations and quotation marks omitted).

A New York federal district court sitting in diversity "exercises personal jurisdiction over the parties in accordance with the law of New York."  *Hume v. Farr's Coach Lines, Ltd*., No. 12-CV-6378-FPG-JWF, 2016 WL 1031320, at *10 (W.D.N.Y. Mar.  8, 2016) (citing *Di Stefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001)).  New York Courts analyze jurisdiction by first determining whether jurisdiction lies pursuant to New York state law and, if so, then determining whether jurisdiction comports with the requirements of federal due process.  *Id.* Plaintiffs bear the burden of demonstrating that personal jurisdiction exists against Defendants.

*See DiStefano,* 286 F.3d at 84; *Zito v. United Airlines, Inc.,* 523 F. Supp 3d, 377, 382 (W.D.N.Y.2021).[3]

**A.   The Court Does Not Have General Jurisdiction Over the Defendants**

Constitutional due process prohibits courts from exercising general jurisdiction over companies unless their "affiliations with the State" in which the suit is brought are so constant and pervasive as to render it "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  The paradigmatic forum for the exercise of general jurisdiction is a business's place of incorporation or principal place of business.  s*ee Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding California court lacked general jurisdiction over a defendant that was not incorporated, or have its principal place of business, in California).     Here, although Plaintiffs allege that personal jurisdiction exists under section 301 (Compl., ¶12), Plaintiffs cannot argue that any of the Defendants are at home in New York State, such that the Court's exercise of general jurisdiction would be appropriate.  Defendants are neither formed nor have their principal places of business in New York.  Carey Decl.  ¶ 9.  Defendants are not registered to do business in New York.  *Id.*  Defendant Carey does not live, work or conduct business in New York.  *Id.* at 10. Defendants otherwise have no "continuous and systematic" contacts to suggest that they are "at-home in the state." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Accordingly, Defendants are not amenable to general jurisdiction in New York. *See, e.g. Zito,* 523 F. Supp.  3d at 385; *Wilderness USA, Inc. v. Deangelo Bros.  LLC*, 265 F. Supp 3d 301, 314 (W.D.N.Y 2017).

---

[3] New York law permits two bases for jurisdiction, with CPLR 301 providing for general jurisdiction (whether or not the claims relate to the defendant's business in New York) and CPLR 302 providing for specific jurisdiction existing over a defendant only when the claims relate to a defendant's contact with New York." *Hume*, 2016 WL 1031320, at *10;  *see also Zito,* 523 F. Supp 3d at 382.

3633752v3

**B.  <u>The Court Does Not Have Specific Jurisdiction Over Defendants</u>**

The Court also lacks specific jurisdiction over Defendants.  To determine specific

jurisdiction under CPLR 302(a)(1), a court must decide whether the defendant transacts any

business in New York, and, if so, whether the claim arises from such a business transaction.  *Best*

*Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.  2007) (citation and quotation marks

omitted).  Thus, specific jurisdiction requires actual " business transactions occurring in the

state."  *See, e.g., A.W.L.I.  Group, Inc. v. Amber Freight Shipping Lines,* 828 F. Supp 2d 557,

566 (E.D.N.Y.  2011).  The "mere existence of a contract with a New York corporation is not

sufficient to constitute the transaction of business under section [302(a)(1)] of the CPLR."

*Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp.  2d 378, 387 (S.D.N.Y 2012)

(quoting *Pieczenik v. Cambridge Antibody Tech.  Grp*., No 03 Civ.  6336(SAS), 2004 WL

527045, at *4 (S.D.N.Y Mar. 16, 2004)); *see also Burrows Paper Corp. v. R.G. Eng'g, Inc*., 363

F. Supp 2d 379, 385 (N.D.N.Y 2005).[4]

Here, this Court lacks personal jurisdiction under CPLR 302(a)(1) because Defendants did

not transact business in New York.  *See generally* Carey Decl.  The Complaint does not plead that

Defendants transact any business in New York or that there is any relationship between

Defendant's non-existent New York activities and Plaintiff's purported injury.  Hence, this dispute

does not "arise from "any business in New York, and there is no specific jurisdiction under CPLR

---

[4] Rather the inquiry is more exacting.  A non-domiciliary defendant transacts business in New York "when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business."  *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, 738 F. App'x 25, 26 (2d Cir.  2018) (citation omitted); *see Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-47 (2d Cir.  2007) ("New York Courts define transacting business as purposeful activity - - some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (internal quotation marks, citation, and alteration omitted).

