UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CALAMAR CAPITAL SERVICES, LLC,
N.A. REALTY FUND II, LLC, and
INDICAL PARTNERS, LLC,

              Plaintiffs,

vs.

BCMK INVESTMENT HOLDINGS, LLC,
BRENT E. CAREY, and
INDIGO GLOBAL ADVISORS, LLC,

              Defendants.

---

**AFFIDAVIT**

Case No. 1:24-cv-00684-JLS

Damon Wojciechowski, being duly sworn, states:

1. I am the president of plaintiff Calamar Capital Services, LLC ("Calamar.")

2. The managing member of Calamar is Kenneth M. Franasiak.

3. Calamar is the sole member and manager of plaintiff N.A. Realty Fund II, LLC ("N.A. Realty").

4. N.A. Realty is the sole member of plaintiff IndiCal Partners, LLC ("IndiCal"); Calamar is the sole manager of IndiCal.

5. Mr. Franasiak is also a manager of Glacier Point Partners, LLC.

6. In my role with Calamar, I was personally involved with Defendants Brent Carey and Indigo Global Advisors' ("IGA") solicitation of funds from Calamar and N.A. Realty for Indigo Opportunities Fund II, L.P. In my role as president of Calamar, I was the plaintiffs' principal contact for Defendant Carey.

7. As part of their sales pitch to invest with them, Defendants Carey and IGA provided a "Founders Round" presentation to Calamar as part of its sales pitch, a copy of which is attached as **Exhibit 1**. Defendant IGA claimed that it was seeking $100,000,000 in investments with the "founders Round" closing on December 31, 2017. This is before Calamar, N.A. Realty & IndiCal made any part of the eventual $4,000,000 investment with Defendants Carey and IGA.

8. Defendants Carey and IGA also provided a tear sheet along with the presentation for Indigo Opportunities Fund II, L.P., a copy of which is attached as **Exhibit 2**. This claims that Defendant IGA "generates attractive yields in a low rate environment by using a process-driven and repeatable approach to sourcing, underwriting and managing loan portfolios. As an opportunity fund, Indigo Global Advisors partners with regional banks on a co-investment basis to efficiently deploy capital, provide liquidity for portfolio growth and manage downside risk for each investment" and gives an investor a preferred rate of return at 8% annualized.

9. I was present for at least two in-person meeting(s) where defendant Carey came to Calamar's offices in Niagara County, New York to discuss investment opportunities with Indigo, including Indigo Opportunities Fund II, L.P..

10. These in-person meetings were substantive in nature. Topics included the Indigo Opportunities Fund II, L.P. investment as well as other Indigo investment vehicles, such as the Master Participation Fund. During these meetings we discussed the types of investments, Defendants Carey and IGA's experience, and what returns Calamar, N.A. Realty and IndiCal could expect from investing with Defendants Carey and IGA. It was also

made clear to Defendants Carey and IGA that Calamar was not just investing its own money, but that N.A. Realty had additional investors in Western New York.

11. One of Defendant Carey's trips to Western New York came after Calamar contacted Defendants Carey and IGA regarding the exit strategy and return of both N.A. Realty's capital investment and earnings. Defendant IGA, through Defendant Carey, made a presentation to me and Mr. Franasiak proposing to restructure the Indigo Opportunities Fund II, L.P. investment in another one of their investment vehicles, Indigo Master Participation L.P. A copy of the presentation for this proposal is attached as Exhibit 3.

12. Defendants Carey and IGA explained that the fastest way to expedite the return of Calamar/N.A. Realty/IndiCal's investment would be to agree to a restructuring of the existing investment. This restructuring would provide for additional time and capital to pay back the $4,000,000 investment. Calamar, N.A. Realty & IndiCal listened to the pitch and stated they wanted their investment back.

13. Calamar (and the entities it controlled) invested because of Defendants Carey and IGA's promises about their experience and control over the money to be invested. Calamar did not know at that time that Defendants Carey, IGA and BCMK would exclude Calamar, N.A. Realty and IndiCal from the governance and management of the investment so that they could benefit themselves and their related companies at our expense.

14. As part of this litigation, I reviewed the documents attached to Defendant Carey's July 29, 2024 declaration. Prior to that review, I had never seen Exhibit C to the Declaration, the January 1, 2018 Investment Management Agreement between Indigo Opportunities Fund II, L.P. and defendant Indigo Global Advisors, LLC purportedly executed

by Brandon Rath on behalf of IGI Partners II, LLC as the general partner of Indigo Opportunities Fund II, L.P.

15.    I had never seen Exhibit D to the Declaration, the January 1, 2018 letter agreement between IGI Partners II, LLC and IndiCal Partners, LLC. I did note that on this document (which is dated the same day as the prior exhibit), Defendant Carey signed on behalf of IGI Partners II, LLC, rather than Mr. Rath. Mr. Rath claimed to have signed on behalf of Calamar in its role as Managing Member of "NA Fund 2 LLC" (presumably N.A. Realty), the managing member of IndiCal. Mr. Rath did not have the authority to legally bind Calamar, or N.A. Realty or IndiCal on January 1, 2018.

