**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES**

(IN LIQUIDATION)

CONSOLIDATED FINANCIAL STATEMENTS

December 31, 2023

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**CONSOLIDATED FINANCIAL STATEMENTS**

**CONTENTS**

**Independent Auditors' Report**                                                              1-2

**Financial Statements**

    Consolidated Statement of Financial Condition                                     3

    Consolidated Schedule of Investments                                              4

    Consolidated Statement of Operations                                              5

    Consolidated Statement of Changes in Partners' Capital                            6

    Consolidated Statement of Cash Flows                                              7

    Notes to Consolidated Financial Statements                                     8 - 19

    Supplemental Exhibit A                                                        20 - 34



**SPICER JEFFRIES LLP**

Certified Public Accountants

4601 DTC BOULEVARD, SUITE 700
DENVER, COLORADO 80237
TELEPHONE: (303) 753-1959
FAX: (303) 753-0338
www.spicerjeffries.com

## Independent Auditors' Report

To the Partners of
Indigo Private Credit Fund, L.P. and Subsidiaries (In Liquidation)

### *Opinion*

We have audited the accompanying consolidated financial statements of Indigo Private Credit Fund, L.P. and Subsidiaries (In Liquidation) (the "Partnership"), which comprise the consolidated statement of financial condition, including the consolidated schedule of investments, as of December 31, 2023, and the related consolidated statements of operations, changes in partners' capital and cash flows for the year then ended, and the related notes to the consolidated financial statements.

In our opinion, the accompanying consolidated financial statements present fairly, in all material respects, the consolidated financial position of the Partnership as of December 31, 2023, and the consolidated results of its operations and its cash flows for the year then ended, in accordance with accounting principles generally accepted in the United States of America.

### *Basis for Opinion*

We conducted our audit in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the Auditors' Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Partnership and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Emphasis of Matter - Liquidation Basis of Accounting*

As discussed in Note 1 to the consolidated financial statements, the General Partner of the Partnership approved a plan of liquidation on July 28, 2023 and determined that liquidation is imminent. As a result, the Partnership changed its basis of accounting on July 28, 2023, from the going concern basis to a liquidation basis. Our opinion is not modified with respect to this matter.

### *Responsibilities of Management for the Financial Statements*

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.



***Auditors' Responsibilities for the Audit of the Financial Statements***

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditors' report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the consolidated financial statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control—related matters that we identified during the audit.

*Spicer Jeffries LLP*

Denver, Colorado
August 27, 2024

# INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)

**CONSOLIDATED STATEMENT OF FINANCIAL CONDITION**

**December 31, 2023**

**Assets**

| | | |
|---|---|---|
| Investments   (cost $5,232,273) | $ | 1,104,771 |
| Cash | | 21,435 |
| Prepaid expenses | | 21,227 |
| **Total Assets** | $ | 1,147,433 |

Liabilities

| | | |
|---|---|---|
| Accounts payable and accrued expenses | $ | 35,336 |
| Interest payable | | 166 |
| Servicing fee payable | | 44,479 |
| Due to affiliates | | 876,714 |
| Total liabilities | | 956,695 |
| Partners' Capital | | 190,738 |
| **Total Liabilities and Partners' Capital** | $ | 1,147,433 |

See accompanying notes to financial statements.

# INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)

### CONSOLIDATED SCHEDULE OF INVESTMENTS

**December 31, 2023**

|  | Cost | Percentage of Partners' Capital | Fair Value |
|---|---|---|---|
| **Investments,** at investment value |  |  |  |
| Investment in Indigo Master Participation Fund | $ 1,232,273 | 579.2 % | $ 1,104,771 |
| **Portfolio Loans** |  |  |  |
| Peak Oil Holdings, LLC | 4,000,000 | - % | - |
| **Total Investments** (cost $5,232,273) | $ 5,232,273 | 579.2 % | $ 1,104,771 |

See accompanying notes to financial statements.

# INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)

## CONSOLIDATED STATEMENT OF OPERATIONS

| For the Year Ended December 31, 2023 | | |
|---|---|---|
| **Net Investment Income (Loss) Allocated from the Master Fund** | | |
| Income from leases | $ | 271,432 |
| Other income | | 10,982 |
| Interest expense | | (200,833) |
| Servicing fees | | (59,597) |
| Professional fees | | (27,456) |
| Line fee | | (27,072) |
| Credit facility fees | | (15,905) |
| Management fees | | (13,026) |
| Insurance expense | | (1,746) |
| Other expenses | | (3,809) |
| Net investment loss allocated from the Master Fund | | (67,030) |
| | | |
| **Collector Fund Investment income** | | |
| Interest income from loans | | 478,682 |
| Total investment income | | 478,682 |
| | | |
| **Collector Fund Expenses** | | |
| Provision for bad debts | | 478,682 |
| Insurance expense | | 22,551 |
| Management fee | | 60,668 |
| Professional fees | | 218,945 |
| Other expenses | | 2,301 |
| Total expenses | | 783,147 |
| | | |
| **Net investment loss** | | (371,495) |
| | | |
| **Realized gain allocated from the master fund** | | |
| Net realized gain on leases | | 4,354 |
| Net realized gains allocated from the master fund | | 4,354 |
| | | |
| **Realized and unrealized loss on investments** | | |
| Net change in unrealized losses | | (2,321,418) |
| Net change in unrealized losses | | (2,321,418) |
| | | |
| **Net loss on investments** | | (2,317,064) |
| | | |
| **Net Loss** | $ | (2,688,559) |

# INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)

## CONSOLIDATED STATEMENT OF CHANGES IN PARTNERS' CAPITAL

**For the year ended December 31, 2023**

|  | General Partner | Limited Partners | Total |
|---|---|---|---|
| **Partners' capital, beginning of the year** | $ 121,228 | $ 2,915,257 | $ 3,036,485 |
| **Capital distribution** | (8,438) | (148,750) | (157,188) |
| **Allocation of net loss** | (95,899) | (2,592,660) | (2,688,559) |
| **Partners' capital, end of year** | $ 16,891 | $ 173,847 | $ 190,738 |

See accompanying notes to financial statements.                                    6

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**CONSOLIDATED STATEMENT OF CASH FLOWS**

**For the Year Ended December 31, 2023**

| | | |
|---|---:|---:|
| **Cash flows from operating activities** | | |
| Net Gain / (Loss) | $ | (2,688,559) |
| Adjustments to reconcile net gain to net cash used by operating activities | | |
| Provision for bad debt | | 478,682 |
| Interest income from loans | | (478,682) |
| Net investment loss allocated from the Master Fund | | 67,030 |
| Net realized gain allocated from the Master Fund | | (4,354) |
| Net change in unrealized loss on investments | | 2,321,418 |
| Sales and proceeds from repayments | | 387,315 |
| Changes in operating assets and liabilities: | | |
| Prepaid expenses | | (529) |
| Due from borrower | | 141,935 |
| Servicing fee payable | | (29,104) |
| Due to participant | | (136,364) |
| Accounts payable and accrued expenses | | 16,550 |
| **Net cash used by operating activities** | | 75,338 |
| | | |
| **Cash flows used by financing activities** | | |
| Capital distributions, net of change in distributions payable | | (157,188) |
| **Net cash used by financing activities** | | (157,188) |
| | | |
| **Net change in cash** | | (81,850) |
| | | |
| **Cash**, beginning of year | | 103,285 |
| | | |
| **Cash**, end of year | $ | 21,435 |
| | | |
| **Supplemental Information** | | |
| Cash paid during the year for interest | $ | - |

