UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALAMAR CAPITAL SERVICES, LLC,
N.A. REALTY FUND II, LLC, and
INDICAL PARTNERS, LLC,

                        *Plaintiffs*,

vs.                                    Case No. 1:24-cv-00684-JLS

BCMK INVESTMENT HOLDINGS, LLC,
BRENT E. CAREY, and
INDIGO GLOBAL ADVISORS, LLC,

                        *Defendants*.
_____

## **MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

COLUCCI & GALLAHER, P.C.
Anthony J. Colucci, III, Esq.
Paul G. Joyce, Esq.
*Attorneys for Plaintiffs*
*Calamar Capital Services, LLC, N.A.,*
*N.A. Realty Fund II, LLC, and*
*Indical Partners, LLC*
800 Main Place Tower
350 Main Street
Buffalo, New York 14202-2150
(716) 853-4080
ajc3@colucci-gallaher.com
pjoyce@colucci-gallaher.com

**Table of Contents**

Argument ................................................................................................................... 1

I.  Defendants Cannot Compel Calamar, N.A. Realty and IndiCal to Arbitrate Because They are Not Signatories To The IGI Partners II Operating Agreement, ................................. 3

II. This Court Has Personal Jurisdiction Over the Defendants ............................................. 7

    a. Jurisdiction Is Appropriate Under New York's Long-Arm Statute ................................. 8

    b. Jurisdiction Over The Defendants is Consistent with Due Process ................................. 9

III. The Claims Are Legally Sufficient ............................................................................ 11

    a. The Defendants Are Not Impermissibly Grouped Together ........................................... 12

    b. Calamar, N.A. Realty and IndiCal Are the Intended Beneficiaries of the Operating Agreement and Therefore Have Stated A Claim for Breach of Contract ...................... 14

    c. The Complaint States a Claim for Breach of Fiduciary Duty Against the Defendants . 15

    d. Plaintiffs' Have Stated A Claim For Breach of Fiduciary Duty Under New York Law 17

    e. New York Permits a Claim for Conversion of Specifically Identifiable Funds ........... 18

    f. The Complaint States a Claim for Monies Had and Received. ...................................... 20

    g. The Fraudulent Inducement Claim Is Separate & Distinct from The Breach of Contract Claim ................................................................................................................. 20

Conclusion .............................................................................................................. 22

## Table of Authorities

**Cases**

*Advanced Knowledge Tech., LLC v Fleitas*, 2021 U.S.Dist. LEXIS 247723 (S.D.N.Y. Dec. 28, 2021) ............................................................................................................... 21

*Anonymous v. Omnicom Grp., Inc.*, 852 F.3d 195 (2d Cir. 2017) ..................................... 12

*Aritomo v. Rhee*, 2022 U.S. Dist. LEXIS 211799 (S.D.N.Y 2022) ................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................11, 12

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7 (1st Dept 2010) ............................................................................................................................... 16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ......................... 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) ... 11

*Basile v. Levittown United Tchrs.*, 17 F. Supp. 3d 195 (E.D.N.Y. 2014) .......................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 11

*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314 (1983) ......................... 14

*Busrel Inc. v. Dotton*, 2023 U.S. Dist. LEXIS 6883 (W.D.N.Y. Jan 13. 2023) ................. 19

*Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 151 N.E.2d 833 (N.Y. 1958) .......... 21

*Charles Schwab Corp. v. Bank of Am. Corp.*, 884 F.3d 68 (2d Cir. 2018) ....................... 11

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ............................ 7

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003 (N.Y. 1986) ............................................................................................................................... 21

*Druck Corp. v Macro Fund*, 102 F App'x 192 (2d Cir 2004) ........................................ 7, 8

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008) ........ 10

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ................... 10

*Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012) 14

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp.2d 385 (S.D.N.Y. 2005) ............................................................................................................................... 16

*Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150 (2d Cir. 2006) ................... 11

*Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158 (2d Cir. 2005) .............. 7

*Great W. Ins. Co. v Graham*, 2020 US Dist LEXIS 109330 (S.D.N.Y. June 22, 2020) ..... 16

*Grgurev v. Licul*, 229 F. Supp.3d 267 (S.D.N.Y. 2017) ................................................. 19

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) .......................................................... 11

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ................................ 9

*Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391 (2d Cir. 2015) ................................... 3

*I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524 (S.D.N.Y. 2017) 18

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) .......................................... 11

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................ 10

*Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988).............................................. 9

*Lee v. Insomnia Cookies LLC*, 2024 U.S. Dist. LEXIS 42085 (W.D.N.Y. Mar. 11, 2024)... 7

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013).......................................... 7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) . 12, 22

*MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) ..................................................... 7

*Manas v. VMS Assoc., LLC*, 863 N.Y.S.2d 4 (1st Dept. 2008)............................................. 21

*Manufacturers Hanover Trust Co. v Chemical Bank*, 559 N.Y.S.2d 704 (1st Dept 1990).. 19

*Marine Midland Bank, N.A. v. Miller, see* 664 F.2d 899 (2d Cir. 1981).............................. 7

*Meisel v Grunberg*, 651 F.Supp.2d 98 (S.D.N.Y. 2009).................................................... 17

*Merril Lynch Inv. Managers*, 337 F.3d at 130 (2d Cir. 2003) ............................................. 6

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ......................................... 18

*Murphy v Morlitz*, 751 F. App'x 28 (2d Cir. 2018) .......................................................... 19

*NLD Rochester LLC v. 440 Lake Ave., LLC*, 686 F. Supp.3d 248 (W.D.N.Y 2023) .......... 20