12

302(a)(1).  Indeed, IndiCal's investment in Fund II was negotiated outside of New York (Carey Decl.  ¶¶12-14) and executed outside of New York through IndiCal's California office.  Carey Decl. ¶¶ 15-16, Exs.  D and E.

Likewise, there is also no jurisdiction under CPLR 302(a)(2)[5] and CPLR 302(a)(3)(ii).[6] First, as to CPLR 302(a)(2), Plaintiff does not and cannot allege that Defendants, none of which is in New York, committed any acts, much less tortious acts, within the state.  As set forth herein, there are no tort claims independent of the executed agreements which can be asserted (Point III).

Second, as to CPLR 302(a)(3)(ii), "[i]t is well-settled that residence or domicile of the injured party within New York is not sufficient predicate for jurisdiction."  *See Troma Entm't, Inc. v. Centennial Pictures, In*c., 729 F.3d 215, 215 (2d Cir.  2013). The inquiry under this statute is "where the critical events associated with the dispute took place."  *JCorps Int'l, Inc*. 828 F. App'x at 744 (quoting *Benefits By Design Corp. v. Contractor Mgmt Servs., LLC*, 75 A.D.3d 826, 830 (3d Dep't 2010)); A tort "injury occurs at the place of the 'original event' which caused it" and the original event is "distinguished…from the final economic injury and felt consequences."  *Pincione v. D'Alfonso*, 506 F. App'x 22, 26 (2d Cir.  2012) (citations omitted). Here, Defendants are Delaware entities (and a citizen of California) with operations that take place outside of New York. There are utterly no allegations that Defendants' alleged conduct and management of Fund II and IGI Partners II occurred in New York.  *See Golden Ring Int'l*, 2019 WL 4015638, at *8 (no jurisdiction where the alleged misconduct took place outside of New York).  That Plaintiff may

---

[5] CPLR 302(a)(2) permits personal jurisdiction only when an alleged tort is physically committed within the State of New York.  *See Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 730 (S.D.N.Y. 2010) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)).

[6] CPLR 302(a)(3)(ii) permits personal jurisdiction when the allege tort causes injury to a person or a property in the state if "the defendant expected or should reasonably have expected that his or her action would have consequences in New York."  *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 743 (2d Cir. 2020)(citations omitted).

13

have merely suffered an economic injury in New York is insufficient for specific jurisdiction.  *See Pincione*, 506 App'x at 26 ("[T]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not sufficient basis for jurisdiction under §302(a)(3) where the underlying events took place outside New York.")

**C.   Specific Jurisdiction Over Defendants is Inconsistent with Due Process**

The exercise of specific jurisdiction over Defendants in this case would also be inconsistent to Constitutional Due Process.  *See, e.g., Boyce v. Cycle Spectrum, Inc*., 148 F. Supp.  3d 256, 263-64 (E.D.N.Y 2015) (citations omitted).     Due Process permits a state to exercise specific jurisdiction over a non-residential defendant only if: (1) there are "minimum contacts" with New York and (2) the prospect of being a defendant in a suit in New York comports with "traditional notions of fair play and substantial justice."  *See Burger Icing Corp. v. Rudzewicz*, 4711 U.S. 462, (1985).  To establish the minimum contacts necessary to justify jurisdiction, the claim must arise out of or relate to the defendant's contact with the forum state, such that defendant "purposefully avail[ed]" himself of doing business and "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State and the plaintiff cannot be the only link between the defendant and the forum.  *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014) (citation and quotations omitted).  For the reasons set forth above, Defendants do not have "minimum contacts" with New York.  Defendants, who do not conduct business in the state, and would not anticipate being haled into a New York court.  *See generally* Carey Decl. Furthermore, it would be inconsistent with notions of "fair play and substantial justice" to subject Defendants to jurisdiction here.  As such, this Court lacks specific jurisdiction over Defendants and this case should be dismissed.