16.    Mr. Rath's January 1, 2018 signature on behalf of IndiCal is even more peculiar since IndiCal wasn't formed until January 5, 2018.

17.    I had never seen Exhibit E to the Declaration, purported to be IndiCal's Subscription Booklet of Limited Partnership Interests in Indigo Opportunities Fund II, L.P. Here, Mr. Rath signed as a "company officer" of IndiCal, once again signing on January 1, 2018 even though IndiCal did not exist on that date.

18.    Defendant Carey understood Mr. Rath did not have the authority to bind IndiCal (or Calamar or N.A. Realty for that matter).

19.    Defendant Carey's awareness of Mr. Rath's authority was a result of Defendant IGA's default notices for capital calls to IndiCal (Carey Declaration Ex. F).

20.    In response to these default notices, on May 9, 2018 Calamar's counsel, Terry Burton, Esq., sent Defendant Carey correspondence making it very clear that (1) the January 1, 2018 Amended and Restated Limited Partnership Agreement of Indigo Opportunities

does not identify IndiCal as a limited partner or an investor, (2) Mr. Franasiak, as the sole Manager of Calamar, is the only person who has authority to sign binding legal commitments on behalf of Calamar (and in turn N.A. Realty and IndiCal), (3) IndiCal never gave a power of attorney to IGI Partners II, LLC, and (4) Defendant Carey didn't have the authority to unilaterally bind IGI Partners II, LLC, since the IGI Partners II was controlled by a five members management committee of which Defendant Carey was only one member. A copy of Mr. Burton's correspondence is attached hereto as **Exhibit 4**.

21. After the May 9, 2018 correspondence was sent, Defendant Carey reached out to Calamar to see if the parties could move forward in a manner that made both sides comfortable. Calamar (on behalf of N.A. Realty and IndiCal) reached an agreement with Defendant Carey, resulting in the September 1, 2018 Amended and Restated Operating Agreement for IGI Partners II, LLC.

22. N.A. Realty made the capital call payments to Indigo Opportunities Fund II, L.P. on January 9, 2018 ($1,050,000), February 13, 2018 ($1,200,000), March 29, 2018 ($260,000) and September 26 ($1,490,000).

23. In my role as the president of Calamar, I received occasional Investor Summaries regarding IndiCal's investment in Indigo Opportunities Fund II, L.P. Copies of these are attached as **Exhibit 5**. As seen in the summaries that I received, despite Defendants Carey and IGA's claim that the fund was seeking $100,000,000 in investments, IndiCal's $4,000,000 investment comprised the majority of ownership. These summaries came from an entity named "Indigo Capital Advisors, LLC" as well as from Defendant IGA. See Exhibit 5.

24. In my role as the president of Calamar, I also received occasional financial statements from IGA (both audited and unaudited) for Indigo Opportunities Fund II, L.P. (later known as Indigo Private Credit Fund, L.P.)

25. Attached as **Exhibit 6** hereto is a true and accurate copy of the September 30, 2018 unaudited consolidated financial statements of Indigo Opportunities Fund II, L.P. showing $15,814,262 in assets.

26. Attached as **Exhibit 7** hereto is a true and accurate copy of the December 31, 2020 audited consolidated financial statements of Indigo Private Credit Fund, L.P. This statement shows $21,977,512 in assets.

27. Last week I received the December 31, 2023 audited consolidated financial statements of Indigo Private Credit Fund, L.P., formerly known as Indigo Opportunities Fund II, L.P., from IGA, a true and accurate copy of which is attached as **Exhibit 8**. This statement shows $1,147,433 in assets.

28. Despite many requests, Defendants Carey, IGA and BCMK have failed to explain why they transferred all of Calamar's investment in Indigo Private Credit Fund, L.P.'s to their other companies while simultaneously claiming that the investment is worthless. According to the recent financial statements, N.A. Realty/IndiCal's initial investment in Indigo Private Credit Fund was contributed to Indigo Commercial Funding, LLC, which in turn invested in Indigo Master Participation, L.P. Indigo Commercial Funding, LLC became a wholly-owned subsidiary of Indigo Master Participation, L.P. and Indigo Private Credit Fund, L.P. because a limited partner Indigo Master Participation, L.P. Indigo Master Participation, L.P. uses Indigo Commercial Funding, LLC's assets – presumably including the $4,000,000

investment that has not been returned – as collateral under the $27,500,000 line of credit which we learned was recently retired. As seen in exhibit 3, all of these entities are managed by Defendants Carey and IGA.

Sworn to before me this 4th day of October, 2024.

———————————————
Damon Wojciechowski

Cheryl A. Green
Notary Public, State of New York
Registration No. 02GR5085836
Qualified in Erie County
Commission Expires September 29, 20__