*See accompanying notes to financial statements.*

7

# INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

1.      **GENERAL**

Indigo Private Credit Fund, L.P. and Subsidiaries, formerly known as Indigo Opportunities Fund II, L.P. (the "Partnership"), is a limited partnership formed under the laws of the State of Delaware on July 27, 2016 and which commenced operations effective January 1, 2018. Capitalized terms used but not defined herein, shall have the meanings assigned to them in the Amended and Restated Limited Partnership Agreement of the Partnership, dated January 1, 2018 (the "Partnership Agreement"). The Partnership had its initial closing on January 1, 2018, with a limited partner that is affiliated with the General Partner.  Subsequent closings were held through August 1, 2018. The term of the Partnership expired as of July 28, 2023, in accordance with the terms of the Partnership Agreement, including the Partnership Agreement's term extension provisions.  As of July 28, 2023, the Partnership commenced the winding down of the Partnership's operations and began the liquidation of the Partnership's assets as the necessary steps in the dissolution of the Partnership in accordance with the Partnership Agreement and applicable law.

The "Term" of Indigo Private Credit Fund, L.P. (the "**Partnership**") expired on July 28, 2023, in accordance with the provisions of the Partnership Agreement of the Partnership, including the Partnership Agreement's term extension provisions.  Accordingly, as of July 28, 2023, the Partnership commenced the winding down of the Partnership's operations and began the liquidation of the Partnership's assets as the necessary steps in the dissolution of the Partnership in accordance with the Partnership Agreement and applicable law.

The primary purpose of the Partnership is capital appreciation obtained primarily through the creation or acquisition of secured and/or collateralized loans, performing loans and leases, that generate returns primarily through coupon payments on loans, cash flow on leases, asset liquidations, and interest paid by borrowers.

On December 9, 2021, the Partnership contributed the Partnership's entire equity interest in Indigo Commercial Funding, LLC, a Delaware limited liability company ("ICF"), a separate bankruptcy-remote special purpose vehicle ("SPV") whose sole purpose is to make and own investments on behalf of the SPV's parent, to Indigo Master Participation, LP, a Delaware limited liability company ("IMP"), in exchange for a limited partnership interest in IMP (the "IMP Investment Transaction"). At the time of the consummation of the IMP Investment Transaction, the Partnership owned 100% of ICF.  Immediately prior to the consummation of the IMP Investment Transaction, the Partnership caused ICF to transfer a single investment asset (the "Segregated Asset") to a separate, newly-formed Delaware limited liability company, Indigo Commercial Funding I-B, LLC ("ICF1B").  The Partnership has retained ownership of ICF1B.  Accordingly, effective as of December 9, 2021, ICF became a wholly-owned subsidiary of IMP, the Partnership became a limited partner of IMP, and the Partnership held a 100% membership interest in ICF1B.

ICF funds its investment acquisitions utilizing funds provided by its parent (the Partnership prior to the IMP Investment Transaction; IMP thereafter) and borrowings under a credit facility (the "Credit Facility") provided by Cadence Bank, a Mississippi banking corporation ("Cadence Bank"). Concurrently with the consummation of the IMP Investment Transaction, Cadence Bank extended the term of the Credit Facility to September 30, 2024 and increased the borrowing limit to $27.5 million from $20 million. The investments held by ICF, along with the Segregated Asset, serve as secured collateral under the Credit Facility.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

2.      **SIGNIFICANT ACCOUNTING POLICIES**

Indigo Global Advisors, LLC, a Delaware limited liability company (the "Investment Manager"), provides investment advisory services to the Partnership and, effective as of the consummation of the IMP Investment Transaction, IMP. IGI Partners II, LLC, a Delaware limited liability company, serves as the General Partner of the Partnership.

As of December 31, 2023, IMP had three Limited Partners, including the Partnership.  Supplemental Exhibit A to these Consolidated Financial Statements contains the financial statements of IMP for the year ended December 31, 2023.

***Basis of Presentation***

The accompanying consolidated financial statements have been prepared on the liquidation basis of accounting in conformity with U.S. generally accepted accounting principles ("U.S. GAAP"). The Partnership is an investment vehicle and follows the accounting and reporting guidance in Financial Accounting Standards Board Accounting Standards Codification "ASC" Topic 946.

***Principles of Consolidation***

The accompanying consolidated financial statements include the accounts of the Partnership, IMP, ICF1B, and ICF. The SPVs (ICF and ICF1B) are structured as a limited liability companies.  ICF1B is wholly owned by the Partnership.  ICF is wholly owned by IMP.  On December 9, 2021, the Partnership contributed all of its interest in ICF to IMP.  IMP is a newly formed Delaware limited partnership established to accept subscriptions from future funds and separately managed accounts that the Investment Manager and through which it accepts equity capital for investment opportunities pursued by IMP and its subsidiaries.

The Partnership consolidates entities that are not variable interest entities (VIEs) when it has a controlling financial interest as a result of majority voting control, and it is required to measure the entities at fair value in accordance with Topic 946. The Partnership has consolidated the accounts of its wholly owned and controlled subsidiary, which is not a VIE. The SPVs are investment companies established for the general purpose of executing specific investment transactions on behalf of either the Partnership or IMP. All significant intercompany accounts and transactions have been eliminated in the accompanying consolidated financial statements.

***Fair Value Measurements***

All investments are carried at fair value. Fair value is defined as the price that would be received to sell an asset or would be paid to transfer a liability (i.e., the exit price) in an orderly transaction between market participants at the measurement date.

A three-level hierarchy was established for fair value measurements that distinguishes between market participant assumptions developed based on market data obtained from sources independent of the reporting entity (observable inputs) and the reporting entity's own assumptions about market participant assumptions developed based on the best information available in the circumstances (unobservable inputs). The hierarchy level assigned to each security in the Partnership is based on the assessment of the transparency and reliability of the inputs used in the valuation of such security at the measurement date. The three hierarchy levels are defined below:

9

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

2.       **SIGNIFICANT ACCOUNTING POLICIES (continued)**

- Level 1 – Valuations based on unadjusted quoted market prices in active markets for identical securities.
- Level 2 – Valuations based on observable inputs (other than Level 1 prices), such as quoted prices for similar assets at the measurement date; quoted prices in markets that are not active; or other inputs that are observable, either directly or indirectly.
- Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement and involve management judgment.

The availability of valuation techniques and observable inputs can vary from security to security and is affected by a wide variety of factors including, without limitation, the type of security, whether the security is new and not yet established in the marketplace, and other characteristics particular to the transaction. To the extent that valuation is based on models or inputs that are less observable or unobservable in the market, the determination of fair value requires more judgment. Those estimated values do not necessarily represent the amounts that may be ultimately realized due to the occurrence of future circumstances that cannot be reasonably determined. Because of the inherent uncertainty of valuation, those estimated values may be materially higher or lower than the values that would have been used had a ready market for the securities existed. Accordingly, the degree of judgment exercised by the General Partner in determining fair value is greatest for securities categorized in Level 3. In certain cases, the inputs used to measure fair value may fall into different levels of the fair value hierarchy. In such cases, for disclosure purposes, the level in the fair value hierarchy within which the fair value measurement in its entirety falls is determined based on the lowest level input that is significant to the fair value measurement.