*Paranee Sarikaputar v. Veratip Corp.* 2019 U.S. Dist. LEXIS 92436 (S.D.N.Y June 3, 2019) ................................................................................................................................... 14

*Pension Comm. of the Univ. of Montreal Pension Plan v Banc of Am. Sec. LLC*, 568 F.3d 374 (2d Cir 2009). ..................................................................................................... 16

*Peters v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust. Litig.)*, 61 F.4th 242 (2d Cir. 2024) .............................................................................................................. 11

*Romano v. Urich*, 2024 U.S. Dist. Lexis 13643 (W.D.N.Y. Jan. 25, 2024) ...................... 14

*Sabo v. Delman*, 143 N.E.2d 906 (N.Y. 1957) ................................................................ 22

*Samuels v Greenberg*, 646 F App'x 38 (2d Cir 2016) ..................................................... 19

*Sharma v Rent the Runway*, Inc., 2024 U.S. Dist. LEXIS 173816 (E.D.N.Y. 2024) .......... 13

*Sherwin-Williams Co. v. Avisep, S.A. de C.V.*, 2016 U.S. Dist. LEXIS 10270 (S.D.N.Y. 2016) ................................................................................................................................... 9

*Spetner v Palestine Inv. Bank*, 70 F.4th 632 (2d Cir 2023)................................................. 8

*Teachers Ins. & Annuity Ass'n of Am. v. Adair*, No. 21. Civ. 10883 (KPF), 2023 U.S. Dist. LEXIS 45601 (S.D.N.Y. Mar. 17, 2023) .................................................................. 4, 6

*Teachers Ins. & Annuity Ass'n,*  2023 U.S. Dist. LEXIS 45601 ........................................ 6

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1996)...............3, 4, 6, 7

*U.S. SBA As Reciever of Elk Assoc. Funding Corp. v Ameritrans Holdings, LLC*, 2024 U.S. Dist. LEXIS 29702 (E.D.N.Y. Feb 22, 2024) .............................................................. 20

*W.P. Carey, Inc.*, 2019 U.S. Dist. LEXIS 51975 ................................................. 6

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ............................................. 13

*Yao-Yi v Wilmington Trust Co.*, 301 F. Supp.3d 403 (W.D.N.Y. 2017) ........................... 17

Argument

Plaintiffs Calamar Capital Services, LLC,  N.A. Realty Fund II, LLC, and IndiCal Partners, LLC, by and through their counsel, Colucci & Gallaher, P.C., submit this memorandum of law in opposition to the Defendants' Motion to Dismiss the complaint. This matter relates to what is effectively a Ponzi scheme perpetrated by the defendants to solicit investments then transfer the investments to related companies through a labyrinth of limited liability companies and limited partnerships.   Those investments are now worthless, as defendants have admitted.

The plaintiffs, Calamar Capital Services, LLC ("Calamar"), N.A. Realty Fund II, LLC (hereinafter "N.A. Realty") and IndiCal Partners, LLC ("IndiCal"), were solicited by Defendants Carey and Indigo Global Advisors, LLC ("IGA") in 2017 to invest in a special purpose entity named "Indigo Opportunities Fund II, LP" n/k/a "Indigo Private Credit Fund, LP" (hereinafter referred to as "Fund II").  Defendants Carey and IGA promised an eight percent (8%) preferred return through the funding of secured and/or collateralized loans, performing loans and leases.  Compl. ¶¶15-19.

Calamar, the managing member of N.A. Realty and IndiCal, made an initial investment of $4,000,000. Compl. ¶¶29, 31.  A related company to Calamar, Glacier Point Partners, LLC, eventually entered into the IGI Partners II, LLC Operating Agreement with Defendant BCMK Investment Holdings, LLC ("BCMK") and Indigo Senior Executive Holdings, LLC.  Defendant Carey is Managing Member of BCMK.   The purpose of IGI Partners II was to invest in and be the general partner of Fund II. Pursuant to the  Operating Agreement, Defendant IGA had the right to appoint two out of the five members of the IGI Partners II management committee.  Glacier Point had the right to appoint the other three

1

member of the IGI Partners II management committee.  Calamar, N.A. Realty and IndiCal are not signatories to the Operating Agreement.

Plaintiffs were kept in the dark through secretive and nefarious financial maneuvers over many months.  As set forth in the complaint, Defendants Carey, IGA and BCMK disregarded the Operating Agreement, paying themselves and related companies hundred of thousands of dollars in fees, used Plaintiff's $4,000,000 as collateral for unrelated investments, and restructured Fund II, transferring all but the failing assets to one of Defendants related entities. Compl. ¶¶ 51-56.  This maneuver was done without any consideration, without any notice, and without any authority.

Due to Defendants refusal to return Plaintiffs' investment or identify where the investment is currently located, Plaintiffs filed an action in New York State Supreme Court on May 22, 2024.  On July 22, 2024, BCMK removed the state court litigation based on diversity jurisdiction under 28 U.S.C. §1332.  Defendants filed their motion to dismiss on July 29, 2024.

In support of their motion, Defendants submitted several documents purportedly signed by Brandon Rath as an authorized representative of Plaintiffs.  Following their pattern of obfuscation and deceit, Defendants failed to inform the Court that Mr. Rath never had the authority to sign on behalf of Calamar, N.A. Realty, or IndiCal.   As set forth in the accompanying affidavit of Damon Wojciechowski, Defendant Carey was informed on May 9, 2018 (in response to the default notices sent to Plaintiff IndiCal by Mr. Carey on behalf of Fund II) that the capital calls were meritless for a variety of reasons, including:

- The Amended and Restated Limited Partnership Agreement of Fund II, executed by Mr. Carey in various capacities, does not identify IndiCal as an investor in the Fund;

2

- An authorized representative of IndiCal never signed the Subscription Agreement for Fund II, as Kenneth Franasiak (the sole manager of Calamar) was the only person with legal authority to sign on behalf of Calamar, or to make binding commitments on behalf of IndiCal;

- IndiCal never gave IGI Partners II, LLC a power of attorney to commit IndiCal as an investor to Fund II; and

- Mr. Carey was not the Manager of Fund II and did not have the unilateral authority to take actions on its behalf.