### III. IN ANY EVENT, PLAINTIFFS' CLAIMS ARE LEGALLY DEFICIENT AND SHOULD BE DISMISSED AS A MATTER OF LAW

Because this Court is not the appropriate forum for this action and it also does not have personal jurisdiction over the Defendants, the Complaint should be dismissed, and the Court need not reach the legal sufficiency of the pleading.  However, as an alternative and independent basis for dismissal, the Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 5556 U.S. 662, 678 (2009). As shown below, Plaintiff's pleading utterly fails under this standard and should be dismissed.

### A. The Complaint Impermissibly Lumps Defendants Together

To survive a Rule 12(b)(6) motion to dismiss, each of Plaintiffs' claims must allege enough facts to state a claim for relief that is plausible on its face under Rule 8.  To satisfy the requirements of Rule 8, the Complaint must "give each defendant fair notice of what the plaintiffs' claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir.  2001) (citation and internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555.  Conclusory or "'naked assertions devoid of further factual enhancement' will not satisfy Rule 8's requirements." *Vantone Grp. LLC v. Yangpu NGT Indus.  Co.*, 13-CV-7639-LTS-MHD, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (quoting *Iqbal*, 556 U.S. at 678).

Allegations against a group of defendants, generalized for the group, are insufficient to satisfy pleading standards.  *See Twombly*, 550 U.S. at 565 n.10. Group pleading – without specific facts as to each defendant – does not sufficiently state a claim for relief.  *See Atuahene*, 10 F. App'x at 34 (dismissing complaint where plaintiff "lump[ed] all defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").

Here, Plaintiffs' deficient group pleading permeates every element of their claims against Defendants.  Throughout the Complaint, Plaintiffs (who also lump themselves together—each seeking identical relief) conflate and group BCMK, Carey, and IGA as "Defendants."  Plaintiffs' collective pleading violates Rule 8(a) which "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *SCE Grp. Inc. v. City of N.Y.*, 18-CV-8909 9AT, 2020 WL 1033592, at *3 (S.D.N.Y. Mar. 3, 2020) (citing *Atuahene*, 10 F. App'x at 34).  Plaintiffs attempt to excuse this pleading failure by alleging that "Carey is the manager, controlling member, or officer" of the other named defendants and various related entities – all legally distinct corporate entities.  Compl., ¶6. Because Plaintiffs utterly fail to distinguish between the alleged conduct of each of the Defendants, and they make no allegations that would permit the Court to disregard corporate distinctions, the Complaint fails to sate a claim against any of the defendant entities.  *See Hao Zhe Wang v. Verizon Commc'ns Inc.,* No. 19-CV-9506 (JMF), 2020 WL 5982882, at *4 (S.D.N.Y. Oct. 8, 2020).

**B.  <u>Plaintiffs' Breach of Contract Claim Is Specious and Must Be Dismissed</u>**

Plaintiffs' breach of contract claim against all Defendants for breach of the IGI Partners Operating Agreement must be dismissed.  None of the Plaintiffs is a party to the IGI Partners Operating Agreement.  Rather, only non-party Glacier Point (a separate Calamar-related entity according to the Complaint), BCMK, Indigo Senior Executive Holdings, LLC and Kite Capital Holdings, LLC are members in IGI Partners II, LLC.  *See* Compl.  at ¶¶39-41 and Ex. A thereto.

"As a general matter, only a party to a contract has standing to enforce it…. Likewise, only a party to a contract has contractual obligations under the contract."  *Florida Chem Co., LLC v. Flotek Indus., Inc.*, 2021 WL 3630298 (Del.  Ch. Aug. 17, 2021); *see also Bako Pathology LP v. Bakotic*, 288 A.3d 252 (Del.  2022); *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810

(Del.  Ch. 2007) addressing both New York and Delaware law).  Accordingly, "a parent company may not enforce the contract of its wholly-owned subsidiary." *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 980 F.Supp.2d 400, 410 (E.D.N.Y. 2013) (citing *A. Servidone, Inc. v. Bridge Tech.,* 280 A.D.2d 827, 829-30 (3d Dep't 2001)).