Fair value is a market-based measure considered from the perspective of a market participant rather than an entity-specific measure. Therefore, even when market assumptions are not readily available, the General Partner's own assumptions are set to reflect those that market participants would use in pricing the asset or liability at the measurement date. The General Partner uses prices and inputs that are current as of the measurement date, including periods of market dislocation. In periods of market dislocation, the observability of prices and inputs may be reduced for many securities. This condition could cause a security to be reclassified to a lower level within the fair value hierarchy.

*Investment Valuation*

The valuation process for performing loans and leases uses industry standard valuation methodologies that are based on the income approach. This methodology uses various factors, including cash flows, interest rates and other terms, discount rates, credit quality, recent offers to purchase, the sale of an underlying asset or other liquidation events. Discount rates applied to estimated cash flows for an underlying asset vary by specific investment, industry, location, and nature of the asset.

The Partnership records its investment in IMP as the net asset value ("NAV") of its equity interest in IMP. IMP records its investment in ICF based upon its proportionate share of the net assets of ICF.

*Cash*

The Partnership places its cash with financial institutions, and, at certain times, cash held in such accounts may exceed the Federal Deposit Insurance Corporation insured limit.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

2.      **SIGNIFICANT ACCOUNTING POLICIES (continued)**

*Income Taxes*

In accordance with federal income tax regulations, income taxes are not levied on a partnership, but rather on the individual partners. Additionally, due to the nature of the Partnership's activities and its organization as a limited partnership, state income taxes are not imposed on the Partnership. Consequently, federal and state income taxes have not been reflected in the accompanying consolidated financial statements.

The Partnership applies the provisions of ASC 740, Income Taxes, which clarifies the accounting and disclosure for uncertainty in tax positions. The Partnership analyzed its tax filing positions in the federal, state, and foreign tax jurisdictions where it is required to file income tax returns as for all open tax years in these jurisdictions. Based on this review, no liabilities for uncertain income tax positions were required to have been recorded pursuant to ASC 740.

The Partnership recognizes accrued interest and penalties related to uncertain tax positions in operating expenses in the statement of operations. As of December 31, 2023, the Partnership did not have a liability recorded for payment of interest and penalties associated with uncertain tax positions.

The Partnership files its tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and certain state, local and foreign tax regulators. The Partnership's U.S. federal income tax return and state and local returns for 2020 through 2023 are open under the normal three-year statute of limitations and therefore subject to examination.

The Partnership does not believe that it has any tax positions for which it is reasonably possible that it will be required to record significant amounts of unrecognized tax benefits within the next twelve months.

*Investment Transactions*

The Partnership's investments in performing loans and leases are accounted for on a trade date basis. Realized gains and losses are reported on the basis of identified cost of investments sold. Deal costs incurred in connection with the purchase of the loans or leases are capitalized to the cost of the investments.

*Interest and Lease Income*

Interest income is recorded on an accrual basis to the extent that such amounts are expected to be collected. Interest income of IMP, to the extent allocable to the Partnership as a limited partner of IMP, is reflected on these Consolidated Financial Statements as interest income from loans.  Interest Income related to the ICF1B's loan to Peak Oil Holding, LLC (the "Peak Asset") has been fully reserved as the future collectability of such interest is uncertain.  Such accrued and fully reserved interest due on the Peak Asset totaled $1,180,268 at December 31, 2023.

Lease income of IMP, to the extent allocable to the Partnership as a limited partner of IMP, is reflected on these Consolidated Financial Statements as income from leases and is passed through by IMP (See IMP financial statements in Supplemental Exhibit A).

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

2.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

*Expenses*

Expenses are recorded on the accrual basis as incurred. The Partnership shall bear and be charged with all costs, fees, and expenses of the Partnership's operations. Credit facility fees incurred in connection with obtaining the line of credit are amortized ratably over the term of the line.  Legal fees incurred for setup and formation activities are amortized ratably over the term of the Partnership.

*Use of Estimates*

The preparation of financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the reported amounts of actual and contingent assets and liabilities at the date of the consolidated financial statements and the reported amounts of income or loss and expenses during the reporting period.  Actual results could differ from those estimates.

3.    **FAIR VALUE MEASUREMENTS**

In general, fair value is based upon quoted market prices, where available.  If such quoted prices are not available, fair value is based upon internally developed models that primarily use, as inputs, observable market-based parameters.  The Partnership's valuation methodologies may produce a fair value calculation that may not be indicative of net realizable value or reflective of future fair values.  While the Manager believes the Partnership's valuation methodologies are appropriate and consistent with other market participants, the use of different methodologies or assumptions to determine fair value of certain financial instruments could result in a different estimate of fair value at the reporting date. A more detailed description of the valuation methodologies used for assets and liabilities measured at fair value is set forth below.

Impaired Loans:  Impaired loans are reported at the fair value of the underlying collateral.  Collateral values are estimated using Level 3 inputs based on internally customized discounting criteria or market appraisals. As of December 31, 2023, there was a valuation allowance on impaired loans of comprising the entirety of the loan value of $4,000,000, resulting in a net fair value of $0.

 The following table presents the classification of the Partnership's fair value measurements as of December 31, 2023:

| | Level 1 | Level 2 | Level 3 | NAV | Total |
|---|---|---|---|---|---|
| **Investments** | | | | | |
| Investment in IMP | $          - | $          - | $          - | $   1,104,770 | $1,104,770 |
| Portfolio Loan | - | - | - | - | - |
| | $          - | $          - | $          - | $   1,104,770 | $1,104,770 |

Quantitative information about the Partnership's Level 3 fair value measurements of its investments is provided below.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

**3.      FAIR VALUE MEASUREMENTS (Continued)**

| Asset Investments, At fair value | Valuation Approach | Fair Value at December 31, 2023 | Unobservable Inputs | Significant Unobservable Inputs |
|---|---|---|---|---|
| Peak Oil Holdings, LLC | Market Approach Income Approach Liquidation Analysis | $          - | Discounted cash flows Comparable transactions | 10% discount rate All expected future revenue |

The Partnership's policy is to recognize transfers between levels as of the beginning of the year.  For the year ended December 31, 2023 there were no transfers between levels.

**4.      PARTNERSHIP CAPITAL**

*Contributions*

The total committed capital of the Partnership is $6,175,000 of which, $6,164,909 has been fully called as of December 31, 2023.

The General Partner is authorized to make drawdowns of capital contributions from time to time prior to the expiration of the Investment Period, for purposes of making investments and to the extent necessary to cover the expenses and liabilities of the Partnership.  In addition, the General Partner may recall previously called and distributed capital subject to the limitation that it shall not exceed 20% of a partner's committed capital prior to the expiration of the Investment Period. The liability of the limited partners is limited to the extent of their capital balance in the Partnership.

*Distributions*

Distributions shall be preliminarily allocated between the Partners pro-rata in proportion to their respective capital contributions made to acquire an investment that gives rise to the distribution proceeds. After such preliminary allocation, the General Partner's allocation shall be distributed to the General Partner and the Limited Partner's allocation shall be distributed to the Limited Partner (i) first, an amount equal to its cumulative capital contributions, (ii) second, a cumulative preferred return of 8% per annum to such partners, (iii) third, 100% to the General Partner until the General Partner has received an amount equal to 20% of the preferred return distributions of the Limited Partners; and (iv) thereafter, 20% to the General Partner and 80% to such Limited Partners.  Partners may not voluntarily withdraw any amount from the Partnership or cause its interest to be withdrawn.