To perpetuate their scam, Defendants need to retain the $4,000,000 that Plaintiffs invested. That money forms the collateral for the bank loans that allow Defendants and their multitude of interconnected and interchangeable companies to keep their scheme going. If that money is returned, the house of cards will crumble.

Finally, none of the plaintiffs are signatories to any agreement requiring that this case be arbitrated.

I. Defendants Cannot Compel Calamar, N.A. Realty and IndiCal to Arbitrate Because They are Not Signatories To The IGI Partners II Operating Agreement,

When determining whether a dispute is arbitrable, courts must first determine whether the parties agreed to arbitrate their disputes at all. See *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted). Arbitration is "strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1996) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Only after this threshold question is answered affirmatively can courts determine whether a dispute falls under an arbitration agreement's scope. *Id*. While federal

policy favors arbitration agreements, it is also true that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Thomson-CSF,* 64 F.3d at 776 (quoting *United Steelworkers*, 363 U.S. at 582). In other words, "arbitration is a matter of consent, not coercion." *Holick*, 802 F.3d at 395 (citation omitted).

Here, Defendants are asking the Court to compel Calamar, N.A. Realty and IndiCal to arbitrate the issues set forth in the complaint. When determining if non-signatories can be compelled to arbitrate, courts strictly limit the number of theories under which such a course of action is permissible. *See Thomson-CSF*, 64 F.3d at 776. These theories are: (1) "incorporation by reference"; (2) "assumption"; (3) "agency"; (4) "veil-piercing/alter ego"; and (5) "estoppel." *Id*. Importantly, "the party seeking to arbitrate with a non-signatory [to an arbitration contract] bears the burden of proving [these theories'] applicability . . . ." *Teachers Ins. & Annuity Ass'n of Am. v. Adair*, No. 21. Civ. 10883 (KPF), 2023 U.S. Dist. LEXIS 45601, *20 (S.D.N.Y. Mar. 17, 2023) (citation omitted). Defendants have failed to even allege sufficient facts in this regard.

Courts have held that the mere existence of a corporate parent-subsidiary relationship is insufficient to establish if one of these theories is applicable. *Thomson-CSF*, 64 F.3d at 780; *Merril Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003); *Teachers Ins. & Annuity Ass'n*, 2023 U.S. Dist. LEXIS 45601 at *23; *W.P. Carey, Inc. v. Bigler*, 2019 U.S. Dist. LEXIS 51975, *16 (S.D.N.Y. Mar. 27, 2019).

*Thomson-CSF* is illustrative of courts' threshold arbitration analysis. In *Thomson-CSF*, the defendant (Evans & Sutherland Computer Corporation) and Thomson's subsidiary (Rediffusion) entered into an agreement that required arbitration of disputes. *Thomson-CSF*, 64 F.3d at 775. Later, when E&S filed a demand for arbitration against Thomson-CSF and Rediffusion, Thomson-CSF refused to answer the demand and commenced an action seeking

a declaration that it was not bound by Rediffusion's arbitration agreement. *Id*. at 776.  The district court compelled arbitration, which was subsequently reversed by the Second Circuit. *Id*. at 775.

In its original reasoning, the *Thomson-CSF* district court found that even though E&S's claims did not fall within any of the traditional five theories, a "hybrid approach" could be utilized to bind Thomson-CSF based on it "'voluntarily becoming . . . an affiliate,' on the degree of control Thomson exercises over [Rediffusion], and on the interrelatedness of the issues."   *Id*. at 780.  In reversing the lower court, the Second Circuit rejected the "hybrid approach," holding that in order to  bind a non-signatory to an arbitration agreement, a party must offer "a *full* showing of some accepted theory under agency or contract law" (i.e., the five theories). *Id*. (emphasis in original). Merely requiring a parent-subsidiary relationship would "imperil[] a vast number of parent corporations." *Id*.

Here, Defendants cannot compel Calamar, N.A. Realty, or IndiCal to arbitrate the claims set forth in the complaint.  Defendant acknowledges that none of the Plaintiffs are signatories to the arbitration agreement.  Neither Calamar, N.A. Realty, nor IndiCal  are signatories to the ICI Partners II Operating Agreement (Carey Declaration Ex. A), the Fund II Amended and Restated Limited Partnership Agreement (Carey Declaration Ex. B), or the Investment Management Agreement between Defendant IGA and Fund II (Carey Declaration Ex. C).  Indeed, Defendants have outright admitted that Plaintiffs are not signatories to any arbitration agreement. For instance, in their memorandum of law supporting their motion to dismiss, the defendants state outright that "none of the Plaintiffs . . . [are] either a Class A or a Class B member of IGI Partners II." Ds.' Br. at 4. Defendants also confirm that the Investment Management Agreement was entered into between Defendant Indigo Global Advisors and "non-party Fund II." Ds.' Br. at 4.