Here, Plaintiffs' First Claim alleges that Defendants "Carey and BCMK, as members of the Management Committee…participated in breaches of the Operating Agreement." Compl., ¶ 131.  The Complaint goes on to state that "Plaintiffs have performed all of the terms of the Operating Agreement on their part." Compl., ¶ 132.  Both of these allegations are meritless.  None of Plaintiffs -- Calamar, N.A.  Realty, or IndiCal -- is a party to the IGI Partners Operating Agreement.  *See* Compl., Ex. A.  Likewise, IGA is not a party to that the IGI Operating Agreement to the IGI Partners II Operating Agreement and, therefore, could not have breached it.

In addition, any claimed diminution in "value in IGI Partners II and Fund II," as alleged in paragraph "133" of the Complaint, cannot be asserted as a claim by Plaintiffs Calamar and N.A. Realty since the Complaint concedes that only Plaintiff IndiCal invested in Fund II.  *See* Compl., at 37-38; see also Carey Decl., at ¶¶14-16 and Exs.  D and E).  In any event, even IndiCal cannot assert an individual claim for any purported damages to either IGI Partners II or Fund II, but, rather the pleaded allegations can support, if at all, only a derivative claim by Glacier Point (concerning IGI Partners II to be heard in arbitration) or IndiCal (concerning Fund II to be brought in the State of Delaware).  *See El Paso Pipeline GP Co., LLC v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016); *Clifford Paper, Inc. v. WPP Investors, LLC*, 2021 WL 2211694, *8 (Del.  Ch. 2021).

## C. Plaintiffs Breach of Duty Against IGA Fails As A Matter Of Law

Plaintiffs Second Claim alleging that "IGA breached its duty to IGI Partners II and the Plaintiffs" (Compl., at 122), should be dismissed because there is no duty owed by IGA to IGI

17

Partners II or the Plaintiffs.  To establish a breach of fiduciary duty claim, a plaintiff must prove "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct."  *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (2d Dep't 2007), *see also Lebanon Cnty. Employees' Ret.  Fund v. Collis*, 287 A.3d 1160 (Del. Ch. 2022); *Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011)).

Initially, IGI Partners II is not a party to this action, and Plaintiffs none of which is even a member of IGI Partners II has standing to assert a breach of fiduciary duty claim on IGI Partners II's behalf.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (generally, a plaintiff "must assert [its] own legal rights and cannot rest [its] claim to relief on the legal rights or interests of third parties"). Moreover, as demonstrated by the Investment Management Agreement (Carey Decl., Ex. "C"), Fund II, by and through its General Partner IGI Partners II, engaged IGA as Fund II's exclusive investment manager.  In short, there is no direct relationship and, therefore, there can be no fiduciary duty owing from IGA to IGI Partners II.  Lastly, the breach of fiduciary duty claim premised upon the allegation that IGA somehow facilitated "the transfer of IGI Partners II's capital investment for no consideration" -- a harm allegedly incurred by IGI Partners II and shared by all of IGI Partners II's members -- must be brought derivatively on behalf of IGI Partners II, rather than individually by Plaintiffs (who are not even members of IGI Partners II).  *See VGS, Inc. v. Castiel*, 2003 WL 723285 (Del. Ch. 2003) (a court looks to the nature of the wrong alleged against the LLC, not the claimant's characterization of the claim in the complaint):[7] *DDR Const.  Services, Inc. v. Siemens Indus., Inc.*, 770 F. Supp.  2d 627, 661 (S.D.N.Y. 2011) ("[u]nder New York law,

---

[7] *See VGS*, 2003 WL 723285, at *10 ("To maintain a direct lawsuit, the injury alleged must affect a stockholder alone or affect a particular stockholder right 'such as his preemptive rights as a stockholder, rights involving control of the corporation, or a wrong affecting the stockholders and not the corporation.  For these reasons, claims of waste and self-dealing ... have been held to be derivative and not individual.'") (citations omitted).

a copartner alleging conversion directly injurious to its partnership must bring that claim derivatively; partners have no standing to bring such claims directly.")