The General Partner may, at its sole discretion, make distributions of cash and/or marketable securities to the partners to provide them with Partnerships to pay applicable Federal, state, and local income tax liabilities attributable to Partnership income.

Additionally, the Agreement contains a provision, which allows the Partnership to recover all or a portion of the carried interest payments previously distributed to the General Partner to the extent that at the time of the wind-up of the Partnership the cumulative carried interest distributions exceed the amount allowable under the distribution terms of the Agreement. As of December 31, 2023, based on the results of operations since inception and the financial position of the Partnership, no carried interest has been allocated to the General Partner.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

5.   **RELATED PARTY TRANSACTIONS**

The Partnership will pay to the General Partner, or an Affiliate of the General Partner designated by the General Partner, a management fee (the "Management Fee") for the services to be provided under the terms of the Agreement.  The Management Fee shall be calculated separately for each Limited Partner and is equal to 2% of the Limited partner's Investment Amount.  The Limited Partners incurred $60,668 in management fees for the year ended December 31, 2023.

Certain limited partners are related parties of the General Partner. The aggregate value of Limited Partners' capital owned by related parties on December 31, 2023 is $119,504.

6.   **MARKET AND OTHER RISK FACTORS**

*Market Risk*

The Partnership's portfolio, which consists of the Partnership's Limiter Partner interest in IMP and the Peak Asset, consists of investments having significant market and credit risk.  As a result, the Partnership is subject to market and other risk factors, directly or indirectly through its portfolio holdings, including, but not limited to the following:

The value of the investments made by IMP and the Partnership's Peak Asset may significantly fluctuate during the period of investment.  Investments made by IMP may decline in value due to factors affecting securities markets generally or particular industries represented in the securities markets.  The value of an IMP investment may decline due to general market conditions, which are not specifically related to such investments such as real or perceived adverse economic conditions, changes in the general outlook for corporate earnings, changes in interest or currency rates or adverse investor sentiment generally. They may also decline due to factors that affect a particular industry or industries such as labor shortages or increased production costs and competitive conditions within an industry.

*Concentration of Investments*

The IMP's investment program may result in a focused investment portfolio both in terms of the aggregate number of investment positions to be held and potentially the number of sectors or industries to which such positions relate.  The concentration of the Partnership's investment in IMP, whose investments are concentrated, would subject the Partnership to a greater degree of risk with respect to the failure of one or a few investments, or with respect to economic downturns in relation to an individual industry, borrower, region, or property type.  Such is also the case with the Partnership's investment in the Peak Asset, which is currently impaired.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

6.      **MARKET AND OTHER RISK FACTORS (Continued)**

*Credit Risk*

While loans and leases acquired by the Partnership are intended to be collateralized, the Partnership may be exposed to losses resulting from default and foreclosure. Therefore, the value of the underlying collateral, the creditworthiness of the borrower, and the priority of the lien are all of great importance. The Partnership cannot guarantee the adequacy of the protection of the Partnership's interests, including the validity or enforceability of the loan or lease and the maintenance of the anticipated priority and perfection of the applicable security interests. Furthermore, the Partnership cannot assure that claims may not be asserted that might interfere with enforcement of the Partnership's rights. In the event of a foreclosure, the Partnership or an affiliate of the Partnership may assume direct ownership of the underlying asset. The liquidation proceeds upon sale of such asset may not satisfy the entire outstanding legal balance on the loan or lease resulting in a loss to the Partnership.  Any costs or delays involved in the effectuation of a foreclosure of the loan or lease or a liquidation of the underlying property will further reduce the proceeds and thus increase the loss.

There are no restrictions on the credit quality of the investments in which the Partnership intends to invest.  Investments may be deemed by nationally recognized rating agencies to have substantial vulnerability to default in payment of interest and/or principal.  Some investments may have low quality ratings or be unrated.  Lower rated and unrated investments have major risk exposure to adverse conditions and are considered to be predominantly speculative.  Generally, such investments offer a higher return potential than higher rated investments but involve greater volatility of price and greater risk of loss of income and principal.

In general, the ratings of nationally recognized rating organizations represent the opinions of these agencies as to the quality of the securities they rate.  Such ratings, however, are relative and subjective; they are not absolute standards of quality and do not evaluate the market value risk of the relevant securities.  It is also possible that a rating agency might not change its rating of a particular issue on a timely basis to reflect subsequent events.  The General Partner may use these ratings as initial criteria for the selection of portfolio assets for the Partnership but is not required to utilize them.

*Limited Liquidity of Investments*

The Partnership investment in IMP and the Peak Asset are investments that are not readily marketable.  IMP's portfolio is not readily marketable.  The Partnership's cash flow is wholly dependent upon distributions from IMP.  Although the Partnership believes it will receive its allocation of available cash through distributions from IMP, IMP may not generate available cash for distribution to IMP's limited partners, including the Partnership.  Available cash would be generated from loan and lease income, as well as sales on investments.  Illiquid investments (whether of the Partnership or IMP) may trade at a discount from comparable, more liquid investments, and at times, there may be no market at all for such investments.  Subordinate investments may be less marketable or in some instances illiquid because of the absence of registration under federal securities laws, contractual restrictions on transfer, the small size of the market, and the small size of the issue (relative to issues of comparable interests).  As a result, IMP may encounter difficulty in selling its investments and the Partnership may encounter difficulty in selling its investment in IMP.  Due to the current impaired nature of the Peak Asset, the Partnership may encounter difficulty in selling the Peak Asset, whether at the value reflected on these Consolidated Financial Statements or at a higher or lower amount.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

6.     **MARKET AND OTHER RISK FACTORS (continued)**

*Counterparty Risk*

Some of the markets in which the Partnership may affect its transactions are "over-the-counter" or "interdealer" markets. The participants in such markets are typically not subject to credit evaluation and regulatory oversight as are members of exchange-based markets. This exposes the Partnership to the risk that a counterparty will not settle a transaction in accordance with its terms and conditions because of a dispute over the terms of the applicable contract (whether or not such dispute is valid) or because of a credit or liquidity problem, causing the Partnership to suffer a loss. Such "counterparty risk" is accentuated for contracts with longer maturities where events may intervene to prevent settlement or where the Partnership has concentrated its transactions with a single or small group of counterparties.

*Portfolio Valuation*

Valuations of the Partnership's portfolio, which can affect the amount of the Management Fee and the Carried Interest, involve significant uncertainties and determinations based on judgments. Because of the inherent uncertainty of valuing investments not traded on public exchanges such as the Partnership's investment in IMP and the Peak Asset that currently constitute all of the Partnership's portfolio, the valuation of the Partnership's investment portfolio reflected on these Consolidated Financial Statements may differ significantly from the value that will ultimately be realized on such investments or the value that would have been used had a public market for the Partnership's investments existed, and these differences could be material. Even third-party pricing information may at times not be available regarding certain investments. In addition, material events occurring after the close of a secondary market upon which a portion of the investments of the Partnership are traded may require the Investment Manager to make a determination of the effect of a material event on the value of the investments traded on the market for purposes of determining the value of the Partnership's investments on a valuation date. Further, because of the overall size and concentrations in particular markets and maturities of positions that may be held by the Partnership from time to time, the liquidation values of the Partnership's securities and other investments may differ significantly from the interim valuations of these investments derived from the valuation methods described herein. If the Partnership's valuation should prove to be incorrect, the fair value of the Partnership's investments could be materially and adversely affected.