5

Defendants need to affirmatively show that one of the five theories is applicable. *See Thomson-CSF*, 64 F.3d at 776. Defendants have failed entirely to do that. For instance, nowhere in their memorandum of law do the Defendants attempt to show why one of these five theories are applicable to the current case; Defendants do not mention the five theories at all. Instead, Defendants merely assume that they can bind the non-signatory Plaintiffs to arbitration agreements they never signed, even though courts have explained that parties seeking to *bind non-signatory* parties to arbitration "bear the burden" of demonstrating a basis for that argument. *Teachers Ins. & Annuity Ass'n of Am. v. Adair*, 2023 U.S. Dist. LEXIS 45601, at *20 (citation omitted). Omission of the five theories necessarily shows that Defendants failed to meet their required burden.

Defendants take pages explaining why the Plaintiffs' claims are within the scope of the two arbitration agreements and why the arbitrator should decide questions of arbitrability, but these questions only relate to the *second* prong of an arbitrability analysis. *See Holick*, 802 F.3d at 394 (citation omitted). Critically, Defendants do not provide any support to prove the arbitrability analysis's primary test, and this silence is fatal. *See Thomson-CSF*, 64 F.3d at 779 ("[I]f the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so.").

Simply having a corporate affiliation with one of the agreement's parties is insufficient to require a non-signatory to arbitrate. *See Thomson-CSF*, 64 F.3d at 780; *Merril Lynch Inv. Managers*, 337 F.3d at 130 (2d Cir. 2003) (discussing Thomson-CSF); *Teachers Ins. & Annuity Ass'n*, 2023 U.S. Dist. LEXIS 45601, at *23; *W.P. Carey, Inc.*, 2019 U.S. Dist. LEXIS 51975, at *16. Allegations regarding Calamar's parent-subsidiary relationship with Glacier Point is insufficient to bind Calamar to an arbitration agreement. As stated in

*Thomson-CSF*, the "ordinary principles of contract and agency" should not dilute the protections afforded to non-signatories. *Thomson-CSF*, 64 F.3d at 780.

The Court should deny Defendants' motion to dismiss seeking to compel arbitration.

II.  <u>This Court Has Personal Jurisdiction Over the Defendants</u>

To overcome a pre-answer motion to dismiss for lack of personal jurisdiction under F.R.Cv.P. 12(b)(2), Plaintiffs need only make a *prima facie* showing that the Court has jurisdiction over each defendant. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). Where a court relies on pleadings and affidavits rather than a full-blown evidentiary hearing, Plaintiffs can make such a *prima facie* showing either through "legally sufficient allegations of jurisdiction" in the pleadings, *see Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), or through its own affidavits and supporting materials, *Marine Midland Bank, N.A. v. Miller*, *see* 664 F.2d 899, 904 (2d Cir. 1981).

The pleadings and supporting affidavits are construed in the light most favorable to Plaintiffs, with all doubts resolved in the Plaintiffs' favor. *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 167 (2d Cir. 2013); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Druck Corp. v Macro Fund*, 102 F App'x 192, 194 (2d Cir 2004) (citing *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).   As this is a diversity case, a two-step analysis must be conducted: (1) the Court examines New York law to confirm whether each defendant is subject to general or specific jurisdiction under New York's long-arm statute and (2) the Court must consider if its exercise of jurisdiction comports with due process as guaranteed by the United States Constitution. *See Lee v. Insomnia Cookies LLC*, 2024 U.S. Dist. LEXIS 42085, at *7 (W.D.N.Y. Mar. 11, 2024).

Under New York law, "the court must first determine whether personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute . . . or its long-arm jurisdiction statute . . . . If the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the court's exercise of personal jurisdiction comports with due process." *Id.*

a.   Jurisdiction Is Appropriate Under New York's Long-Arm Statute

C.P.L.R. § 302(a)(1) authorizes personal jurisdiction over a foreign defendant for causes of action that arise out of "transact[ing] any business within the state," whether in person or through an agent.  Transacting business "in this context means 'purposeful activity—some act by which a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Spetner v Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir 2023) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

The touchstone of long-arm jurisdiction under C.P.L.R. § 302 is the intent to reach the forum, meaning that the contact needs to be purposeful rather than extraneous or coincidental.  Here, the complaint makes a specific allegations that Defendant Carey, on behalf of Defendants IGA and BCMK, came to Calamar's offices in Niagara County, New York to solicit investors.  Compl. ¶¶14-15.  The affidavit of Mr. Wojciechowski confirms that Mr. Carey's trips to see Calamar in Niagara County were directly related to Calamar's investment in Fund II, the subject of the complaint. *See* Wojciechowski Aff. ¶ 9-10.

Defendant Carey concedes that he travelled to New York in 2019 to meet with the plaintiffs about the transactions in the complaint.  Doc. No. 7-5 ¶12. Courts have recognized that two meaningful meetings in New York to solicit investors confers personal jurisdiction pursuant to C.P.L.R. § 302(a)(1). *See Druck Corp. v Macro Fund*, 102 F App'x 192, 194 (2d

Cir 2004) ("Here, individuals with 'personal knowledge' of the . . . negotiations in New York alleged that two solicitation meeting transpired, . . . and that the meetings were 'substantive and substantial in nature and purpose.").  Defendants' argument that they "did not transact any business in New York or that there is any relationship between Defendants' non-existent New York activities and Plaintiffs' purported injuries" ignores both the plain allegation that Defendant did transact business in New York and Defendant Carey's admission that he appeared in New York to meet with Plaintiffs about the very activity that caused Plaintiffs' injuries. *See* Compl. ¶¶ 14-15, Wojciechowski Aff. ¶¶ 9-10.  Defendants' creative fiction about negotiating & signing an agreement with an entity that didn't even exist at the time (IndiCal) belies the veracity of their claim.