Also, notwithstanding Plaintiffs' legally deficient allegations, IGA has no direct relationship or fiduciary duty to any of the Plaintiffs. Only Plaintiff IndiCal has a limited partner interest in Fund II, to which IGA is the investment manager. Compl., ¶ 37. Thus, like IGI Partners II, to the extent Plaintiffs have alleged the "loss of value in IGI Partners II and Fund II" (Compl., 138), IndiCal could, at best, only assert a breach of fiduciary claim derivatively on behalf of Fund II. *See VGS*, 2003 WL 723285; *Dieterich v. Harrer*, 857 A.2d 1017, 1028 (Del Ch. 2004) (in determining derivative from direct claims, the court must ask "has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?")

Moreover, Plaintiffs' allegations concerning the "transfer of IGI Partners II's capital investment" (Compl., 136) in Fund II directly encompass the scope and responsibilities provided for under IGA's Investment Management Agreement with Fund II. *See* Carey Decl., Ex "C". As such, there is no independent fiduciary duty or relationship between Fund II and IGA aside from the responsibilities and obligations set forth in the Investment Management Agreement. *Alitalia Linee Aeree Italiane, S.p.A v. Airline Tariff Publishing Co.*, 580 F.Supp.2d 285, 294-95 (S.D.N.Y. 2008) ("[w]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and must be dismissed); *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, *6 (Del. Ch. Dec. 8, 2009) (contract claim precludes a fiduciary duty claim if "the duty sought to be enforced arises from the parties' contractual relationship").[8]

---

[8] *See also Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed.Appx. 13, 17 (2d Cir.2014) (quoting *Pane v. Citibank, N.A.*, 797 N.Y.S.2d 76, 77 (2005)) ("where there [is] a 'formal written agreement covering the precise subject matter of the alleged fiduciary duty,' there

D.  **Plaintiffs' Breach of Fiduciary Duty Claim Lacks Merit**

Plaintiffs' Third Claim against all Defendants alleging breaches of fiduciary duty surrounding Defendants' purported "representations and guarantees" (Compl., ¶ 142) must be dismissed.  Under both Delaware and New York law, breach of fiduciary duty claims premised on allegations that a defendant knowingly misled a plaintiff are subject to heightened pleading standards akin to fraud claims.  *See Cornielsen v. Infinium Capital Mgt., LLC*, 916 F.3d 589, 604 (7th Cir. 2019) ([b]reach of fiduciary duty and common law fraud claims under Delaware law "are subject to heightened pleading requirements"); *see also Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 808 (2d Dept 2011).   The Complaint fails to satisfy this "heightened" pleading requirement since it cannot make specific, individualized allegations against each Defendant.  Rather, it alleges breach of fiduciary duty against "Defendants."  Such group pleading is categorically improper.  *See, e.g., Barenbaum ex rel.  FTE Networks, Inc. v. Palleschi*, 2020 WL 5819810, at *11 (S.D.N.Y. Sept.  30, 2020) (holding that a complaint's allegations as to "groups of ... [defendants]" constituted "improper group pleading and cannot be used to support an allegation of knowing or intentional fiduciary duty breaches for each individual [d]efendant"); *see also Steinberg v Sherman,* 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008) (**"**a plaintiff may not rely on group pleading to assert a breach of fiduciary duty claim.")

---

is no actionable tort for a breach of fiduciary duty.") The Complaint does not allege any relationship of trust or confidence between Plaintiffs and IGA, apart from the duties and obligations set forth in the Investment Management Agreement.  *Fillmore*, 552 Fed. App'x at 17 (quoting Brooks v. Key Trust Co. Nat'l Ass'n, 809 N.Y.S.2d 270, 272–73 (2006) ("In order to establish a breach of fiduciary duty ..., [the plaintiff] must allege that, *apart from the terms of the contract*, the parties created a relationship of higher trust than would arise from [their contracts] alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties.")

In any event, the Third Claim must be dismissed for the same reasons, as detailed in the preceding section, requiring dismissal of the Second Claim for breach of duty.

**E.** **Plaintiffs' Conversion Claim Fails**

Plaintiffs' Fourth Claim for conversion is based upon IndiCal's investment of funds in Fund II.  *See* Compl., ¶¶147-150.  The conversion claim should be dismissed, on numerous grounds, as a matter of law under both New York and Delaware law.