Peak's operations, particularly exploration and production, can be affected by changing political, regulatory, and economic environments in the State of California in which it operates. As has occurred in the past, actions could be taken by local and state governments to impact drilling, oil exploration or production rights.

*Reliance upon the Investment Manager*

The success of the Partnership depends on the ability of Indigo Global Advisors, LLC, as Investment Manager, to develop and implement investment strategies to achieve the Partnership's investment objectives. The Partnership's investment performance could be materially and adversely affected if the Investment Manager were to cease to be involved in the active management of the business. The Investment Manager's staff devotes a substantial amount, but not all, of their time to managing the Partnership's portfolio. They may devote some of their time to other investment activities. Limited Partners have no right or power to take part in the Partnership's management. Except under specified circumstances, if the Investment Manager ceases to perform assigned duties, is dissolved, or becomes insolvent, the Partnership will be dissolved.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

6. **MARKET AND OTHER RISK FACTORS (continued)**

   *Operating Deficits*

   The costs of operating the Partnership (including fees payable to the Investment Manager and the General Partner and organizational costs and expenses) could exceed the Partnership's income. The fees the Partnership pays may be higher than those charged to other private investment funds. If the costs exceed its income, the difference must be paid out of the Partnership's capital, reducing the Partnership's investments and potential for profitability.

7. **CREDIT FACILITY**

   The Partnership, through its wholly-owned SPV (ICF, prior to the IMP Investment Transaction, and ICF1B) funds its investment activities, in part, through the Credit Facility. The Credit Facility had a $20 million borrowing limitation and was scheduled to expire in 2021. On December 9, 2021, concurrently with the consummation of the IMP Investment Transaction, the Credit Facility expiration date was extended to September 30, 2024 and the borrowing limitation was increased to $27.5 million. Interest on the principal balance outstanding under the Credit Facility is payable monthly and calculated at a rate equal to LIBOR plus 3.5% of the outstanding principal balance. The Credit Facility also imposes a 0.25% unused line fee, also payable monthly. The amount outstanding on the Credit Facility allocated to the Partnership as of December 31, 2023 was $876,714 and found in the Due to Affiliates line item on the Consolidated Statement of Financial Condition. The Credit Facility requires the maintenance of specified asset and debt values and ratios and is secured by the loans and leases held by ICF and ICF1B.

   In 2023, Cadence Bank reduced the borrowing base with respect to the Segregated Asset, which required a reduction of the Credit Facility principal balance and resulted in the due to affiliate balance of $876,714 reflected on the accompanying financial statements. This item is owed entirely to ICF by ICF1B.

   On June 30, 2023, the Credit Facility was amended to replace the LIBOR index with Term SOFR as benchmark used to calculate interest. Accordingly, as of July 1, 2023, the interest rate for the Credit Facility is calculated as Term SOFR plus 350 basis points.

8. **FINANCIAL HIGHLIGHTS**

   The internal rate of return ("IRR") of the limited partners for the year ended December 31, 2023, net of all fees is -34.87%.

| Ratio to weighted average Limited Partners' capital: | | Amount |
|---|---|---|
| Provision for bad debts | 19.27% | 478,682 |
| Professional fees | 8.81% | 218,945 |
| Management fee | 2.44% | 60,668 |
| Insurance expense | 0.91% | 22,551 |
| Other expenses | 0.09% | 2,301 |
| Total expenses | 31.52% | 783,147 |
| | | |
| Net Investment gain(loss) | -14.95% | (371,495) |

17

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

8.    **FINANCIAL HIGHLIGHTS (continued)**

The internal rate of return (IRR) of the limited partner class since inception of the Partnership to the General Partner and is computed based on the actual dates of capital contributions and distributions and the ending aggregate limited partners' capital balances (residual value).

9.    **PEAK ASSET**

On June 27, 2018, Indigo Direct Lending, LLC ("IDL") entered into a loan agreement with Peak Oil Holdings, LLC ("Peak") whereby IDL loaned Peak the sum of $4,000,000 (the "Peak Asset"). On June 27, 2018, IDL assigned the Peak Asset together with IDL's rights under the loan agreements it entered into with Peak, including a Security Agreement and Deed of Trust, to ICF (then known as IOFII Equity Holdings I, LLC). On October 23, 2018, ICF and Peak executed a First Amendment to the loan documents raising the Peak Asset principal amount to $5,500,000. On October 23, 2018, ICF sold a 27.27% participation in the Peak Asset to ASC-Peak Loan, LLC.  On February 28, 2019, ICF and Peak executed a First Amendment and Restated Term Promissory Note with revised terms of payment, but without any change in the maturity date of July 1, 2021. The Deed of Trust was thereafter assigned by ICF to Indigo Commercial Funding I-B LLC ("ICF1B") as of December 9, 2021.

On June 8, 2019, ICF issued a notice of default to Peak for failure to make loan payments as required under the loan agreements.

The Country of Ventura ("County") issued 145 Conditional Use Permits ("CUP") from the late 1940's to 2016.  Of the 145 CUPs, 40 are discretionary "special use permits" issued prior to 1966 that have no expiration date.  Peak is authorized to operate under one of these discretionary permits ("Fully Vested CUPs") and these Fully Vested CUPs do not limit the number of wells that can be drilled per permit.  When Peak acquired the economic interests in the acreage subject to one of such Fully Vested CUP, its rights were governed by the Fully Vested CUP which required only ministerial non-discretionary zoning clearance approvals.  In 2012, Peak received zoning clearance to drill 24 wells and construction-related facilities on the acreage.  In October 2014, Peak began drilling nine wells and temporary facilities on the acreage. During the economic downturn from 2014 to 2017, Peak did not drill or construct permanent facilities. In March 2018, Peak commenced drilling of six additional wells and temporary facilities.

In January of 2019, Peak received a Notice of Violation ("NOV") related to its temporary facilities. Peak cooperated with the County's NOV and prepared typical administrative and procedural responses by submitting a compliance agreement and filing an NOV appeal. In April 2019, two days after submitting the compliance agreement and despite the pending appeal of the NOV, the County issued to Peak a Notice of Nullification ("NON").  The County's NON alleged Peak's 2012 zoning clearance was not a true and correct form because Peak never planned to complete the scope of work approved under the clearance.  Peak submitted the same scope of work in zoning clearance applications in 2012, 2015, 2017, and 2018 without objections from the County.  The County scheduled Peak's NOV and NON appeals for a hearing with the Planning Commission in August 2019. Peak subsequently appealed to the County Board of Supervisors which ultimately denied Peak's appeals in March 2020.