A cause of action arises out of a defendant's New York transactions when it is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985).  Because C.P.L.R. §302(a)(1) is a "single act statute," proof of a single transaction in New York is enough to suffice to invoke jurisdiction, so long as that transaction is sufficiently substantive and purposeful. *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988).  In fact, "New York courts routinely find that negotiations involving [one or two] New York meetings . . . suffice for jurisdiction, so long as they were substantive . . . ." *See Sherwin-Williams Co. v. Avisep, S.A. de C.V.*, 2016 U.S. Dist. LEXIS 10270 at *7 (S.D.N.Y. 2016)

b.  Jurisdiction Over The Defendants is Consistent with Due Process

To exercise personal jurisdiction over a foreign defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As a "practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) (citing *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966)).

The complaint specifically alleges that in "2017 and 2018, Defendant Carey came to Calamar's offices in Niagara County, New York to solicit investors for Fund II" and that Defendant Carey was soliciting funds on behalf of Defendants IGA and BCMK, founders of Fund II. *See* Compl. ¶¶ 14-15.  Defendant Carey, in his declaration, confirms that he has travelled to New York for multiple days to meet with Plaintiffs regarding the transactions that form the basis of the complaint. *See* Carey Dec. ¶ 12.  Because Defendant Carey's travel to New York State was directly related the transactions that form the basis of the complaint, it does not matter that he was here once, twice or a dozen times – jurisdiction is established under C.P.L.R. § 302(a)(1), in turn satisfying the due process standard and obviating the need to consider jurisdiction under C.P.L.R. § 302(a)(2).  *See Aritomo v. Rhee*, 2022 U.S. Dist. LEXIS 211799 *20 (S.D.N.Y 2022) (citing *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697 (S.D.N.Y. 2018)).

As the manager, controlling member, and/or officer of Defendants BCMK and IGA, Defendant Carey was the authorized agent of IGA and BCMK. Compl. ¶ 6.  Defendant Carey purposefully availed himself of the privilege of conducting activities within New York by in-person meetings with Calamar in New York to solicit investments.  As such, both IGA and BCMK could have "reasonably anticipate[d] being haled into court" in New York. *See Peters v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust. Litig.)*, 61 F.4th 242, 269

(2d Cir. 2024) (citing *Licci*, 732 F.3d at 170); *Charles Schwab Corp. v. Bank of Am. Corp.*, 884 F.3d 68, 82 (2d Cir. 2018) (citing *Licci*, 732 F.3d at 170); *Best Van Lines, Inc.*, 490 F.3d at 242-43; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001)).

III. <u>The Claims Are Legally Sufficient</u>

When determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true the factual allegations contained in the Complaint and draw all inferences in plaintiff's favor." *Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). A complaint "may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" *Id* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, Plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Basile v. Levittown United Tchrs.*, 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The sufficiency of a plaintiffs complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the

factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id*. at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id*.  In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).  When determining a motion to dismiss, it is not the court's task to "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail, but whether the complaint states a claim for relief that is plausible on its face. *Anonymous v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017) (citing *Iqbal*, 556 U.S. at 678  and *Twombly*, 550 U.S. at 570).

Furthermore, at the pleadings stage, alleged fraud need "only be plausible based on the complaint; it need not be more likely than other possibilities."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174, citing *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### a.  The Defendants Are Not Impermissibly Grouped Together

Defendants claim that the complaint should be dismissed with prejudice in its entirety because of "group pleading" is a red herring.  In the first instance, the complaint is replete with specific allegations against each individual defendant throughout the complaint.  *See* Compl. ¶¶ 14, 15, 20, 26, 41, 72, 73, 114, 115, 116, 117, 118, 120, 127, 128, 129, 131, 137, 147, 162 and 163 (Defendant Carey);  Compl. ¶¶ 15, 56, 57, 58, 59, 92, 114, 115, 116, 117, 118, 120, 127, 128, 131, 135, 136, 137, 162 and 163 (Defendant IGA);   Compl. ¶¶ 15, 36, 39, 41, 114, 115, 116, 117, 118, 120, 127, 128, 129, 131, 147, 162 and 163 (Defendant BCMK).

12

In addition, Defendants concede that Defendant Carey is (1) a member of Indigo Global Investors, LLC, which is the (2) general partner of Indigo Partnership Holdings, LP, which is the only member of Defendant IGA.  Defendant Carey also is a limited partner in Indigo Partnership Holdings, LP.  Defendant Carey is one of only two members in Defendant BCMK. Doc. No. 1 ¶ 16. Despite Defendant Carey's fundamental  involvement in the two corporate Defendants, none of the Defendants proffer "any authority that Plaintiffs are required to plead the involvement of each defendant with any more specificity beyond alleging they were involved."  *Sharma v Rent the Runway*, Inc., 2024 U.S. Dist. LEXIS 173816, at *71-72 (E.D.N.Y. 2024).  The court in *Sharma* went on to recognize that "that Rule 8's 'lenient standard' for pleading applies," citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004), and recognizing that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant[,]" *Id.*

Unlike the cases cited by Defendants involving almost a dozen defendants and corporate/municipal entities as well as John & Jane Doe defendants (i.e. *Atuahene v City of Hartford* had 10 named defendants, *SCE Grp. Inc. v. City of New York* had 11 named defendants), here there are only two corporate defendants which are owned and controlled by the same individual, Defendant Carey.  Because the complaint alleges the corporate relationship between Defendant Carey and Defendants IGA & BCMK, all defendants have been given adequate notice of the substance of the claims against them.  In addition, the causes of action in the complaint are addressed to specific defendants when applicable, i.e. First Cause of Action against Defendants Carey & BCMK, Second Cause of Action against Defendant IGA.