"No Delaware Court has recognized a cause of action for conversion of money, as opposed to goods." *Goodrich v. E.F. Hutton Grp., Inc.,* 542 A.2d 1200, 1203 (Del. Ch. 1988); *see also Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 890 (Del. Ch. 2009) ("Generally, an action in conversion will not lie to enforce a claim for the payment of money.") "The rule therefore is that an action for conversion of money will lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant." *Goodrich*, 542 A.3d at 1203 (citation omitted) (dismissing conversion claim because plaintiff failed to allege that specific money was delivered to the defendant and that the defendant had any obligation to return the identical money).[9]

Furthermore, a claim for conversion is duplicative of the claim for breach of contract if the plaintiff cannot "show that he had a right to the money—other than a right pursuant to the contract." *Kuroda*, 971 A.2d at 890 (dismissing conversion claim, in part, because "[t]he only right articulated in the complaint is [plaintiff's] right to the money pursuant to the contract."); *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, No. CV 2018-0783-PRW, 2021 WL 2588905, *14

---

[9] Likewise, New York recognizes that money may be the subject of a conversion action only if the money must be held in a "specific, identifiable fund [subject to] an obligation to return or otherwise treat in a particular manner the specific fund in question." *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) ("[I]f the allegedly converted money is incapable of being described or identified…as a specific chattel, it is not the proper subject of a conversion action.") (internal citations and quotations omitted).

21

(Del. Ch. June 14, 2021) (granting dismissal of conversion counterclaim because counterclaim was essentially seeking the "satisfaction of a contractual obligation that can be satisfied by the payment of money generally"); *AD Rendon Communications, Inc*. 2007 WL 2962591 at \*4 (S.D.N.Y. Oct. 10, 2007)) (citing *Wechsler v. Hunt Health Sys., Ltd*., 330 F.Supp.2d 383, 431 (S.D.N.Y. 2004).

The Complaint alleges that Plaintiffs invested in "Indigo securities" which are "invested funds" and that Defendants have purportedly "used [] for their own purposes." (Compl., ¶¶ 147, 148, 150). The Complaint readily admits that Plaintiffs' funds were intermingled with other committed capital of Fund II (Compl., ¶ 61) and were not maintained as specifically identifiable and segregated funds. Moreover, Plaintiffs plead, and the IndiCal Letter Agreement and Subscription Agreement (Carey Decl., Exs. "D" and "E") demonstrate, that IndiCal invested its funds in Fund II pursuant to contract. Therefore, Plaintiffs' own pleading admits that the funds invested pursuant to contract are not an "identifiable fund" segregated from other monies in Fund II. Moreover, Plaintiffs' conversion claim relies upon the very same facts as their breach of contract claim. Plaintiffs have utterly failed to allege any actual wrong other than the alleged breach of contract to which they refer.[10]

### F.   Plaintiffs' Monies Had and Received Claim Must Be Dismissed

Plaintiffs' Fifth Claim for monies had and received is legally deficient and should be dismissed. The cause of action for money had and received is "an ancient cause of action subsumed by the modern law regarding breach of contract." *Street Search Partners, L.P. v. Ricon Int'l, L.L.C.,* No. CIV.A. 04C-09-156PLA, 2005 WL 1953094, \*1 (Del. Super. Ct. Aug. 1, 2005) (citation omitted).

---

[10] Independent of the above-described shortcomings, Plaintiffs' conversion claim is beyond the statute of limitations. The statute of limitations for conversion is three years in both New York and Delaware. *See* CPLR §214(4)*;* 10 Del. C. § 8106.

Further, "[t]he claim can only be made against a party in privity and not against third parties who did not receive money from the plaintiff" and also "requires proof that the defendant did not use the money for an agreed purpose." *Id*. *In Deloitte (Cayman) Corp. Recovery Servs., Ltd. v. Sandalwood Debt Fund A, LP*, 31 Misc. 3d 1225(A), *10 (NY County, Sup. Ct. 2011), the Court noted that "a claim for money had and received is the legal equivalent of an equitable claim for unjust enrichment[,]" and is therefore "barred by a commercial relationship that is exclusively governed by a valid and enforceable contract between the parties.")