**INDIGO PRIVATE CREDIT FUND, L.P. AND SUBSIDIARIES (IN LIQUIDATION)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

---

9.    **PEAK ASSET (Continued)**

On January 27, 2021, having exhausted all administrative remedies available to it, Peak filed an action against the County in the United States District Court (Western Division-Los Angeles) (the "District Court"). After acquiring the rights to develop certain minerals in the County, the County prevented Peak from drilling resulting in Peak bringing an action against the County alleging two causes of action: (a) Violation of the Takings Clause of the Fifth Amendment and (2) Violation of Civil Rights (U.S.C. 42 Section 1983). HBH Farm, LLC ("HBH") and other mineral rights owners alleged certain counterclaims in the action before the District Court. On May 30, 2023, after three amendments, the District Court granted a motion to dismiss Peak's first cause of action with prejudice. This leaves only the cause of action for Violation of Civil Rights. The trial date is now scheduled for December 3, 2024.  On September 11, 2023, the County filed a motion for summary judgment on the Violation of Civil Rights under Federal Rule of Civil Procedure 56.  On December 13, 2023, the trial court granted the County of Ventura's motion for summary judgment.  On December 14, 2023, the trial court ordered the action be dismissed with prejudice.  On January 8, 2024, Peak filed an appeal of judgment. On January 17, 2024, the Court entered Judgment dismissing the entire action in error.  The trial court initially vacated the judgment, and the appellate court dismissed Peak's appeal.  The County and the HBH landowner still have claims against Peak which they intend to pursue. The County also has claims against HBH landowner.  Indigo has been informed by Peak/Peak-counsel that Federal court have procedural rule(s) in which all party's claims must be resolved before any party can file an appeal.  Peak has communicated to ICF that the refiling of their appeal is awaiting the resolution of the County and HBH landowner claims.  As of August 30, 2024, ICF believes Peak fully intends to refile their appeal upon clearing the respective procedural issues, although the timing of refiling the appeal is unclear as of this date.

On June 20, 2023, HBH filed an action in Ventura County Superior Court Case against Peak to quiet title.  HBH is asserting that Peak's mineral rights interest under several leases have expired.  ICF1B was also named as a defendant in this action.  HBH claims that since Peak has no leasehold interest in the HBH property, ICF1B's Deed of Trust is void as it is the assignee of the lease and further Peak never requested the plaintiff's consent to the ICF1B lien, alleging that the Deed of Trust is invalid from inception. HBH's second cause of action is for damages under California Civil Code Section 883.140.  ICF1B has agreed not to contest the quiet title claims against ICF1B in exchange for HBH waiving the damage claims made against ICF. On July 16, 2024, ICF1B entered into a settlement agreement with HBH to waive any further rights in the HBH property and the equipment thereon, in exchange for HBH waiving damage claims against ICF1B.

On July 25, 2023, ICF1B filed a breach of contract case against Peak seeking a monetary judgment in the amount of $7,922,274.21.  On September 26, 2023, a default judgment was entered in favor of ICF.  The court entered the judgment against the borrower on January 29, 2024, in favor of ICF1B for damages of $7,922,274.21, attorney fees of $83,272.74 and costs of $593.67 for a total of $8,006,140.62.

10.    **SUBSEQUENT EVENTS**

The Partnership has performed an evaluation of subsequent events through August 27, 2024, which is the date the financial statements were available to be issued. The evaluation did not result in any subsequent events that required disclosures and/or adjustments except as disclosed below.

**SUPPLEMENTAL EXHIBIT A**

**INDIGO MASTER PARTICIPATION, LP**

FINANCIAL STATEMENTS

For the year ending December 31, 2023

# INDIGO MASTER PARTICIPATION, LP

**FINANCIAL STATEMENTS**

**CONTENTS**

**Independent Auditors' Report**   1-2

**Financial Statements**

    Statement of Financial Condition   3

    Statement of Operations   4

    Statement of Changes in Partners' Capital   5

    Statement of Cash Flows   6

    Notes to the Financial Statements   7-11

**Appendix:**

    Audited Financial Statements of Indigo Commercial Funding, LLC



**SPICER JEFFRIES LLP**
Certified Public Accountants

4601 DTC BOULEVARD, SUITE 700
DENVER, COLORADO 80237
TELEPHONE: (303) 753-1959
FAX: (303) 753-0338
www.spicerjeffries.com

## <u>Independent Auditors' Report</u>

To the Partners of
Indigo Master Participation, LP

### *Opinion*

We have audited the accompanying financial statements of Indigo Master Participation, LP (the "Partnership"), which comprise the statement of financial condition as of December 31, 2023, and the related statements of operations, changes in partners' capital and cash flows for the year then ended, and the related notes to the financial statements.

In our opinion, the accompanying financial statements present fairly, in all material respects, the financial position of the Partnership as of December 31, 2023, and the results of its operations and its cash flows for the year then ended, in accordance with accounting principles generally accepted in the United States of America.

### *Basis for Opinion*

We conducted our audit in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the Auditors' Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Partnership and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Responsibilities of Management for the Financial Statements*

Management is responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern within one year after the date that the financial statements are issued or available to be issued.

### *Auditors' Responsibilities for the Audit of the Financial Statements*

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditors' report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.



In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control—related matters that we identified during the audit.

*Spicer Jeffries LLP*

Denver, Colorado
July 23, 2024

# INDIGO MASTER PARTICIPATION, LP

**STATEMENT OF FINANCIAL CONDITION**

---

**December 31, 2023**

**Assets**

| | | |
|---|---|---:|
| Investment in Indigo Commercial Funding, LLC, at fair value (cost $8,686,464) | $ | 8,686,464 |
| Cash | | 49,657 |
| Prepaid expenses | | 93,153 |
| **Total Assets** | $ | 8,829,274 |

| | | |
|---|---|---:|
| Liabilities | | |
| Accounts payable and accrued expenses | $ | 29,142 |
| Total liabilities | | 29,142 |
| Partners' Capital | | 8,800,132 |
| **Total Liabilities and Partners' Capital** | $ | 8,829,274 |

# INDIGO MASTER PARTICIPATION, LP

**STATEMENT OF OPERATIONS**

**For the year ending December 31, 2023**

**Net Investment Income (Loss) Allocated from Indigo Commercial Funding, LLC**

| | | |
|---|---|---:|
| **Investment income (loss)** | | |
| Interest income from loans | $ | 642,501 |
| Income from leases | | 1,893,979 |
| Other income | | 65,870 |
| Interest expense | | (1,768,799) |
| Credit facility fees | | (136,700) |
| Servicing fees | | (541,763) |
| Line fee | | (152,198) |
| Professional fees | | (180,190) |
| Other expenses | | (116,811) |
| | | (294,112) |
| | | |
| **Partnership Fund Expenses** | | |
| Administrative fee | | 79,372 |
| Fund administration fees | | 76,200 |
| Amortized organizational costs | | 31,095 |
| Professional fees | | 33,060 |
| Other expenses | | 973 |
| | | |
| Total Partnership fund expenses | | 220,700 |
| | | |
| **Net investment loss** | | (514,812) |
| | | |
| **Realized and unrealized gain (loss) on investments allocated from Indigo Commercial Funding, LLC** | | |
| Net realized gain(loss) on loans | | 20,873 |
| Net realized gain(loss) on leases | | 4,354 |
| Net realized gain on loans and leases | | 25,228 |
| | | |
| **Total net realized gain allocated from Indigo Commercial Funding, LLC** | | 25,228 |
| | | |
| **Net loss** | $ | (489,584) |