Defendants' claim that the complaint in this matter must provide a plausible factual basis to distinguish the conduct of each of the defendants is inapplicable because the complaint specifically alleges that Defendant Carey is the manager or controlling member of both IGA and BCMK. *See* Compl. ¶ 16. In the cases cited by Defendants, the courts could not determine which defendants engaged in the conduct that was the subject of the complaint. Here, all of the defendants – Mr. Carey, IGA and BCMK – participated together in the unlawful activities.  As such, the complaint does not improperly group the Defendants together.  See *Romano v. Urich*, 2024 U.S. Dist. Lexis 13643, *5 (W.D.N.Y. Jan. 25, 2024); *Paranee Sarikaputar v. Veratip Corp*. 2019 U.S. Dist. LEXIS 92436, at *5-6 (S.D.N.Y June 3, 2019).

> b. <u>Calamar, N.A. Realty and IndiCal Are the Intended Beneficiaries of the Operating Agreement and Therefore Have Stated A Claim for Breach of Contract</u>

To state a claim for breach of contract in New York, "a plaintiff must actually allege the elements of an enforceable contract (whether express or implied-in-fact) including offer, acceptance and consideration, in addition to adequately alleging the defendant's breach of the contract." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 432 (2d Cir. 2012).

Under New York law, a third party may be the beneficiary of a private contract.  The third party may recover, however, "only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 336 (1983).

14

The Operating Agreement is a valid and binding contract between Defendant BCMK, non-party Indigo Senior Executive Holdings, LLC, and Glacier Point.  Defendants were aware that Calamar, N.A. Realty and IndiCal were the intended beneficiaries of the IGI Partners II, LLC Operating Agreement. As seen by the documents attached to Defendant Carey's affidavit, Defendant Carey, as the "managing partner" of Defendant IGA, sent IndiCal a notice of capital call in the amount of $1,490,000.  See Doc. 7-11 at 6.  Defendant Carey had been previously informed on May 9, 2018 that Mr. Rath did not have the authority to bind either IndiCal, N.A. Realty or Calamar.  As a result, in the September 21, 2018 capital call Defendants Carey and IGA directed the notice to Mr. Wojciechowski, not Mr. Rath. This notice was sent after the Amended and Restated Limited Liability Company Operating Agreement of IGI Partners II, LLC was signed and in effect (September 1, 2018), and IndiCal – not IGI Partners II or Glacier Point - made the capital call payment on September 26, 2018. *See* Compl. ¶ 38.

The proximity of the benefit to Calamar, N.A. Realty and IndiCal is also clear.  The Operating Agreement was installed to protect IndiCal's investment in Fund II and  IndiCal was the majority owner of Fund II.  *See* Wojciechowski Aff. Ex. 5.

    c. The Complaint States a Claim for Breach of Fiduciary Duty Against the Defendants

As set forth in the complaint, Plaintiffs' injuries were a direct result of Defendant IDA and Carey's conduct.  The complaint identifies specific examples of Defendants' self-dealing and attempts to hide that self-dealing, Compl. ¶¶52-56, investments that Defendants claimed were in Fund II, but did not appear on the financial statements compare Compl. ¶¶ 62-65 vs. Compl. ¶ 121, bad investments passed off on Plaintiffs to the advantage of Defendants, Compl. ¶¶ 66-73, 84-87, distribution of Fund II's assets for no consideration to

Defendants' related companies, Compl. ¶¶ 77-83, 91-99, manipulated financial statements, Compl. ¶¶86-90, 122-123, and refusal to return the funds because Defendants are using those funds as collateral for a credit facility from Cadence Bank, Compl. ¶126.  A complaint states a viable cause of action when it plausibly and in adequate detail sets forth allegations that the Defendants provided false information on investments while knowing that the Plaintiffs would base their investment decisions on such information.  *See  Pension Comm. of the Univ. of Montreal Pension Plan v Banc of Am. Sec. LLC*, 568 F.3d 374, 381 (2d Cir 2009).

Since serving the Complaint, Plaintiffs have learned that their $4.0 million investment is totally worthless.  As noted in the affidavit of Damon Wojciechowski, submitted in opposition to the pending motion, Defendants recently provided purportedly audited financial statements as of December 31, 2023. Wojciechowski Aff. Ex. 7.  Those statements reflect that Plaintiffs' investment is now worthless. *Id*.  The financial statements also confirm that Defendant IGA is the investment manager for both Fund II and the IMP, the fund that acquired Plaintiffs' investment.

Courts often "conclude, as a matter of policy, that investment advisors and managers owe 'fiduciary duties to their clients' separate and apart from their contractual duties, especially when they have discretion over the funds they manage. *Great W. Ins. Co. v Graham*, 2020 US Dist LEXIS 109330, at *57 (S.D.N.Y. June 22, 2020) (citing *Bullmore v Ernst & Young Cayman Is.*, 846 N.Y.S.2d 145 (1st Dept. 2007)); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp.2d 385, 414 (S.D.N.Y. 2005); *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7, 16 (1st Dept 2010) ("Since [investment manager] had discretionary authority to manage [client's] investment accounts, it owed [client] a fiduciary duty of the highest good faith and fair dealing"), aff'd, 18 N.Y.3d 341, 962 N.E.2d 765, 939 N.Y.S.2d 274 (2011).  Here, Calamar, N.A. Realty and IndiCal

have both independent third party beneficiary claims under the Operating Agreement as well as an independent fiduciary claims against Defendant Carey and IGA to manage their $4,000,000 investment. The Second Circuit in *Lerner v Fleet Bank, N.A.*, 459 F3d 273, 295 (2d Cir. 2006), has recognized that the duty to make reasonable inquiries and to attempt to prevent the diversion of fiduciary monies constitutes, itself, an "independent fiduciary duty." *See also Yao-Yi v Wilmington Trust Co.*, 301 F. Supp.3d 403, 429 (W.D.N.Y. 2017). Because the Plaintiffs relied upon Defendants Carey and IGA to safeguard their investment, the allegations relating to Defendant Carey and IGA's self-dealing are enough at this stage of the litigation to state a viable cause of action. *Id*.