In this case the Complaint expressly states that only IndiCal deposited any money into Fund II. Compl., ¶¶37-38. No other Plaintiff invested funds into Fund II. Moreover, the Complaint also does not allege that any Defendant *received* any monies from Plaintiff. Rather, IndiCal invested its funds in Fund II. Fund II is not a named-defendant. For these reasons, Plaintiffs' money had and received claim should be dismissed.

### G. <u>Plaintiffs' Fraudulent Inducement Claim Fails as a Matter of Law</u>

Plaintiffs' Sixth Claim against all "Defendants" for fraud in the inducement should be dismissed in its entirety. It is firmly settled that where a claim for fraud arises out of the same facts as a breach of contract claim, a plaintiff may not bootstrap a fraud claim to a breach of contract claim by the additional allegation that a party did not intend to meet its contractual obligation. *See e.g., Sudul v. Computer Outsourcing Services,* 868 F. Supp. 59, 61-62 (S.D.N.Y. 1994) (collecting cases applying rule). Thus, "[a] cause of action to recover damages for fraud will not lie where the only fraud alleged relates to a breach of contract." *Morgan v. A.O. Smith Corp*., 265 A.D.2d 536 (2d Dep't 1999*); see also AFH Holding Advisory, LLC v. Emmaus Life Scis., Inc*., No. CIV.A. N12C-09045MMJ, 2013 WL 2149993, *13 (Del. Super. Ct. May 15, 2013) (finding breach of contract claims and fraud claims were "based on the same operative facts")

(citing *Cornell Glasgow, LLC, v. La Grange Properties, LLC*, No. N11C–05–016 JRS CCLD, 2012 WL 2106945 (Del.  Super. Ct. June 6, 2012).  Under Delaware and New York law, where facts alleged give rise to a breach of contract claim, a plaintiff may not recover under a fraud theory unless he demonstrates a legal duty separate from the duty to perform under the contract or a fraudulent misrepresentation collateral or extraneous to the contract.  *Id.*[11]

Here, Plaintiffs' own pleading concedes that their fraud in the inducement claim is premised upon alleged breaches of contract and, therefore must be dismissed.  The Complaint expressly states that Defendants' alleged "conduct was and is intentionally wrongful, willful, deceitful, and constitutes willful misconduct *under the Operating Agreement* … [and] indifference to their civil contractual and fiduciary obligations." Compl., ¶163 (emphasis added).

---

[11] In addition, when pleading a claim for fraud, the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied, requiring Plaintiffs to set forth in detail: (1) the statement (or omissions) that he contends are fraudulent; (2) the identity of the speaker; (3) where and when the statements (or omissions) were made; and (4) why the statements (or omissions) are fraudulent.  *See Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006); *Eternity Global Master Fund, Ltd. v. Morgan Guar.  Trust Co*., 375 F.3d 168, 187 (2d Cir. 2004). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.  *See Dietrich v. Bauer*, 76 F.Supp.2d 312, 339 (S.D.N.Y. 1999) (complaint does not satisfy Rule 9(b) where "defendants are clumped together in vague allegations.") (citations omitted); *Adler v. Berg Harmon Assoc*., 790 F. Supp.  1222, 1228 (S.D.N.Y. 1992) (complaint does not satisfy Rule 9(b) where it "mask(s) the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud.")

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss the Complaint of Plaintiffs in its entirety.

Dated: Garden City, New York
      July 29, 2024

                      MORITT HOCK & HAMROFF LLP
                      *Attorneys for Defendants*
                      *BCMK Investment Holdings, LLC,*
                      *Brent E. Carey, and Indigo Global*
                      *Advisors, LLC*

                      By:  _s/ Robert M. Tils_____
                            Robert M. Tils, Esq.
                            Michael S. Re, Esq.
                            (Pro Hac Vice Motion to be filed)
                            Marshall O. Dworkin, Esq.
                            (Pro Hac Vice Motion to be filed)
                      400 Garden City Plaza
                      Garden City, New York 11530
                      (516) 873-2000
                      rtils@moritthock.com
                      msre@moritthock.com
                      mdworkin@moritthock.com

3633752v3