# INDIGO MASTER PARTICIPATION, LP

**STATEMENT OF CHANGES IN PARTNERS' CAPITAL**

**For the year ending December 31, 2023**

|  | General Partner | Limited Partners | Total |
|---|---|---|---|
| **Partners' capital, January 1, 2023** | $          - | $      6,879,027 | $      6,879,027 |
| **Capital contributions** | - | 3,579,879 | 3,579,879 |
| **Capital withdrawals** | - | (1,169,190) | (1,169,190) |
| **Allocation of net loss** | - | (489,584) | -(489,584) |
| **Partners' capital, December 31, 2023** | $          - | $      8,800,131 | $      8,800,131 |

# INDIGO MASTER PARTICIPATION, LP

**STATEMENT OF CASH FLOWS**

---

**For the year ending December 31, 2023**

| | | |
|---|---|---:|
| **Cash flows from operating activities** | | |
| Net loss | $ | (489,584) |
| Adjustments to reconcile net loss to net cash used by operating activities | | |
| Contributions to Indigo Commercial Funding, LLC | | (3,542,878) |
| Proceeds from Indigo Commercial Funding, LLC | | 1,437,000 |
| Net investment loss allocated from Indigo Commercial Funding, LLC | | 294,112 |
| Net realized gain allocated from Indigo Commercial Funding, LLC | | (25,228) |
| Credit facility fees | | |
| Changes in operating assets and liabilities: | | |
| Organizational costs, net | | 31,095 |
| Prepaid expenses | | (40,950) |
| Accounts payable and accrued expenses | | (27,221) |
| **Net cash used by operating activities** | | (2,363,654) |
| | | |
| **Cash flows from financing activities** | | |
| Capital contributions | | 3,579,879 |
| Capital distributions | | (1,169,190) |
| **Net cash from financing activities** | | 2,410,689 |
| | | |
| **Net change in cash** | | 47,035 |
| | | |
| **Cash**, January 1, 2023 | | 2,622 |
| | | |
| **Cash**, December 31, 2023 | $ | 49,657 |

# INDIGO MASTER PARTICIPATION, LP

**NOTES TO FINANCIAL STATEMENTS**

---

1.     **GENERAL**

Indigo Master Participation, LP, (the "Partnership"), a limited partnership formed under the laws of the State of Delaware on September 23, 2021, commenced operations on December 9, 2021. Capitalized terms used but not defined herein shall have the meaning assigned to them in the Limited Partnership Agreement, dated as of October 27, 2021 (the "Partnership Agreement").  IGI Master Participation GP, LLC is the general partner for the Partnership (the "General Partner")

The Partnership's objective is to seek returns of loan and collateralized lease investments primarily through coupon payments on loans, periodic payments on collateralized leases, short term capital gains, long term investment gains, asset liquidations and all other interest and charges paid by borrowers and lessees from time to time in connection with financing received from investment vehicles owned by the Partnership.

The Partnership had its initial closing on December 9, 2021, at which Indigo Private Credit Fund, LP (f/k/a Indigo Opportunities Fund II, L.P.), a Delaware limited partnership ("IPCF"), contributed IPCF's entire equity interest in Indigo Commercial Funding, LLC, a Delaware limited liability company ("ICF"), with the exception of one of ICF's investments (the "Segregated Asset"), to the Partnership in exchange for a limited partner interest in the Partnership (the "IPCF Investment Transaction").  Also effective December 9, 2021, the Partnership accepted the subscription of a second investor whose investment was made through funds in an account separately managed by an affiliate of the General Partner (the "Second Partner").  Both of these transactions were consummated concurrently with an extension of the term, and increase in the borrowing limitation, of ICF's credit facility (the "Credit Facility") with Cadence Bank, a Mississippi banking corporation ("Cadence Bank").  The Segregated Asset is held by a Delaware limited liability company named "Indigo Commercial Funding I-B, LLC" ("ICF1B") and constitutes an asset subject to the security interest granted under the Credit Facility. ICF1B is wholly-owned by ICF and the sole asset of ICF1B is the Segregated Asset. Similar to the structure and method of business operations of ICF prior to the contribution of ICF, the Partnership conducts its business through ICF, whereby ICF originates and acquires loans and collateralized leases of third parties utilizing its parent's funds and the borrowing leverage provided under the Credit Facility.

Due to the nature of the forms of contributions made by IPCF and the Second Partner and in anticipation of future acceptances of subscriptions to purchase additional limited partner interests in the Partnership, the Partnership internally monitors the payments received by the Partnership and expenses incurred (including interest accruals and payments under the Credit Facility) generated by or incurred with respect to the assets of ICF as of December 9, 2021, the date of the consummation of the IPCF Investment Transaction, and any proceeds of such ICF assets.  It is the Partnership's policy that no other limited partner has an interest in such assets (or proceeds from such assets).

During the Partnership's fiscal year ended December 31, 2023 (the "2022 Fiscal Year"), the Partnership accepted subscriptions from two parties who, upon the Partnership's acceptance thereof, became limited partners in the Partnership.  One limited partner contributed an aggregate $1,400,000 to the Partnership during the 2023 Fiscal Year. The other partner, a related party entity, contributed a net book value of $2,179,879 to the Partnership during the 2023 Fiscal Year.

Indigo Global Advisors, LLC a Delaware limited liability company (the "Investment Manager"), acts as the Partnership's exclusive investment advisor with authority to make investment decisions on behalf of the Partnership.

# INDIGO MASTER PARTICIPATION, LP

**NOTES TO FINANCIAL STATEMENTS**

---

2. **SIGNIFICANT ACCOUNTING POLICIES**

*Basis of Presentation*

The accompanying financial statements have been prepared on the accrual basis of accounting in conformity with U.S. generally accepted accounting principles ("U.S. GAAP"). The Partnership is an investment company and follows the accounting and reporting guidance in Financial Accounting Standards Board Accounting Standards Codification "ASC" Topic 946. The Partnership has one main investment, Indigo Commercial Funding, LLC, for which the audited financial statements can be found in Exhibit A of these financial statements.

*Fair Value Measurements*

All investments are carried at fair value. Fair value is defined as the price that would be received to sell an asset or would be paid to transfer a liability (i.e., the exit price) in an orderly transaction between market participants at the measurement date.

A three-level hierarchy was established for fair value measurements that distinguishes between market participant assumptions developed based on market data obtained from sources independent of the reporting entity (observable inputs) and the reporting entity's own assumptions about market participant assumptions developed based on the best information available in the circumstances (unobservable inputs). The hierarchy level assigned to each security in the Partnership is based on the assessment of the transparency and reliability of the inputs used in the valuation of such security at the measurement date. The three hierarchy levels are defined below:

- Level 1 – Valuations based on unadjusted quoted market prices in active markets for identical securities.
- Level 2 – Valuations based on observable inputs (other than Level 1 prices), such as quoted prices for similar assets at the measurement date; quoted prices in markets that are not active; or other inputs that are observable, either directly or indirectly.
- Level 3 – Valuations based on inputs that are unobservable and significant to the overall fair value measurement and involve management judgment.

The availability of valuation techniques and observable inputs can vary from security to security and is affected by a wide variety of factors including, without limitation, the type of security, whether the security is new and not yet established in the marketplace, and other characteristics particular to the transaction. To the extent that valuation is based on models or inputs that are less observable or unobservable in the market, the determination of fair value requires more judgment. Those estimated values do not necessarily represent the amounts that may be ultimately realized due to the occurrence of future circumstances that cannot be reasonably determined. Because of the inherent uncertainty of valuation, those estimated values may be materially higher or lower than the values that would have been used had a ready market for the securities existed. Accordingly, the degree of judgment exercised by the General Partner in determining fair value is greatest for securities categorized in Level 3. In certain cases, the inputs used to measure fair value may fall into different levels of the fair value hierarchy. In such cases, for disclosure purposes, the level in the fair value hierarchy within which the fair value measurement in its entirety falls is determined based on the lowest level input that is significant to the fair value measurement.