Defendants Carey and IGA, as the investment manager, owed IndiCal (and by extension Calamar and N.A. Realty) a fiduciary duty when acting in the management and operation of Fund II, including transferring the assets of Fund II to benefit other companies controlled by Defendants. *See Meisel v Grunberg*, 651 F.Supp.2d 98, 115-116 (S.D.N.Y. 2009), citing *Metro. W. Asset Mgmt. LLC v. Magnus Funding, Ltd.*, 2004 U.S. Dist LEXIS 11761, at *30-31 (S.D.N.Y. 2004) (denying motion to dismiss noteholders' gross negligence claim against investment manager hired by bond issuers to manage trust collateral because, as agent of fiduciaries, investment manager was in a fiduciary relationship with noteholders and owed them a duty) and *Miltland Raleigh-Durham v. Myers*, 807 F. Supp. 1025, 1060-61 (S.D.N.Y. 1992).

    d.   <u>Plaintiffs' Have Stated A Claim For Breach of Fiduciary Duty Under New York Law</u>

Defendants seek dismissal of the Third Cause of Action based on the premise that the complaint does not meet the heightened pleading standard of C.P.L.R. 3016(b) or F.R.Cv.P.

9.  Defendants also claim that they are unable to discern the allegations against them because the pleadings are not individualized.  Both of these argument lack merit.

Fundamentally, investment managers such as Defendants Carey and IGA owe a fiduciary duty to the clients they advise.  *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 542 (S.D.N.Y. 2017).  The complaint meets the pleading requirements of both the Federal Rules and the C.P.L.R. by specifying the statements that are contended to be fraudulent, *see*, e.g., Compl.  ¶¶ 23, 60, 109-118); identifies the speaker as Defendant Carey on behalf of Defendants IGA and BCMK, Compl. ¶¶ 14-15; identifies where and when the various fraudulent statements were made, see, *e.g.*, Compl. ¶¶14-15, 60-61, 72-102, identifies why the statements were fraudulent, see, *e.g.*, Compl. ¶¶ 60, 63-91, 105, 121-123, and identifies the specific damages sought by the Plaintiffs (the $4,000,000 claim throughout the complaint). As such, Plaintiffs have provided allegations meeting the required elements of both fraud and breach of fiduciary duty.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

As addressed above, the complaint makes specific allegations against the individual Defendants and identifies them in a group as appropriate.  Defendant Carey is an individual a member of Indigo Global Investors, LLC, which is the general partner of Indigo Partnership Holdings, LP (Defendant Carey is also a limited partner in Indigo Partnership Holdings, LP individually), which in turn is the only member of Defendant IGA.  As alleged in the complaint, Defendant Carey is the manager and one of only two members in Defendant BCMK.  Defendants' professed ignorance regarding what their other hand is doing should be rejected.

e.  <u>New York Permits a Claim for Conversion of Specifically Identifiable Funds</u>

It is "well settled  that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v Chemical Bank*, 160 AD2d 113, 124, 559 N.Y.S.2d 704 (1st Dept 1990).   In other words, the money must constitute "a 'specific sum,' one that is 'determinate,' and reflects an 'ascertained' amount, even in circumstances where the money has been commingled with other funds," the money is "specifically identifiable."   *Busrel Inc. v. Dotton*, 2023 U.S. Dist. LEXIS 6883, *29 (W.D.N.Y. Jan 13. 2023)(citing *Fan. Health Mgmt., LLC v. Rohan Devs., LLC,* 171 N.Y.S.3d 44, 50 (1st Dept. 2022)).

The complaint specifically identifies the same - $4,000,000 – and identifies the specific dates that the monies were sent to Fund II.. Compl. ¶ 38.  Plaintiffs have asked for the $4,000,000 to be returned, but its request has been ignored because Defendants have transferred the monies to other companies they control. Compl. ¶¶ 124-26.

The essential elements of a claim for conversion under New York law are "(1) [the] plaintiff's possessory right or interest in the property and (2) [the] defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Grgurev v. Licul*, 229 F. Supp.3d 267, 285 (S.D.N.Y. 2017).   Defendants incorrectly state that the statute of limitations bars the conversion claim.  However, a cause of action for conversion accrues when the alleged wrongdoing takes place.  *Murphy v Morlitz*, 751 F. App'x 28, 31 (2d Cir. 2018). The complaint alleges that the conversion occurred when Plaintiffs demanded return of their investment in 2023, Compl. ¶ 124, Defendants retained the $4,000,000 capital investment after due demand, using the $4,000,000 for their own purposes.   As such, the conversion cause of action did not accrue until the demand was refused, making the claim timely. *See Samuels v Greenberg*, 646 F App'x 38, 39 (2d Cir 2016).

f.  <u>The Complaint States a Claim for Monies Had and Received.</u>

Under New York law, the elements of a cause of action for money had and received are that: "(1) a payment was made to defendant under a mistaken apprehension of fact; (2) defendant derived a benefit from the mistaken payment; and (3) equity demands restitution by defendant to plaintiff." *NLD Rochester LLC v. 440 Lake Ave., LLC*, 686 F. Supp.3d 248, 253 (W.D.N.Y 2023) (citing *United States ex rel. Ryan v. Staten Island Univ. Hosp.*, 2011 U.S. Dist. 51648 at *13 (E.D.N.Y. May 13, 2011)).