Fair value is a market-based measure considered from the perspective of a market participant rather than an entity-specific measure. Therefore, even when market assumptions are not readily available, the General Partner's own assumptions are set to reflect those that market participants would use in pricing the asset

# INDIGO MASTER PARTICIPATION, LP

**NOTES TO FINANCIAL STATEMENTS**

---

or liability at the measurement date. The General Partner uses prices and inputs that are current as of the measurement date, including periods of market dislocation. In periods of market dislocation, the observability of prices and inputs may be reduced for many securities. This condition could cause a security to be reclassified to a lower level within the fair value hierarchy.

### *Investment Valuation*

The Partnership records its investment in ICF based on its proportionate share of the net assets of ICF. Valuation of investments held by ICF including, but not limited to, the valuation techniques used and categorization within the fair value hierarchy of investments are discussed in the notes to ICF's financial statements.  As the Partnership holds a 100% equity interest in ICF, the full amount of the ICF's net assets is recorded as the Partnership's net asset value ("NAV").

The Investment is measured at fair value using net asset value per share (or its equivalent) as a practical expedient, and therefore has not been classified in the fair value hierarchy. The fair value amounts presented in the hierarchy tables for this investment are intended to permit reconciliation of the fair value hierarchy to the line items presented in the statement of net assets available for benefits.

### *Cash*

The Partnership places its cash with financial institutions, and at certain times, cash held in such accounts may exceed the Federal Deposit Insurance Corporation insured limit. As of December 31, 2023 no cash held at any financial institution exceeds the Federal Deposit Insurance Corporation limit.

### *Income Taxes*

In accordance with federal income tax regulations, income taxes are not levied on a partnership, but rather on the individual partners. Additionally, due to the nature of the Partnership's activities and its organization as a limited partnership, state income taxes are not imposed on the Partnership. Consequently, federal and state income taxes have not been reflected in the accompanying consolidated financial statements.

The Partnership applies the provisions of ASC 740, Income Taxes, which clarifies the accounting and disclosure for uncertainty in tax positions. The Partnership analyzed its tax filing positions in the federal, state, and foreign tax jurisdictions where it is required to file income tax returns as for all open tax years in these jurisdictions. Based on this review, no liabilities for uncertain income tax positions were required to have been recorded pursuant to ASC 740.

The Partnership recognizes accrued interest and penalties related to uncertain tax positions in operating expenses in the statement of operations. As of December 31, 2023, the Partnership did not have a liability recorded for payment of interest and penalties associated with uncertain tax positions.

The Partnership files its tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and certain state, local and foreign tax regulators. The Partnership's U.S. federal income tax return and state and local returns since inception are open under the normal three-year statute of limitations and therefore subject to examination.

The Partnership does not believe that it has any tax positions for which it is reasonably possible that it will be required to record significant amounts of unrecognized tax benefits within the next twelve months.

# INDIGO MASTER PARTICIPATION, LP

**NOTES TO FINANCIAL STATEMENTS**

---

*Expenses*

Expenses are recorded on the accrual basis as incurred. The Partnership bears all of its ongoing expenses, which include the organizational expenses, administration fees and other partnership level expenses. The Partnership does not pay or reimburse directly any of its affiliated entities' general overhead costs or expenses, such as the rent of their respective offices, the compensation and benefits of their respective staff, maintenance of their respective books and records or their fixed expenses (e.g., telephone and general-purpose office equipment).  However, the Partnership will pay, or reimburse the General Partner and/or the Investment Manager for, all operating expenses and other costs of the Partnership not required to be borne by them.

*Use of Estimates*

The preparation of financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the reported amounts of actual and contingent assets and liabilities at the date of the financial statements and the reported amounts of income or loss and expenses during the reporting period.  Actual results could differ from those estimates.

3.     **FAIR VALUE MEASUREMENTS**

The following table presents the classification of the Partnership's fair value measurements as of December 31, 2023:

| | Level 1 | Level 2 | Level 3 | NAV | Total |
|---|---|---|---|---|---|
| **Investments** | | | | | |
| Indigo Commercial Funding, LLC | $ - | $ - | $ - | 8,686,464 | $8,686,464 |
| | $ - | $ - | $ - | $ 8,686,464 | $8,686,464 |

The Partnership's policy is to recognize transfers in and transfers of the levels out as of the beginning of the period.  For the year-ended December 31, 2023 there were no transfers between levels.

4.     **PARTNERS' CAPITAL**

*Contributions*

The minimum capital commitment ("Capital  Commitment") is $1,000,000 and no minimum additional Capital Commitment is required.  The total contributions made from the limited partners amounted to $11,399,843 and $7,819,963 as of December 31, 2023 and 2022, respectively.

*Distributions*

Subject to the availability of Partnership cash and to the maintenance of such cash reserves as General Partner shall, in the General Partner's sole discretion, determine the amounts, if any, to be distributed to the limited partners, and the times when such distributions are to be made, but the General Partner shall not be required to make any distributions or distributions in any particular amount or at any particular time or times.  Any amounts distributed may include any combination of income, capital gains, or return of capital.

# INDIGO MASTER PARTICIPATION, LP

**NOTES TO FINANCIAL STATEMENTS**

Funds available for distribution will be derived from distributions made by ICF to the Partnership.  ICF's ability to make such distributions is subject to its ability to do so under terms of the Credit Facility.

**5.      RELATED PARTY TRANSACTIONS**

An administrative fee is payable quarterly to the Investment Manager for administrating the Partnership. The administrative services fee for any quarterly period shall be less than or equal to 0.25% of the Invested Amount as of the beginning of the subject period, which may be billed in aggregate for certain itemized administrative fees and applied to the Capital Account balance of each Limited Partner paid for each respective quarter that services are provided.

The aggregate value of the affiliated partners' capital owned at December 31, 2023 is $8,800,132.

**6.      ALLOCATIONS OF PARTNERSHIP PROFITS AND LOSSES**

As provided in the Limited Partnership Agreement, as amended, profits and losses of the Partnership are allocated as of the end of the accounting period to the limited partners in accordance with their respective ownership interest in the investment of the Partnership, adjusted for contributions and withdrawals.

**7.      FINANCIAL HIGHLIGHTS**

The information presented below represents the financial highlights applicable to the Partnership's limited partner taken as a whole.

| Ratio to weighted average Limited Partners' capital: | | Amount |
|---|---|---|
| Administrative fee | 0.98% | 79,372 |
| Amortized organizational costs | 0.38% | 31,095 |
| Professional fees | 0.41% | 33,060 |
| Total expenses | 1.77% | 143,527 |
| | | |
| Total return for the period ending December 31, 2023 | -6.36% | (514,812) |
| | | |
| ITD Internal Rate of Return | -5.12% | |

**8.      SUBSEQUENT EVENTS**

The Partnership has performed an evaluation of subsequent events through July 23, 2024, which is the date the financial statements were available to be issued. The evaluation did not result in any additional subsequent events that required disclosures and/or adjustments.