Plaintiffs have adequately plead the elements for a claim of money had and received because the complaint alleges: (1) Defendants received $4,000,000 from Calamar, N.A. Realty and IndiCal; (2) Defendants used the $4,000,000 to induce a bank to increase and extend their credit facility with no benefit to Plaintiffs; and (3) Defendants should not in good conscience be permitted to retain the $4,000,000 because they knew it came from Plaintiffs for a specific investment and unlawfully transferred the money to fund other unrelated entities even though Plaintiffs have demanded the money back. *See U.S. SBA As Reciever of Elk Assoc. Funding Corp. v Ameritrans Holdings, LLC*, 2024 U.S. Dist. LEXIS 29702, at *8-9 (E.D.N.Y. Feb 22, 2024). Defendants' motion should be denied.

g.  <u>The Fraudulent Inducement Claim Is Separate & Distinct from The Breach of Contract Claim</u>

Defendants' claim that the breach of contract claim and fraudulent inducement claim are duplicative fails to recognize the allegations that Defendants Carey and IGA had a preconceived and undisclosed intention of not performing. *See* Compl. ¶60,  ¶¶ 106-129. The complaint alleges that Defendants misrepresented the suitability of the investment they solicited from Plaintiffs. Defendant Carey, in fact, came to New York and corroborated

those false written statements. Wojciechowsk Aff. ¶¶ 8-11, Ex. 1, 2 & 3.  Furthermore, Plaintiffs have alleged reliance on those statements to their detriment.  Compl. ¶ 118.

New York law draws a "distinction between a claim that a contracting party did not intend to honor its contractual commitments, which is not actionable fraud but duplicative of a breach of contract claim, and a claim of a 'preconceived and undisclosed intention of not performing' the contract." *Advanced Knowledge Tech., LLC v Fleitas*, 2021 U.S.Dist. LEXIS 247723, at *6-7 (S.D.N.Y. Dec. 28, 2021) (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956-57 (1986)). A "fraud-based cause of action may lie, however, where the plaintiff pleads a breach of a duty separate from a breach of the contract. Thus, where the plaintiff pleads that it was induced to enter into a contract based on the defendant's promise to perform and that the defendant, at the time it made the promise, had a "preconceived and undisclosed intention of not performing" the contract, such a promise constitutes a representation of present fact collateral to the terms of the contract and is actionable in fraud." *Manas v. VMS Assoc., LLC*, 863 N.Y.S.2d 4, 7 (1st Dept. 2008). Plaintiffs have alleged that Defendants had a preconceived and undisclosed intention of not performing.  *See* Compl. ¶ 60; *Advanced Knowledge Tech.,* 2021 U.S.Dist. LEXIS 247723 at *6-7 (citing *Manas v. VMS Assoc., LLC*, 53 A.D.3d 451, 453-54, 863 N.Y.S.2d 4 (1st Dept. 2008)).

The New York Court of Appeals has also held that a promise made with the intention of not performing it is actionable as fraud. See *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004  (N.Y. 1986) (stating that a promise made with a preconceived notion of not performing it constitutes a misrepresentation); *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 151 N.E.2d 833, 835-36 (N.Y. 1958) (indicating that statement as to future event is actionable as fraud where speaker was aware at the time

21

of the statement that future event would not occur); *Sabo v. Delman*, 143 N.E.2d 906 (N.Y. 1957).

A cause of action for fraudulent inducement in New York requires proof of "(1) material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin.*, 797 F.3d at 170  (citations omitted).  As set forth above, each of the above elements are met by the specific allegations in the complaint.

In *Loreley*, the Second Circuit addressed a similar situation with claims of fraudulent inducement and a motion to dismiss based on "group pleading." *Loreley Fin.*, 797 F.3d at 171-73.  The court recognized that the related corporate entities named in the complaint and treated collectively were "insiders or affiliates participating in the offer of securities" and therefore could be grouped together under both F.R.Cv.P. 9(b) and 8.  *See id.* at 173.

When the Complaint is read as a whole, the allegations are enough to "inform each defendant of the nature of [its] alleged participation in the fraud." *Loreley Fin.*, 797 F.3d AT 172 (2d Cir. 2015) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

<u>Conclusion</u>

For the foregoing reasons, Plaintiffs Calamar Capital Services, LLC, N.A., N.A. Realty Fund II, LLC and IndiCal Partners, LLC respectfully request that the Court deny Defendants' motion to dismiss.

Dated: Buffalo, New York
      October 4, 2024

COLUCCI & GALLAHER, P.C.

By: */s/* Anthony J. Colucci, III
      Anthony J. Colucci, III
      Paul G. Joyce
      *Attorneys for Plaintiffs*
      *Calamar Capital Services, LLC, N.A.,*
      *N.A. Realty Fund II, LLC, and*
      *IndiCal Partners, LLC*
      800 Main Place Tower
      350 Main Street
      Buffalo, New York 14202-2150
      (716) 853-4080

TO:   Michael S. Re, Esq.
      Moritt Hock & Hamroff LLP
      *Attorneys for Defendants*
      400 Garden City Plaza
      Garden City, NY  11530
      516-873-2000
      mre@moritthock.com